UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

————————————————————
                                    )
IN RE:  ANGIODYNAMICS, INC.,        ) Case No.:  24-md-03125-JO-VET
AND NAVILYST MEDICAL, INC.,         )
PORT CATHETER PRODUCTS              ) MDL No.:  3125
LIABILITY LITIGATION                )
                                    ) San Diego, California
                                    )
                                    ) Thursday, December 19, 2024
                                    )
                                    ) STATUS HEARING   CERTIFIED
                                    )                  TRANSCRIPT
————————————————————                )


REPORTER'S TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JINSOOK OHTA
UNITED STATES DISTRICT COURT JUDGE

PAGES 1 - 42


Court Reporter:

CRISTINE R. GERONGCO, RPR, CCG, CCR, CSR 13517
U.S. OFFICIAL COURT REPORTER
U.S. District Court Clerk's Office
333 West Broadway, Suite 420
San Diego, California 92101

        Proceedings recorded by mechanical stenography,
transcript produced CAT software and computer.

```
1    APPEARANCES VIA VIDEOCONFERENCE:

2    For the Plaintiff
     Stacy Valdez:            AVA LAW GROUP
3                             3667 Voltaire Street
                              San Diego, California 92106
4                             BY:  ANDREW VAN ARSDALE, ESQ.
                                   ATTORNEY AT LAW
5

6    For the Plaintiffs
     Shannon Elwell, Michael Schauer,
7    Eboni Honore, Denise Jones,
     Donald Holder, William Jones,
8    William "Ashley" Page,
     Billy Milam, Mashon Ayers,
9    Carlos Barbot, Gregory Warne,
     Thomas Shepherd, Robert Porter,
10   Laura Schultz,
     James Morris,
11   Deborah Austin-Rogers:  ROMAN BALABAN AND ASSOCIATES
                             7350 East Progress Place, Suite 106
12                           Greenwood, Colorado 80111
                             BY:  ROMAN BALABAN, ESQ.
13                                MAX YEFIMENKO, ESQ.
                                  ATTORNEYS AT LAW
14
     For the Plaintiffs
15   L.L., John Larson,
     Vanessa Straughter,
16   LeTarsha Preston:       HOLMAN SCHIAVONE, LLC
                             4600 Madison Avenue, Suite 810
17                           Kansas City, Missouri 64122
                             BY:  ANNE W. SCHIAVONE, ESQ.
18                                ATTORNEY AT LAW

19   For the Plaintiffs
     Patricia Kitchen, Stephen Zuppo,
20   Latisha Harris, Melinda Amon,
     Venita Chapman, Kathy Fann,
21   Jessica Garst, Don Ryan,
     VaLoy Berrett,
22   Erika La Loggia,
     Richard Meletiche:      CORY WATSON ATTORNEYS
23                           2131 Magnolia Avenue S
                             Birmingham, Alabama 35205
24                           BY:  R. ANDREW JONES, ESQ.
                                  ATTORNEY AT LAW
25
```

```
 1    APPEARANCES VIA VIDEOCONFERENCE:

 2    For the Plaintiffs
      Maxwell Jones, Simpson Ezzell,
 3    Keena Johnston, Carlos Barbot,
      Cassandra Wilkerson, April Moore,
 4    Katherine Tucker, Dishell Sanders,
      Deborah Austin-Rogers,
 5    Jennifer Krug,
      Julie Lapper,
 6    Teonna Foster:         RATZAN WEISSMAN & BOLDT
                             2850 Tigertail Avenue, Suite 400
 7                           Coconut Grove, Florida 33133
                             BY:  KIMBERLY L. BOLDT, ESQ.
 8                                ATTORNEY AT LAW

 9
      For the Plaintiff
10    Melanie Epperson:      CUTTER LAW P.C.
                             401 Watt Avenue, Suite 100
11                           Sacramento, California 95864
                             BY:  JENNIFER S. DOMER, ESQ.
12                                ATTORNEY AT LAW

13                                  - and -

14                           BEUS O'CONNOR MCGRODER PLLC
                             701 North 44th Street
15                           Phoenix, Arizona 85008
                             BY:  MARK O'CONNOR, ESQ.
16                                MEGAN E. BEUS, ESQ.
                                  ATTORNEYS AT LAW
17

18    For the Plaintiff
      Karie Rodriguez:       SMITH TEMPLEMAN LAW FIRM
19                           1306 Rio Grande Boulevard
                             NW Suite B
20                           Albuquerque, New Mexico 87106
                             BY:  CHRISTOPHER TEMPLEMAN, ESQ.
21                                ATTORNEY AT LAW

22    For the Plaintiffs
      Samuel Jordan,
23    Dishell Sanders:       POPE MCGLAMRY
                             3391 Peachtree Road, Suite 300
24                           Atlanta, Georgia 30326
                             BY:  N. KIRKLAND POPE, ESQ.
25                                ATTORNEY AT LAW
```

```
1    APPEARANCES VIA VIDEOCONFERENCE:

2    For the Plaintiffs
     Serena Coleman, Leslie Chapman,
3    Danny Brierly, Kathleen Koester,
     Aprile Hyder, Destiny Kelly,
4    Christy Hicks, Robert Barnes,
     Charmaine Brockway,  Melinda Amon,
5    Rosa Timmons, Kimberly Boyer,
     Ramsey Ghabra, Claude Preston,
6    JaiTonia Cain Harvey, Pamela Wilson,
     Kimberly Howard, Gage Colyer,
7    William Colyer, Lindsay Baldwin,
     Patricia Kitchen, Maxwell Jones,
8    Stephen Zuppo, Jessica Garst,
     Noelia Hernandez-Ayala, Zonia Granados,
9    Brandon Mcmillian, Shanna Clark,
     Brandon Brisbin, Kristin Patchett,
10   Simpson Ezzell, Jerry Hicks,
     Shanna Avis, Crystal Slavey,
11   Keena Johnston, Jason Olden,
     Nancy Blankenship, Jenna Peel,
12   Brandi Smalley, April Williams,
     James Harrelson, Joyce Davis,
13   Sallie Jones, Brittany Burrell,
     Cassandra Wilkerson, Kathy Fann,
14   Melanie Epperson,
     Linda Norris:            DICKERSON OXTON
15                            1100 Main Street, #2550
                              Kansas City, Missouri 64105
16                            BY:  CHELSEA DICKERSON, ESQ.
                                   BLAIR B. MATYSZCZYK, ESQ.
17                                 ELSA LINARES-MASCOTE, ESQ.
                                   ATTORNEYS AT LAW
18
     Also Present:            THE CARLSON LAW FIRM
19                            1500 ROSECRANS AVE. Suite 500
                              Manhattan Beach, California 90266
20                            BY:  MICHAEL MCDOWELL, ESQ.
                                   ATTORNEY AT LAW
21
     For the Plaintiffs Mishelle Fresener,
22   Brandon Brisbin, Teonna Foster,
     Robert Freeman,
23   Ramsey Ghabra:           CONSTANT LEGAL GROUP LLP
                              737 Bolivar Road
24                            Cleveland, Ohio 44115
                              BY:  RYAN CAVANAUGH, ESQ.
25                                 EDWARD KELLEY, ESQ.
                                   ATTORNEYS AT LAW
```

```
1    APPEARANCES VIA VIDEOCONFERENCE:

2    For the Plaintiff
     Katherine Tucker:        THE COCHRAN LAW FIRM
3                             1825 Market Center Boulevard
                              Suite 500
4                             Dallas, Texas 75207
                              BY:  DANAE BENTON, ESQ.
5                                  ATTORNEY AT LAW
     For the Plaintiff
6    Linda Schultz:           KERSHAW TALLEY BARLOW
                              401 Watt Avenue, Suite 1
7                             Sacramento, California 95864
                              BY:  IAN J. BARLOW, ESQ.
8                                  ATTORNEY AT LAW

9    For the Defendants
     AngioDynamics, Inc.
10   and Navilyst Medical,
     Inc.:                    POLSINELLI PC
11                            2049 Century Park East
                              Los Angeles, California 90067
12                            BY:  THOMAS YOO, ESQ.
                                   ATTORNEY AT LAW
13                                 -oOo-
                              1717 Arch Street, Suite 2800
14                            Philadelphia, Pennsylvania 19103
                              BY:  AMY MCVEIGH, ESQ.
15                                 WHITNEY L. MAYER, ESQ.
                                   ATTORNEYS AT LAW
16
     For the Defendant
17   PFM Medical, Inc.:       MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
                              AND POPEO, P.C.
18                            2049 Century Park East, Suite 300
                              Los Angeles, California 90067
19                            BY:  ARAMEH ZARGHAM O'BOYLE, ESQ.
                                   ATTORNEY AT LAW
20                                 -oOo-
                              44 Montgomery Street, 36th Floor
21                            San Francisco, California 94104
                              BY:  DANIEL J. HERLING, ESQ.
22                                 ATTORNEY AT LAW
                                   - and -
23                            HAIGHT BROWN & BONESTEEL LLP
                              555 South Flower Street, 45th Floor
24                            Los Angeles, California 90071
                              BY:  KRISTIAN BERNARD MORIARTY, ESQ.
25                                 ATTORNEY AT LAW
```

**THURSDAY - DECEMBER 19, 2024**                          **11:03 A.M.**

**P R O C E E D I N G S**

**--- oOo ---**

       **THE CLERK:**  Please come to order.  This court is
again in session.

       Calling Matter Number 6 on calendar:  24-md-3125,
in re AngioDynamics, Inc., and Navilyst Medical, Inc., Port
Catheter Products Liability Litigation for a status hearing.

       **THE COURT:**  Good morning, everyone.

       **MR. YOO:**  Good morning, Your Honor.

       **THE COURT:**  Appearances from defense counsel first,
please.

       **MR. YOO:**  Good morning, Your Honor.

  Thomas Yoo of Polsinelli for AngioDynamics and Navilyst
Medical.

       **MS. MCVEIGH:**  Good morning, Your Honor.  Amy McVeigh
also from Polsinelli on behalf of the defendants AngioDynamics
and Navilyst Medical.

       **THE COURT:**  Okay.

       **MS. MAYER:**  Good morning, Your Honor.  Whitney Mayer
also from Polsinelli on behalf of defendants AngioDynamics and
Navilyst Medical.

       **THE COURT:**  Okay.  Thank you.

       **MS. O'BOYLE:**  Your Honor, Arameh O'Boyle of Mintz on
behalf of defendant PFM Medical.

1          **THE COURT:**  Okay.  Good morning.

2       Anybody else from defendants?

3          **MR. HERLING:**  And Daniel Herling, PF- -- from Mintz

4    on behalf of PFM Medical, Inc.

5          **MR. MORIARTY:**  And, good morning, Your Honor.

6       Kristian Moriarty of Haight Brown & Bonesteel on behalf

7    of PFM Medical, Incorporated.

8          **THE COURT:**  Thank you.

9       So I'd like to do this by way of appearances from

10   plaintiffs' counsel for the purposes of today's hearing.  If

11   everybody online would just briefly state your name and the

12   law firm that you're representing.

13      And then in terms of the individuals that you're

14   representing, I'd like to ask that you email that into our

15   CASD e-file email address.  This is an attempt to streamline

16   the process a little bit so that, let's say, one set of

17   counsel, for example, Mr. Andrew Van Arsdale, he can just

18   simply email me saying, "I appeared today representing these

19   several people."

20      And every attorney who appears today should also do the

21   same.  And then we will mark those appearances as -- by way of

22   minute entries instead of taking the time to do that -- taking

23   the time to do that today.

24      What I will do instead is just ask everybody to just

25   briefly state their name for the record so that we do know who

1    was and wasn't here today to even get this instruction.

2         **MR. VAN ARSDALE:**  Thank you, Your Honor.  This is

3    Andrew Van Arsdale on behalf of AVA Law Group, and I will

4    email per your instructions.

5         **MR. BALABAN:**  Thank you, Your Honor.  This is

6    Roman Balaban from Roman Balaban and Associates, and we'll

7    email per your instructions.

8         **MS. SCHIAVONE:**  Anne Schiavone, with Holman

9    Schiavone.  And we also will submit an email.

10        **MR. JONES:**  Good morning, Your Honor.  Andy Jones

11   with Cory Watson, and I will email you my appearance as well.

12        **MS. BOLDT:**  Good morning, Your Honor.  This is

13   Kimberly Boldt.  We will do the same.

14        **MS. DICKERSON:**  Good morning.

15      This is Chelsea Dickerson, and we will also email over

16   appearances.

17        **MS. MATYSZCZYK:**  And, Your Honor, this is

18   Blair Matyszczyk, also from Dickerson Oxton, and we will email

19   you a list of cases.

20        **MS. DOMER:**  Jennifer Domer from Cutter Law, and I

21   will do the same.

22        ***(Simultaneous speakers.)***

23        **THE COURT:**  Would you repeat that?  There were two

24   people talking at the same time.

25        **MR. TEMPLEMAN:**  My apologies.  Christopher Templeman

```
 1    from Smith Templeman Law Firm, and we will email like the

 2    others, Your Honor.

 3              THE COURT:  Thank you.

 4              MR. POPE:  Good morning, Your Honor.  Kirk Pope from

 5    Pope McGlamry, and we'll do likewise.

 6              MR. CAVANAUGH:  Good morning, Your Honor.

 7       Ryan Cavanaugh from Constant Legal Group, and we will

 8    email you as well.

 9              MS. BENTON:  Good morning, Your Honor.  Danae Benton

10    with The Cochran Firm, Texas, and we will send an email.

11              MR. O'CONNOR:  Good morning, Your Honor.

12       Mark O'Connor of Beus O'Connor McGroder.  And also with

13    me is my law partner Megan Beus.  We will email.

14       And just for clarity, Your Honor, my pro hac has not been

15    filed -- will be shortly --

16              (Court reporter clarification.)

17              THE COURT:  So, Mr. O'Connor, your connection is a

18    little bit hard to hear.  It's echoey.  Could you repeat that?

19    And if there are any adjustments you could make on your end,

20    we'd appreciate it.

21              MR. O'CONNOR:  All right.  Can you hear me now?

22              THE COURT:  Yes.

23              MR. O'CONNOR:  Yes, I'm Mark O'Connor, and with me is

24    Megan Beus.  We're at Beus O'Connor McGroder in Phoenix,

25    Arizona.  We will comply with your request for the email.
```

1    And I was just advising you -- my pro hac -- will be

2  filed shortly --

3    *(Court reporter clarification.)*

4    **THE COURT:**  So, Mr. O'Connor, your connection still

5  remains not good.  I heard something about a pro hac vice.

6  Please go ahead and get that on file and we'll try to get that

7  processed as soon as possible.

8    Let's keep the appearances rather succinct.

9    Go ahead.

10    Anyone else that we haven't heard from?

11    **MR. YEFIMENKO:**  Good morning, Your Honor.  This is

12  Max Yefimenko from Roman Balaban and Associates.  We'll email

13  you the information requested.

14    **THE COURT:**  Thank you.

15    **MR. MCDOWELL:**  Good morning, Your Honor.  My name is

16  Mike McDowell.  I'm calling from The Carlson Law Firm.  I'm

17  not admitted in the Southern District of California, but our

18  firm is here because we're local counsel for cases through

19  Dickerson Oxley [sic].

20    **MR. BARLOW:**  Good morning, Your Honor, Ian Barlow

21  with Kershaw Talley Barlow.

22    **MS. LINARES-MASCOTE:**  Good morning, Your Honor.

23    Elsa Linares-Mascote from Dickerson Oxton.

24    **THE COURT:**  Could you repeat that?  The last person

25  to speak, if you could repeat that, please?

1      **MS. LINARES-MASCOTE:**  Elsa Linares-Mascote from

2   Dickerson Oxton.

3      **MR. KELLEY:**  Good morning, Your Honor.  Ed Kelley

4   with the Constant Legal Group.

5      **THE COURT:**  Okay.  Thank you, everyone.

6      I paused for about seven beats and I don't hear anybody

7   else chiming in, so I'm going to assume that's the end of the

8   appearances for plaintiffs' counsel.  So let's get to the

9   matter at hand.

10      I received the proposal for a leadership structure.  And

11   the three co-counsel -- the three lead co-counsel and the

12   liaison, the executive committee, and the steering committee.

13      And reviewing the briefing in front of the Court with

14   regard to qualifications and proposed organizational structure

15   and reviewing the qualifications of the people suggested as

16   the co-lead counsel in this case, the Court's tentative is to

17   approve the leadership structure as suggested.

18      I am assuming that this has been discussed among the

19   group of plaintiffs' counsel who respectively represent at

20   this point, I believe, more than 70, 80 separate individuals.

21      Because of the nature of the MDL, normally, if this was a

22   smaller-type matter, I'd just say right now "Are there any

23   objections?"  But it may be that some are not present and new

24   cases keep coming in every day.  So what I will do instead is

25   after this hearing, the Court is going to issue a minute order

1    inviting any objections or concerns with this proposed

2    leadership structure within seven days.  And if the Court

3    doesn't hear any objections of note, it will go ahead and

4    enter a final order approving this leadership structure.

5        For the purposes of today's call, I will go ahead and

6    assume that this is how we're going to proceed, again, on the

7    assumption that per usual that the proposed leadership group

8    has communicated with everybody and that most people -- all if

9    not most people are on board.  But I will give that -- I

10   will -- I'll provide that procedure just in case there are

11   some voices that were not heard and also just to make the

12   record clear that this process played out with an opportunity

13   for everyone to voice any concerns or oppositions.

14       The co-lead counsel or the -- at this point, the proposed

15   co-lead counsel on this case, Ms. Schiavone, Mr. Jones, and

16   Mr. Van Arsdale, any one of you, if you could respond to my

17   questions on this proposal.

18       So, like I said, the Court will review any objections

19   that come in, but so far it looks good to me.

20       I'd like to ask if discussions about -- discussions and

21   final resolution of the fee structure and cost structure that

22   go along with a leadership structure, if those have all been

23   taken care of as well?

24       **MS. SCHIAVONE:**  Your Honor, this is Anne Schiavone

25   with Holman Schiavone.  I believe, Your Honor, that we still

1    need to discuss as it relates to the common benefit fund and

2    percentages, which would be a proposal that we would submit to

3    the Court.

4        And assuming that the leadership structure, that there

5    are -- it is signed off on, we will also begin working on

6    arranging the bank for the common benefit fund and any CPA to

7    be appointed to help us manage the common benefit fund as the

8    leadership group.

9        And as a side note, Your Honor, we did speak amongst many

10   attorneys, and we're pleased to see that there was no

11   competing slate and then it seems like everyone is on board.

12       **THE COURT:**  Okay.  Thank you.

13       So how much time do you think you'll need to submit to me

14   the result of your discussions on the various percentages and

15   the common benefit fund?

16       I know that this is a -- this is going to take some

17   substantive discussion to hammer out all the details on this.

18       **MS. SCHIAVONE:**  If it wouldn't be unreasonable,

19   Your Honor, I think that we could hammer that out in 60 days

20   as well as determine who would be an adequate financial

21   institution to hold funds and also a qualified CPA.

22       **THE COURT:**  Okay.  Thank you.  60 days.

23       So I'll set a date about 60 days out from right now, but

24   unless there are objections from either side, I also would

25   like to proceed with the substance of this case while this

 1    financial information is being hammered out in the background

 2    on a parallel track.

 3        But in the meantime, Mr. Deputy, a date 60 days from now?

 4            **THE CLERK:**  Yes, Your Honor.  We have -- that would

 5    be Thursday, February 20th, Your Honor.

 6            **THE COURT:**  Okay.  So I'll make that submission due

 7    on Thursday, February 20th.

 8            **MS. SCHIAVONE:**  Thank you.

 9            **THE COURT:**  Okay.  And in the meantime, have

10    the -- now that we have a -- not completely final, but now

11    that we pretty much do have the leadership structure, have

12    there been preliminary discussions on some of the possible

13    either threshold questions, threshold legal questions, or

14    common initial 12(b)(6) questions that will need to be

15    resolved before this case can proceed to discovery?

16        What I would like to do is -- and, again, if

17    the -- because everyone was working on the proposed leadership

18    structure, if you haven't started those discussions, then we

19    can table this discussion with me until a later date, until

20    the three co-lead counsel have had a chance to talk to defense

21    counsel.

22        But if you have already started some of these

23    discussions, I'd like to get started on talking about what

24    might that initial set of 12(b)(6) motions look like, and

25    whether any of those are threshold questions that could

1  possibly weigh toward not starting discovery while they're

2  being hashed out.

3      So the distinction between those two routes -- I just

4  want to make myself clear -- is sometimes 12(b)(6) motion

5  practice cleans up the pleadings.  It could be that six causes

6  of action shrink down to four.  But essentially, the

7  parameters of discovery don't really change.

8      And so unless there is a 12(b)(6) motion on the table

9  that's possibly case-ending, that's an instance where I

10  wouldn't necessarily hold up discovery.

11      Even though in federal court, it is the default to wait

12  'til the pleading -- or the motion practice on the pleading is

13  over.  But in a case like this, after we triage the whole

14  situation, if motion practice is not determinative of if this

15  case is going forward, I would like to get that discovery

16  process started right away.

17      However, if defense counsel or everybody after talking

18  says there are three initial threshold legal questions which

19  will answer the question of whether this is going forward, as

20  opposed to how and to what extent and with how many claims

21  that look like X, Y, and Z, then, obviously, I'd like to find

22  out about that, and front-load the motions that would go

23  towards any possible dispositive initial threshold questions.

24      Once those have been resolved, and if the case looks like

25  it's going to proceed, and then send the case to discovery.

1          So, have there been any initial discussions between

2     defense counsel and proposed co-lead counsel at this point as

3     to what that initial round of 12(b)(6) practice might look

4     like, and if it involves the type of case dispositive or

5     possibly case-ending motions that the Court would need to

6     address right away?

7          **MS. SCHIAVONE:**  Anne Schiavone.  I was going to say I

8     defer to opposing counsel, as well as Ms. Dickerson, they may

9     have had some conversations on this issue, but I'm not

10    certain.

11         **MR. YOO:**   Thank you.  Your Honor, Thomas Yoo for

12    AngioDynamics.

13         I believe there are such threshold issues, but in all

14    fairness, I've not had a chance to share my views with

15    plaintiffs' counsel in large part because we wanted to wait

16    for Your Honor's blessing at this proposed state -- slate of

17    leadership.

18         Ms. Dickerson and I did have a brief conversation the

19    other day, only to agree that we've not had a chance to have a

20    substantive meet and confer on these kinds of issues.  So we

21    will do so subject to Your Honor's order here and any

22    scheduling for a return date.

23         **THE COURT:**  Okay.  Thank you.  I appreciate that.

24         Mr. Yoo, so in terms of that type of dispositive

25    threshold 12(b)(6) motion, do you have some sense -- and I

1    understand your hesitation to share with opposing counsel

2    ahead of time, but in civil, "surprise" really isn't the name

3    of the game.

4        Are there some ideas that you have right now in terms of

5    you're planning to proceed with -- and again, I'm just -- this

6    is not -- I'm not suggesting this or even suggesting remotely

7    that they would be successful -- but a type of initial

8    threshold 12(b)(6) motion could be preemption, you know, which

9    would be largely -- possibly largely game-ending.  Are there

10   ones that you specifically have in mind right now?  Just so I

11   can get a sense of -- what I'm trying to do is triage early on

12   what are the th- -- what are the initial 12(b)(6) motions that

13   are going to be on the table before the Court, and how should

14   I prioritize them.

15       Obviously, I've already strongly indicated I want to do

16   the possibly dispositive ones first, the ones that answer the

17   question of whether it's going forward, as opposed to in what

18   shape it is going to go forward.

19       So do you have some in mind currently, Mr. Yoo?  And this

20   is -- I won't hold you to it if you want to bring more, but if

21   you already have some in mind that you know, "I will at least

22   be doing these," I'd like to hear from you right now.

23           **MR. YOO:**  Yes, Your Honor.  I don't want to catch my

24   colleagues across the aisle by surprise.  Again, we've not had

25   a chance to discuss this, but to answer your question,

1    Your Honor, the ones we have in mind include the following:

2        We're aware of 92 cases that have been filed.  I believe

3    about 72 or 73 are currently before Your Honor.

4        Actually, I take that back.  83, I believe, are currently

5    before Your Honor, and nine have not yet been transferred to

6    this MDL.  But we're aware 92 cases having been filed.

7        Of those, we believe 36 of them, so that's nearly 40

8    percent, are officially barred by the statute of limitations.

9        And so, we believe this MDL is off to a pattern where the

10   size of the inventory that Your Honor has is already bloated

11   with cases that just facially don't belong.  We're talking

12   about infections that happened six, seven, eight years ago,

13   what the --

14        **THE COURT:**  Without going into the merits, so statute

15   of limitations --

16        **MR. YOO:**  Understood.

17        **THE COURT:**  Any other issues?

18        **MR. YOO:**  Yes, Your Honor.

19   So statute of limitations on an omnibus basis, we believe

20   we can present it in an efficient manner.

21        Other issues include an in general causation motion that

22   we would propose the Court take up early.

23        This MDL was established over what the pattern view to be

24   one common issue, and that's the allegation about how much

25   barium sulfate was used in the catheter of the various port

1    catheters.  And that level of barium sulfate used caused an

2    increased risk of fracture, infection --

3         **THE COURT:**  Mr. Yoo, I'm just trying to kind of get

4    that high-level sense of what types of issues.

5         So, basically, you said "general causation," would that

6    be a 12(b)(6)?  Or would that be some early request to me to

7    limit discovery to just general causation?  Or -- not limit --

8    bifurcate somewhat or prioritize discovery or bifurcate

9    proceedings to deal with general causation first?

10        Is it more of a case -- an early case management request?

11        **MR. YOO:**  It's the latter, Your Honor.  I don't -- I

12   don't think this will be a motion brought on the four corners

13   of the complaint, but it would be a proposal to structure

14   discovery --

15        **THE COURT:**  Yes, so the matter -- so we have statute

16   of limitations motions, we have an early request for general

17   case management from you.  What else?  Just very high level.

18        **MR. YOO:**  Yeah, the failure to warn allegation causes

19   of action, we believe, are barred based on the nature of the

20   alleged injury and what's in the IFU for these products.

21   The --

22        **THE COURT:**  So is this a 12(b)(6), Mr. Yoo?

23        **MR. YOO:**  It may be, Your Honor.  So we discussed --

24        **THE COURT:**  I'm not asking for -- I'm not asking for

25   you to go into all your defenses right now.  I just want to

1    know --

2            **MR. YOO:**  Yeah.

3            **THE COURT:**  -- what early motions am I going to see

4    from you so that I can figure out which ones do I want to do

5    first?

6            **MR. YOO:**  Yes, Your Honor.

7            **THE COURT:**  So the statute of limitations, that makes

8    sense for me to handle very early, if not the earliest.

9        I will grapple with -- just in terms of judicious case

10    management, I will want to grapple with this general

11    causation, how -- how and whether to -- and to what extent we

12    want to bifurcate to see if the -- this one general causation

13    answer -- answers all the questions, and if that ends up being

14    the most efficient way to go.

15        Anything else early on that you have right now in your

16    head?  And if not, that's fine.

17            **MR. YOO:**  Your Honor, we may bring a 12(b)(6) motion

18    on the failure to warn claim.  But I -- I -- we're going to

19    need to discuss that with plaintiffs' counsel and make a final

20    decision --

21            **THE COURT:**  Okay.

22            **MR. YOO:**  -- on that, whether it's brought as a 12(b)

23    or later on.

24            **THE COURT:**  Okay.  Thank you.

25        And for the statute of limitations argument, in your

1    head, Mr. Yoo, because as the defendant, you'll be the one

2    bringing the motions, and I know that you have discussions to

3    do with opposing counsel, and you'll meet and confer, and then

4    it will modify the contours of that, but at least in your head

5    right now, the statute of limitations question, do you think

6    the question is such that I can answer for you one legal

7    question?

8        For example, one possible -- one legal question could be,

9    is discovery at the point when you take out the implant?

10       Or is it at a later point when you discover there was

11   something wrong with the implant that may have caused you to

12   take it out four years ago?

13       Is it going to pretty much come down to that line as to

14   when do we start calculating the statute of limitations?

15       Does it start when "Well, you clearly knew something was

16   wrong when you took it out of your body?"  Or a possible

17   plaintiffs' side argument saying, "No, we didn't know there

18   was something wrong with the device.  We knew that I was

19   interacting in a not helpful way with the device, but we

20   didn't know that there was a problem with the device such that

21   that was what caused my injuries."

22       Are all of these 36 statute of limitations motions pretty

23   much going to come down to that issue, which is the point of

24   discovery?

25       Or is it going to break down into different types of

1    questions for different types of cases?

2        **MR. YOO:**  I believe the way these complaints are

3    alleged is one and the same.

4        In other words, Your Honor, I've reviewed all of these

5    complaints as they come in.  They all allege that the device

6    was taken out at the time a complication was discovered.

7        So that is why we think this can be done at the pleading

8    stage rather than having to await case-specific discovery.

9        **THE COURT:**  But does it come down to that question,

10   is that when you count the statute of limitations?

11       Or is it later when they say they found out something was

12   wrong with the device?

13       Is that the -- am I going -- basically, is the answer to

14   all these motions going to hinge on the answer to that

15   question?  Or are there going to be different questions for

16   different motions?

17       **MR. YOO:**  No, Your Honor.  We believe these will all

18   boil down to one common legal issue, is when does the statute

19   begin to run in a case like this?

20       **THE COURT:**  Okay.  Thank you.

21       So the dates will be different, but whether I count it

22   from the doctor for saying, "Oh, there might be something

23   wrong," or whether I count it from when it actually -- you

24   have it explanted out of the heart, or whether I count it

25   from, "Oh, I read somewhere that, oh, here's why I had such

1    problems four years ago, and here's why the doctor took it out

2    of my heart is because there was something wrong," whether I

3    count it from that point.  So if that -- that makes sense.

4        And then how best to tee that up for the Court, I will

5    leave for defense counsel and co-lead counsel to figure out.

6        Because if it's essentially, if after talking -- if after

7    meeting and conferring, if everybody agrees that is the

8    essential legal question, I'd like to answer -- and I will

9    issue a ruling, I'd like to answer that legal question, and

10   then leave it to the parties to then tell me, "Okay, these

11   are -- if this is your answer, if this is the line that I'm

12   drawing, these cases fall on the good side of that line, and

13   these cases fall on the bad side of that line," and figure out

14   a way to tee that up for me so that I can just answer that

15   question as opposed to separately doing the math of, "When was

16   this person's surgery?  When was this person's they read an

17   article in the newspaper, when this was person's et cetera,"

18   and I think everybody here is experienced enough with these

19   types of cases that, hopefully, you're following what I'm

20   saying with regard to this.

21       And -- okay.  So thank you for giving me that initial

22   sense of what might be coming down the line.

23       Plaintiffs' counsel, as you know, I'm giving defendants'

24   counsel the spotlight here because they'll be the -- they'll

25   be the ones bringing these initial defensive motions in terms

1    of 12(b)(6).

2        But I will give plaintiffs' counsel a chance to address

3    to me, are there initial case management-type requests that

4    you'll be wanting me to answer sooner rather than later?

5        And, for example, while defense counsel is in the

6    driver's seat of what 12(b)(6) motions get brought,

7    plaintiffs' counsel might equally have some urgent requests

8    about case management and discovery parameters like that

9    general causation issue raised by Mr. Yoo.

10       If any- -- if anyone on the plaintiffs' side would like

11   to chime in on that, would love to hear you.

12       **MS. SCHIAVONE:**  Your Honor, this is Anne Schiavone.

13       As far as case management issues, I would say things that

14   are more pressing, just from an administrative standpoint, a

15   direct filing protocol that we could propose.  And then also a

16   pro hac vice protocol.

17       And then we worked with defense counsel on the individual

18   cases with the waiver of service forms, but we probably need

19   to get that formalized in order.

20       Those are the more administrative things that we could

21   start working on now that would be part of the case

22   management.

23       **THE COURT:**  Okay.  So pro hac vice requests, direct

24   filing instead of having to wait to go to the district and

25   then have it get transferred here through the national

1    committee.

2        So, for the -- and what was the third administrative

3    issue?  Would you repeat that for me, Ms. Schiavone?

4        **MS. SCHIAVONE:**  Just making sure that we're all on

5    the same page, that the waiver of service forms that we've

6    been using with defense counsel is fine for these cases with

7    all the defendants.

8        **THE COURT:**  Okay.  So the service issue, I'll let the

9    parties meet and confer about that.  You could do that by way

10   of stipulation.  And if you feel any remaining nervousness

11   after that, you can submit it to me as a joint motion, which

12   is what we call stipulations in terms of filing nomenclature

13   in this district.

14       For the first two issues, in terms of pro hac vice, I've

15   been seeing them trickle in.  What alternate procedure -- what

16   more streamlined alternate procedure would you suggest,

17   Ms. Schiavone?

18       **MS. SCHIAVONE:**  I don't necessarily know, Your Honor,

19   if off the top of my head I have a more streamlined one just

20   so that everyone's on the same page of getting their pro hac

21   on file for these cases.

22       **THE COURT:**  Okay.  So it's just a matter of

23   then -- okay, so it's not saying that -- you're not suggesting

24   that there can be something improved about the procedure, but

25   you just want me to take some more control of making sure

1    everyone files their pro hacs on time -- or within a

2    reasonable --

3              **MS. SCHIAVONE:**  I would say so, Your Honor.

4              **THE COURT:**  Okay.  Thank you.

5         I'll issue a court order.  I'll send this out by minute

6    order as well so that -- just in these early hearings, I'm

7    always nervous because of the moving pieces and people joining

8    as late as this morning, just in case there are a chunk of

9    people who are not present today.  And so I'll issue this by

10   minute order as well, which is I'll set a deadline for

11   everyone to file their pro hacs.

12        And then I will set an ongoing deadline for people who

13   are to join in the future, to file them within a set number of

14   days, so that there's some structure for people to come into.

15        Now, the second question, which is the direct filing,

16   Ms. Schiavone and others who -- the co-lead counsel who are

17   experienced in MDLs, or Mr. Yoo, if you're experienced in

18   MDLs, I'm not.  I am very familiar with these types of cases,

19   but this is my first MDL as a judge.

20        So in terms of direct filing, I'm sitting here right now

21   and thinking, that makes total sense to me that you don't have

22   to go through three steps before you come here.  But I also am

23   very little educated as to whether that's going to make the

24   national judges committee or create some kind of problem that

25   I'm not seeing.

1      So if people want to -- if the co-lead counsel at this

2   point want to weigh in on previous experiences when there are

3   large, large MDLs with mass torts with hundreds and hundreds

4   of plaintiffs, do those cases usually go to direct filing at

5   some point?

6      And who needs to be -- who do we need to notify or

7   request permission of to make that happen?

8      Or is it as simple as me issuing an order allowing that,

9   and then notifying national committee on the back end?

10     What does that usually look like?

11        **MS. SCHIAVONE:**  Chelsea, do you mind, since you

12   were -- from the bar litigation, do you mind taking this one

13   as to the most streamlined way to handle it?

14        **MS. DICKERSON:**  Sure.  Yes, Your Honor.

15     So we'll bring up the Bard port catheter MDL that's been

16   in front of Judge Campbell in Arizona, only because it dealt

17   with that company's port catheter devices.

18     It's been handled very well and we've had no problems at

19   all with direct filing.  So we actually, as plaintiff

20   leadership, will send out a guide to new counsel that's

21   involved.

22     But you're right, there's no problem, and I think

23   everyone prefers that plaintiffs file directly into the MDL as

24   opposed to having three steps, and then someone new then has

25   to transfer the cases.

1    So what happens is the cases are directly filed into the

2    main MDL case, and then they're appointed as a member case in

3    front of the judge and incorporated as part of the MDL.

4    We have proposed language we can include in a case

5    management order that would spell those steps out in detail,

6    and we're also happy to work with the clerk on any

7    administrative items to make sure that that runs smoothly.

8    But that is actually preferred.  I think there might be

9    actually people who are -- I don't want to use the word

10    "upset," but just administratively speaking, it will work much

11    more smoothly to have it done that way as opposed to relying

12    on those transfers.

13    **THE COURT:**  Okay.  Thank you.

14    I'd really appreciate you submitting that proposed order

15    and what you described as the list of steps.  And if you want

16    to submit that to my CASD e-file box and copy everybody so

17    that it's not an ex parte communication, and I'll take a look

18    at that and do some asking around on my end.

19    It sounds like, unless I discover that there's some type

20    of other countervailing logistical hurdle, it's something that

21    I would be inclined to do.

22    And I will -- and if I approve that, I'll get that on the

23    record shortly, because it would make everything easier, not

24    only for the parties, but also court staff so that we're not

25    shuffling all these cases, and even within the district so

 1   that we don't have to transfer the cases within my colleague

 2   judges in the Southern District of California.

 3        So if you would go ahead, if you have that,

 4   Ms. Dickerson, if you already have that ready at the -- at

 5   your fingertips, if you could submit that within the day or

 6   next two days, and then we'll, like I said, we'll take a few

 7   minutes to -- we'll take a few minutes not only to look at

 8   that and then ask around a little bit, and we'll try to get

 9   this resolved really quickly so that there isn't this -- there

10   aren't these needless logistical hurdles.

11        **MS. DICKERSON:**  Absolutely.

12   I would just ask, I'd like to have everyone in our group

13   to be able to weigh in and see that first.  That's the step

14   that I haven't done.  Would it be possible for me to have a

15   grace period of a week to submit that information?  Is that

16   okay?

17        **THE COURT:**  That sounds good.  Thank you.

18        **MS. DICKERSON:**  Okay.  All right.  Will do.

19        **THE COURT:**  And, Mr. Yoo, is that something -- for

20   these administrative concerns, is any of this giving you any

21   type of concern or worry?

22        **MR. YOO:**  It is, Your Honor.  Nothing that can't be

23   worked out.  Some MDL judges use the conventional way, but

24   direct filing is common in MDLs.

25        From the defense perspective, the only issues -- I

1    shouldn't say "the only issues," but the main issues are

2    language appropriate in the proposed CMO that protects

3    defendants' lexicon rights and personal jurisdiction rights.

4        So I imagine these are going to be plaintiffs hailing

5    from jurisdictions all around the country and yet they're

6    filing directly in California.  So we just need some language

7    to make sure that defendants aren't waiving any of those

8    rights.

9        So normally what happens is lead counsel on both sides of

10   the aisle get together and try to work out a proposed case

11   management order to cover this.

12       **MS. DICKERSON:**  And I'm fine, Your Honor, with

13   working with Mr. Yoo to do that.

14       **THE COURT:**  Okay.  Thank you.

15       So, yes, please go ahead and have those conversations,

16   and I will look forward to -- and I'll look forward to your

17   submissions.

18       So we will -- so let me just briefly recap here.

19       I'm going to send out a minute order asking for

20   any -- asking for -- if anybody has any concerns with the

21   proposed leadership structure.  If there are no concerns, I am

22   going to go ahead and adopt as proposed.  And as you can tell,

23   I'm already working under the assumption that this is going to

24   be the leadership structure unless the Court decides

25   differently based on submissions.  So that's going to play out

1     in the next seven days.

2          Also in the next seven days, Mr. Yoo and Ms. Dickerson

3     are going to talk about some of these administrative concerns

4     and submit some kind of joint proposed case management order,

5     and in the meantime, I'll be looking into if there are any

6     concerns with a direct filing process just from a courts and

7     systems perspective.

8          And then, finally, we had some -- we started to have some

9     discussion about what the initial round of -- initial round of

10    motion practice might look like.

11         And like I said to Mr. Yoo, he's not limited to what he

12    very graciously gave me a forecast and a heads-up on, but it

13    would include -- unless he changes his mind -- a 12(b)(6) on

14    statute of limitations for 36 of the cases, as well as a

15    possible 12(b)(6) on failure to warn, and an early case

16    management request to me to bifurcate general causation from

17    other matters either just for discovery or for all purposes.

18    And that is -- and I agree, that's something that we want to

19    take a look at early as well.

20         And so -- and then plaintiffs, I know that there are more

21    of you, and you have a greater need for coordination and

22    communication, so if you have any early motions that you'd

23    like to bring in front of me, I will just -- I'll set -- I'll

24    just set some dates where you can do that, and so even if you

25    didn't tell me about them today, that you can bring any that

1    you feel that you need to.

2        So I'll start with you, Mr. Yoo, for these early motions,

3    the ones that you're telling me it would be most helpful to

4    have a very early answer from the Court on, when do you think

5    that you could get these on file?

6        And this process would build in, of course, not only you

7    speaking with your clients, but you doing the appropriate

8    meet-and-confer with the other side and then getting the

9    motion on file, what's the time frame do you think -- what's

10    the time frame in which you could do that?

11        **MR. YOO:**  Given the holidays and some of the other

12    things that we'll need to work on, may we have 60 days?

13        **THE COURT:**  Okay, 60 days.

14        And in terms of -- so -- and in terms of a -- and in

15    terms of responses -- any of the co-lead counsel can chime in

16    on this -- what do you think is a reasonable time for me to

17    give you to respond to these motions, given that -- with the

18    leadership structure, and given that there are many of you,

19    and the level of coordination that might be required which

20    should be higher than, you know, what Mr. Yoo has to do, which

21    is, you know, he needs to get the okay from the people he

22    works with and his client -- what do you think is a reasonable

23    response time?

24        If he files his initial motions in 60 days, what's

25    the -- what is a good response date for me to set for you?

1    This is the number of days after he files.

2         **MS. BOLDT:**  Your Honor, if I could speak on that for

3    the plaintiffs' team, if that's okay, and I didn't want to

4    jump in here --

5         **MS. SCHIAVONE:**  Of course.

6         **MS. BOLDT:**  Okay.  So, Your Honor, I think we would

7    need at least 30 days, and because our -- my concern is I'm

8    very familiar with this statute of limitations issue, and I

9    actually think our position's going to be different than

10   Mr. Yoo's.

11       I think our position is going to be that Your Honor can't

12   really do this on any type of big question basis because it's

13   going to be factual as to each plaintiff and the state that

14   they're from because it's going to be their state statute of

15   limitations that's going to apply.  And so many states have

16   the discovery rule and different variations of the discovery

17   rule.

18       So, for example, if the defense were to file a motion

19   that was directed at 36 different plaintiffs, then we're going

20   to be talking about -- and however many of those are from

21   different states, we may end up talking about and briefing

22   issues relating to different states.

23       So, I think that we would definitely need that additional

24   time.

25         **THE COURT:**  Okay.  So I'm going to set the -- so 60

1    days from today, Mr. Deputy, is?

2              **THE CLERK:**  Your Honor, 60 days is February 20th.

3              **THE COURT:**  February 20th.

4        And then I'm going to give the requested 30 days, but I

5    will circle back to some of your comments, Ms. Boldt, in terms

6    of the type of motions that I'm looking for from both of you

7    at this point.

8        What's 30 days from that, Mr. Deputy?

9              **THE CLERK:**  Thirty days from February 20th, Your

10   Honor, is... Your Honor, that is March 21st.

11             **THE COURT:**  Okay.  March 21st.

12       So that's your opposition deadline, plaintiffs' counsel.

13       And then for reply, I will give two weeks after that,

14   which is, Mr. Deputy?

15             **THE CLERK:**  Your Honor, that is Friday, April 4th.

16             **THE COURT:**  Okay.  Friday, April 4th.

17       So -- and this is for everybody here -- and this is

18   specific to the statute of limitations motions -- meet and

19   confer ahead of time is going to be very key here.  Because

20   what I do not want to see in -- playing out in the motion

21   paperwork is Mr. Yoo moving on some common grounds for all 36,

22   and for defense counsel for their only defense -- not their

23   only defense -- but their main defense to that motion is

24   throwing your hands up and saying, "No, no, no, this is so

25   individual because somebody, you know, this happened in this

1    time frame, this happened like this and this was their journey

2    of discovery and, you know, it's going to be intensely

3    factual, et cetera, et cetera, et cetera."

4        I fully acknowledge that, but I think in motions like

5    this -- and this is -- again, all of you know more about this

6    case than I do at this point, but what I did to educate myself

7    before this hearing is I went through the -- I believe I chose

8    Brierley, just because that was the one that was originally

9    assigned to me.  So for me, that was the patient zero case.  I

10   looked at the motion to dismiss with regard to that, and it

11   really appeared to me that while there will be differing

12   facts, it appeared to me that defense counsel would be arguing

13   something like statute of limitations, that that time period,

14   it should be, for all of these, when the device was explanted

15   from the heart, or when the doctor told them that they would

16   need an explantation or raised medical concerns.

17       What plaintiffs' argument for when they argue discovery

18   should be counted from, that will be factually different.

19   You'll say, "For Plaintiff Number 1, it will be on this date

20   when they found out this information in this way."

21       And "For Plaintiff Number 17, it will be on this date

22   when somebody told them this in this particular context, and

23   that's what led them to discover that, oh, it was actually a

24   problem with the device."

25       And you're going to argue to me that that's the date in

1    which the statute of limitations calculation should begin.

2        But within those differences and facts, there will be

3    common questions, common questions like, "Is it the point when

4    you have it removed from your heart, so at least at that point

5    you clearly know there was something wrong with this

6    situation?"  Or "Is it going to be some point where the

7    plaintiffs know that it was the device, specifically that

8    there was a fault with the device?"

9        So within the range of all the different factual

10   differences, I think there will be common questions that can

11   be answered in the form of this initial motion.

12       So what I would like -- and how I would like this teed up

13   to me is not your -- this will be -- this is a 12(b)(6) on

14   statute of limitations, but I'd like you to tee this up to me

15   in terms of subcomponent common questions that I can answer

16   en masse, which may, then, still leave some open questions for

17   a few of the cases around the edges.

18       But my guess right now is that Mr. Yoo is going to argue

19   for every single one of these that the clock ticking starts at

20   the very latest when it was taken out of the heart.

21       If I can answer that question, if I answer it in his

22   favor, and that trips up some big chunk of these plaintiffs,

23   then that is a common question with an answer that's going to

24   apply to many people.

25       If I answer that in the negative, if I say, "No, in this

1    particular case, that's not when the statute of limitations

2    starts running, that's not when the clock starts ticking.

3    It's going to start at the moment when the plaintiff knew that

4    the medical troubles that they had been having, including the

5    explantation, all comes down to this fault specifically with

6    the device itself," if I accept that answer, then you

7    can -- all of you can use that answer to then do calculations

8    like, "Okay, if that's the line, for me, that's January 17th,

9    2019.  For you, that's February 27th, 2022."  But you can use

10   that common answer to figure out what that means for each of

11   your separate cases in terms of statute of limitations.

12        So I am not at all expecting to see a defense to

13   Mr. Yoo's motion that reads, "Your Honor, you can't do these

14   en masse."

15        I'm going to expect that everybody sit down and figure

16   out the parts I can do en masse, and then tee them up to me.

17        Because they're -- because the way that I see it, there

18   certainly will be some.

19        And then after you get certain rulings from me, it's not

20   at the point of explantation, or it is at the point of

21   explantation, it is or is not at the point where you find out

22   it's because the device itself was fundamentally faulty

23   leading to complications or adverse events in certain ways,

24   you can take that answer and then separately for each case

25   apply that back out to your cases.  But you shouldn't be

1   asking me to do that math.  You should just be asking me for

2   the answers to these common questions.  After you get that

3   answer, then you can plug them into your separate plaintiffs'

4   timeline and then go from there.

5        So the -- yes, so we have the dates set.

6        Did we set a hearing date?

7        I set all the briefing dates, but I did not set a hearing

8   date.

9        Mr. Deputy, a hearing date about three -- or -- actually,

10  yeah, about two weeks out from that point, what does that look

11  like?

12            THE CLERK:  Yes, Your Honor, that will get us to

13  Thursday, April 17.

14            THE COURT:  Okay.  Thank you.  So Thursday, April 17.

15  That's the -- that's going to be the hearing date.  And we'll

16  set this for 9:30 in the morning.  And we will take -- we'll

17  take argument at that point.

18       Usually, how I run my oral arguments is you don't get a

19  tentative ahead of time, but at the beginning of the hearing

20  I'll let you know where I'm leaning, what my tentative is, and

21  then I'll take argument mostly from the side that the

22  tentative runs against.

23       The other side can respond to whatever degree they feel

24  necessary.

25       And then at that point, you'll either just get rulings

1    from me, or get -- or I'll let you know if I'm taking certain

2    things under submission at that point.

3        So now we have a briefing schedule, we have a hearing

4    date, and we have a to-do list of items.

5            **MR. YOO:**  Your Honor?

6            **THE COURT:**  Yes.

7            **MR. YOO:**  Excuse me.  Before we leave this topic, may

8    I propose a page limit extension of 30 pages for the moving

9    papers and opposition and 15 pages for the reply?

10           **THE COURT:**  That's fine with me.  I'm sure

11   everybody --

12           **MR. YOO:**  Thank you.

13           **THE COURT:**  -- on both sides of the view would

14   appreciate the added flexibility.

15       Anything else that the parties would like me to address

16   earlier on?

17       I have -- like I forecasted, I think we do need to -- I

18   agree with Mr. Yoo, that we do need to tackle this issue of

19   are we going to do -- are we going to limit discovery to

20   general causation only first?

21       And so I want to take care of that before I send you to

22   the magistrate judge.  So that's why I've held off on that.

23       But from listening to everybody and listening to what the

24   threshold issues are, this isn't a case where I'm going to

25   hold up the start of discovery and wait -- you know, to wait

1    for the entirety of 12(b)(6) motion practice to conclude,

2    especially if we're going to limit it to general causation,

3    then this is discovery that you'd have to be doing for some

4    large chunk of these individuals anyway.

5        But I will wait until I rule on this general causation

6    issue.

7        Anything else that I can address earlier, sooner rather

8    than later for efficient management of this case?

9        **MS. DICKERSON:**  Your Honor, I just wanted to be clear

10   on the direct filing.  I know we had talked about a week out

11   to get that to you.  Obviously, Mr. Yoo had his comments on

12   that piece, and we needed to meet and confer.

13       If the Court's amenable to this, we could meet and confer

14   first.  I'm hopeful we could agree on an administrative

15   issue like that, and we could get something to the

16   judge within -- to Your Honor within 30 days.  Would that be

17   agreeable?

18       **THE COURT:**  Actually -- because there's two pieces to

19   this.  I very much encourage the meet and confer and both of

20   you putting something on the table.  And please do that for

21   the litigation purposes; however, there's a second aspect of

22   this which is all of you helping to educate a judge who hasn't

23   done an MDL before, and I'd really just love to see -- and

24   again, I know you don't want to make a move that you haven't

25   cleared by your other plaintiffs' counsel, but I'd love to

1    just see -- I think what you mentioned was just some kind of

2    proposed order -- or actually, let's do this, since I want to

3    divorce this from advocacy and the adversarial process -- if

4    you could just give me something that another judge has signed

5    off on and then -- in terms of what direct filing would look

6    like and what the steps would be, just as an FYI or an

7    assistance to the Court, as in this is what this can look like

8    or this is what it has looked like.

9        And then in terms of what it will look like in this case,

10   I'll leave that to the meet-and-confer process and give you

11   that longer time frame.

12       So in terms of educating me, that's a little more urgent,

13   so I'm going to ask for that in a week so that you can say,

14   "Hey, anyone have problems if I send this to Judge Ohta?"

15       And then in terms of the meet-and-confer where you two

16   will hash things out and agree on some joint case management

17   order, I will give you that longer time frame.

18       **MS. DICKERSON:**  Absolutely.  That sounds great.

19   Thank you.

20       **THE COURT:**  Okay.  And just so no one leaves this

21   hearing with lack of definite dates, I'm going to set a date

22   for that as well, then, which is -- 30 days from now,

23   Mr. Deputy?

24       **THE CLERK:**  Yes, Your Honor.  Thirty days from now is

25   January -- Your Honor, that is Tuesday, January the 21st.

1          **THE COURT:**  Okay.  Tuesday, January 21st.  And that's

2    when that joint proposed case management order will be due.

3          **MS. DICKERSON:**  Excellent.  Thank you, Your Honor.

4          **THE COURT:**  Okay.  Thank you so much, everyone.

5          **MR. YOO:**  Thank you, Your Honor.

6          **THE COURT:**  And everyone's going to not forget to

7    follow up and email me your appearances on behalf of who.

8       Thank you.

9       *(Proceedings were adjourned at 12:01 p.m.)*

10                              -oOo-

11

12                    **C E R T I F I C A T E**

13          **I, Cristine R. Gerongco, certify that I am a duly**
     **qualified and acting Official Court Reporter for the United**
14   **States District Court; that the foregoing is a true and**
     **accurate transcript of the proceedings as taken by me in the**
15   **above-entitled matter; and that the format used complies with**
     **the rules and requirements of the United States Judicial**
16   **Conference.**

17

18                         **Dated:  January 6, 2025**

19                         **/s/ Cristine R. Gerongco**
                           _____
20                         **Cristine R. Gerongco, CSR 13517**
                           **U.S. Official Court Reporter**

21

22

23

24

25