1

**POLSINELLI LLP**
THOMAS J. YOO (SBN 175118)

2
tyoo@polsinelli.com
2049 Century Park East, Suite 2900

3
Los Angeles, CA 90067
Telephone:   310.556.1801

4
Facsimile:   310.556.1802

5
**POLSINELLI PC**
AMY MCVEIGH (*pro hac vice*)

6
amcveigh@polsinelli.com
WHITNEY MAYER (*pro hac vice*)

7
wmayer@polsinelli.com
1717 Arch Street, Suite 2800

8
Philadelphia, PA 19103
Telephone: 215.267.3001

9
Facsimile: 215.267.3002

10
*Attorneys for Defendants*
*AngioDynamics, Inc. and*

11
*Navilyst Medical, Inc.*

12

13
### IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14

15
IN RE: ANGIODYNAMICS, INC.,
AND NAVILYST MEDICAL, INC.,

16
PORT CATHETER PRODUCTS
LIABILITY LITIGATION,

17

18
THIS DOCUMENT RELATES TO:

19
*Melinda Amon v. AngioDynamics, et al.*,
No. 3:24-cv-02381-JO-VET;

20
*Deborah Austin-Rogers v. AngioDynamics, et al.*, No. 3:24-cv-02448-JO-VET;

21
*Shanna Avis v. AngioDynamics, et al.*,
No. 3:24-cv-01912-JO-VET;

22
*James Beach v. AngioDynamics, et al.*,
No. 3:25-cv-00184-JO-VET;

23
*Nancy Blankenship v. AngioDynamics, et al.*,
No. 3:24-cv-01952-JO-VET;

24
*Danny Brierly v. AngioDynamics, et al.*,
No. 3:24-cv-00865-JO-VET;

25
*Chaya Caldwell v. AngioDynamics, et al.*,
No. 3:25-cv-00142-JO-VET;

26
*Clinton Carrier Jr. v. AngioDynamics, et al.*,
No. 3:25-cv-00293-JO-VET;

27
*Leslie Chapman v. AngioDynamics, et al.*,
No. 3:24-cv-02389-JO-VET;

28
*Irene Combs v. AngioDynamics, et al.*,
No. 3:25-cv-00326-JO-VET;

Case No. 3:24-md-03125-JO-VET

Assigned for All Purposes to Hon. Jinsook Ohta

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS ANGIODYNAMICS, INC. AND NAVILYST MEDICAL, INC.'S MOTION TO DISMISS**

[*Submitted concurrently with Notice of Motion and Motion*]

Date:      April 17, 2025
Time:      9:30 AM
Ctrm.:     4C

1    *Lillian Cothrin v. AngioDynamics, et al.*,
     No. 3:25-cv-000278;

2    *Gage Coyler v. AngioDynamics, et al.*,
     No. 3:24-cv-01864-JO-VET;

3    *Lisa Danforth v. AngioDynamics, et al.*,
     No. 3:25-cv-00328-JO-VET;

4    *Miranda Davenport v. AngioDynamics, et al.*,
     No. 3:25-cv-00180-JO-VET;

5    *Joyce Davis v. AngioDynamics, et al.*,
     No. 3:24-cv-02176-JO-VET;

6    *Shannon Elwell v. AngioDynamics, et al.*,
     No. 3:24-cv-01895-JO-VET;

7    *Teonna Foster v. AngioDynamics, et al.*,
     No. 3:24-cv-01897-JO-VET;

8    *Robert Freeman v. AngioDynamics, et al.*,
     No. 3:24-cv-01954-JO-VET;

9    *Sheila Goodson v. AngioDynamics, et al.*,
     No. 3:25-cv-00188-JO-VET;

10   *Julia Goricki* v. *AngioDynamics, et al.*,
     No. 3:25-cv-00315-JO-VET;

11   *Danyelle Hankal* v. *AngioDynamics, et al.*,
     No. 3:25-cv-00182-JO-VET;

12   *Latisha Harris* v. *AngioDynamics, et al.*,
     No. 3:24-cv-02338-JO-VET;

13   *Don Holder v. AngioDynamics, et al.*,
     No. 3:24-cv-02449-JO-VET;

14   *Eboni Honore v. AngioDynamics, et al.*,
     No. 3:24-cv-01893-JO-VET;

15   *Kimberly Howard v. AngioDynamics, et al.*,
     No. 3:24-cv-01861-JO-VET;

16   *Essie Johnson v. AngioDynamics, et al.*,
     No. 3:25-cv-00371-JO-VET;

17   *Denise Jones v. AngioDynamics, et al.*,
     No. 3:24-cv-01905-JO-VET;

18   *Sallie Jones v. AngioDynamics, et al.*,
     No. 3:24-cv-02214-JO-VET;

19   *William Jones v. AngioDynamics, et al.*,
     No. 3:24-cv-01901-JO-VET;

20   *Samuel Jordan v. AngioDynamics, et al.*,
     No. 3:24-cv-02390-JO-VET;

21   *Katherine Kritsch v. AngioDynamics, et al.*,
     No. 3:25-cv-00042-JO-VET;

22   *Julie Lapper v. AngioDynamics, et al.*,
     No. 3:24-cv-02357-JO-VET;

23   *Marshall Leverette v. AngioDynamics, et al.*,
     No. 3:25-cv-00294-JO-VET;

24   *Callee Love v. AngioDynamics, et al.*,
     No. 3:25-cv-00259-JO-VET;

25   *Matthew Massingill v. AngioDynamics, et al.*,
     No. 3:25-cv-00273-JO-VET;

26   *Pearl Meyer v. AngioDynamics, et al.*,
     No. 3:25-cv-00303-JO-VET;

27   *Billy Millam v. AngioDynamics, et al.*,
     No. 3:25-cv-00181-JO-VET;

28   *Alan Montgomery v. AngioDynamics, et al.*,

No. 3:25-cv-00218-JO-VET;
*Erika Moore v. AngioDynamics, et al.,*
No. 3:25-cv-00097-JO-VET;
*Linda Norris v. AngioDynamics, et al.,*
 No. 3:24-cv-02399-JO-VET;
*Kristin Patchett v. AngioDynamics, et al.,*
No. 3:24-cv-01902-JO-VET;
*Youwith Pinnock v. AngioDynamics, et al.,*
No. 3:25-cv-00271-JO-VET;
*Robert Porter v. AngioDynamics, et al.,*
No. 3:24-cv-01898-JO-VET;
*Tina Powell v. AngioDynamics, et al.,*
No. 3:25-cv-00297-JO-VET;
*Robert Reynolds v. AngioDynamics,et al.,*
No. 3:25-cv-00296-JO-VET;
*Don Ryan v. AngioDynamics, et al.,*
No. 3:24-cv-02033-JO-VET;
*Laura Schultz v. AngioDynamics, et al.,*
No. 3:24-cv-01921-JO-VET;
*Joanne Seim v. AngioDynamics, et al.,*
No. 3:24-cv-01675-JO-VET;
*Linda Shepherd v. AngioDynamics, et al.,*
No. 3:24-cv-01907-JO-VET;
*Kelley Silva v. AngioDynamics, et al.,*
No. 3:25-cv-00190-JO-VET;
*Brandi Smalley v. AngioDynamics, et al.,*
No. 3:24-cv-01957-JO-VET;
*Vanessa Straughter v. AngioDynamics, et al.,*
No. 3:24-cv-01908-JO-VET;
*William Trail v. AngioDynamics, et al.,*
No. 3:25-cv-00322-JO-VET;
*Stacy Valdez v. AngioDynamics, et al.,*
No. 3:24-cv-02490-JO-VET;
*Gregory Warne* v. *AngioDynamics, et al.,*
No. 3:24-cv-01900-JO-VET;
*Pamela Wilson v. AngioDynamics, et al.,*
No. 3:24-cv-02377-JO-VET;
*Constance Wood v. AngioDynamics, et al.,*
No. 3:25-cv-00343-JO-VET;
*Tracy Woodward v. AngioDynamics, et al.,*
No. 3:25-cv-00350-JO-VET.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS ......................................................................................3

    A.  AngioDynamics and the Port Catheter Products .......................................3

    B.  The JPML Coordinates Actions in this Court ............................................3

    C.  Each Plaintiff Claims an Injury Allegedly Connected to and Caused by a Port Catheter ...........................................................................................4

III.  LEGAL FRAMEWORK .........................................................................................7

    A.  Applicable Law ..........................................................................................7

    B.  Legal Standard on Motion to Dismiss Under Rule 12(b)(6) ......................9

IV.  ARGUMENT ..........................................................................................................9

    A.  Plaintiffs' Product Liability Claims are Barred by the Applicable Statutes of Limitations ......................................................................................10

        1.  In states that do not apply the discovery rule, the statute of limitations for product liability claims accrues at the time of injury.........10

        2.  In states that apply the discovery rule, the cause of action accrues when the plaintiff connects the injury to the device. .................................11

        3.  Some states only apply the discovery rule in certain instances that do not apply here and, thus, the cause of action accrues at the time of injury........................................................................................17

    B.  Plaintiffs' Warranty Claims Accrued at the Time of Implantation, or, at Latest, at the Time of Removal...............................................................20

        1.  Certain states' laws subsume warranty claims under product liability statutes or personal injury statutes of limitation..........................20

        2.  In other jurisdictions, warranty claims accrue at the time of implantation. ...................................................................................22

C.    Fraud Claims Accrue at the Time the Alleged Fraud Could Reasonably Have Been Discovered........................................................................................23

D.    Plaintiffs' Consumer Protection Claims Also Accrue When a Connection is Made between the Injury and Device...............................................24

E.    The Statutes of Limitation are not Tolled by Fraudulent Concealment................26

F.    Plaintiffs' Standalone Fraudulent Concealment Claims Should be Dismissed......................................................................................................28

G.    Certain Plaintiffs' Claims are also Barred by the Applicable Statute of Repose....................................................................................................29

V.    CONCLUSION....................................................................................................30

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adair v. Baker Bros., Inc.*,
5
    366 S.E.2d 164 (1988) .................................................................................21

6

*Andel v. Getz Servs., Inc.*,
7
    399 S.E.2d 226 (Ga. Ct. App. 1990) .......................................................20

8
*In re: AngioDynamics, Inc. & Navilyst Med, Inc., Port Catheter Prods. Liab.
    Litig.*,
9
    MDL No. 3125 (J.P.M.L. Aug. 20, 2024) ..............................................3, 4

10
*In re: AngioDynamics, Inc. & Navilyst Med., Inc., Port Catheter Prods. Liab.
    Litig.*,
11
    No. 3:24-md-03125-JO-VET (S.D. Cal. Oct. 11, 2024) .......................3, 4

12
*Auto. Sales, Inc. v. Freet*,
13
    725 N.E.2d 955 (Ind. Ct. App. 2000) .....................................................25

14
*Avis* v. *AngioDynamics, et al.*,
    No. 3:24-cv-01912-JO-VET (S.D. Cal. Oct. 17, 2024) ..........................18

15
*Bailey v. Ethicon, Inc.*,
16
    No. 7:20-CV-622, 2021 WL 2345357 (W.D. Va. June 8, 2021)............24

17
*Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
18
    296 F.3d 164 (3d Cir. 2002)....................................................................26

19
*Beach v. AngioDynamics, et al.*,
    No. 3:25-cv-00184-JO-VET (S.D. Cal. Jan. 27, 2025)...........................28

20
*Beauty Time, Inc. v. VU Skin Sys., Inc.*,
21
    118 F.3d 140 (3d Cir. 1997).....................................................................24

22
*Bell Atl. Corp. v. Twombly*,
23
    550 U.S. 544 (2007)...................................................................................9

24
*Bell v. C.B. Fleet Holding Co.*,
    No. 1:07-CV-84-GET, 2008 WL 11336406 (N.D. Ga. Aug. 15, 2008) ...............19

25
*BJC Health Sys. v. Columbia Cas. Co.*,
26
    478 F.3d 908 (8th Cir. 2007) ...................................................................26

27
*Blankenship et al. v. AngioDynamics, et al.*,
    No. 3:24-cv-01952-JO-VET (S.D. Cal. Oct. 22, 2024) ..........................19

28

*Braxton-Secret v. A.H. Robins Co.*,
    769 F.2d 528 (9th Cir. 1985) .................................................................26, 27, 28

*Brierly v. AngioDynamics, et al.*,
    No. 3:24-cv-00865-JO-VET (S.D. Cal. May 15, 2024)...................................18

*Brugger v. C.R. Bard, Inc.*,
    No. 3:17-CV-0228-CMC, 2017 WL 3085749 (D.S.C. July 20, 2017)..............22

*Burch v. Remington Arms Co., LLC*,
    No. 2:13-CV-00185-RWS, 2014 WL 12543887 (N.D. Ga. May 6, 2014)..........19

*Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*,
    386 S.E.2d 798 (S.C. Ct. App. 1989) ...........................................................24

*Bus. Men's Assurance Co. of Am. v. Graham*,
    984 S.W.2d 501 (Mo. 1999) .......................................................................12

*Caldwell v. AngioDynamics, et al.*,
    No. 3:25-cv-00142-JO-VET (S.D. Cal. Jan. 22, 2025).................................18

*Carroll v. BMW of N. Am., LLC*,
    553 F. Supp. 3d 588 (S.D. Ind. 2021) ..........................................................25

*Carroll v. Jaques*,
    927 F. Supp. 216 (E.D. Tex. 1996) ..............................................................24

*Castello v. Kalis*,
    816 N.E.2d 782 (2004).................................................................................14

*Caudill v. Arnett*,
    481 S.W.2d 668 (Ky. App. 1972) ................................................................17

*CertainTeed Corp. v. Russell*,
    883 So. 2d 1266 (Ala. Civ. App. 2003) .......................................................10

*Clair v. Monsanto Co.*,
    412 S.W.3d 295 (Mo. Ct. App. 2013) ............................................................8

*Coffey v. Foamex L.P.*,
    2 F.3d 157 (6th Cir. 1993) ....................................................................26, 28

*In re Collazo*,
    817 F.3d 1047 (7th Cir. 2016) .....................................................................24

*Collett v. Olympus Optical Co.*,
    No. 3:18-CV-66 (CDL), 2018 WL 6517442 (M.D. Ga. Dec. 11, 2018) ...........19

*Collins v. Davol, Inc.*,
    56 F. Supp. 3d 1222 (N.D. Ala. 2014) ........................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Cook v. State Farm Mut. Auto. Ins. Co.*,
No. 2002-CA-000801-MR, 2004 WL 2011375 (Ky. Ct. App. Sept. 10, 2004) ....................25

*Corbett v. PharmaCare U.S., Inc.*,
567 F. Supp. 3d 1172 (S.D. Cal. 2021)....................................................................................9

*Corder v. Ethicon, Inc.*,
No. 6:19-CV-273-REW, 2023 WL 7169091 (E.D. Ky. Sept. 26, 2023)................................24

*Corp. of Mercer Univ. v. Nat'l Gypsum Co.*,
368 S.E.2d 732 (Ga. 1988)....................................................................................................19

*United States ex rel. Costner v. URS Consultants, Inc.*,
317 F.3d 883 (8th Cir. 2003) .................................................................................................26

*Coyne v. Porter-Hayden Co*,
286 Pa. Super. 1, 428 A.2d 208 (1981)..................................................................................16

*Crowe v. Johnson & Johnson*,
No. 1:21-CV-210-TFM-C, 2022 WL 2161052 (S.D. Ala. June 15, 2022)............................24

*Curtis v. Mentor Worldwide LLC*,
543 F. App'x 901 (11th Cir. 2013) ..................................................................................14, 15

*Damron v. Media Gen., Inc.*,
3 S.W.3d 510 (Tenn. Ct. App. 1999) .....................................................................................29

*Davis v. AngioDynamics, et al.*,
No. 3:24-cv-02176-JO-VET (S.D. Cal. Nov. 20, 2024) ........................................................16

*Degussa Corp. v. Mullens*,
744 N.E.2d 407 (Ind. 2001) ..................................................................................................13

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
153 Cal.App.4th 1308 (2007) ...............................................................................................16

*E.E.O.C. v. ABM Indus. Inc.*,
249 F.R.D. 588 (E.D. Cal. 2008) .............................................................................................9

*Eidson v. Medtronic, Inc.*,
981 F. Supp. 2d 868 (N.D. Cal. 2013*)* ..................................................................................21

*Ellison v. Fry*,
437 S.W.3d 762 (Mo. banc 2014) ..........................................................................................24

*Elvig v. Nintendo of Am., Inc.*,
696 F. Supp. 2d 1207 (D. Colo. 2010) .....................................................................................8

*In re Engle Cases*,
No. 309CV10000J32JBT, 2012 WL 12904243 (M.D. Fla. Nov. 26, 2012) ..........................26

*Fluke Corp. v. LeMaster*,
  306 S.W.3d 55 (Ky. 2010) ................................................................17

*Foxfield Villa Assocs., LLC v. Robben*,
  449 P.3d 1210 (Kan. App., 2019) ....................................................26

*Franzen v. Deere & Co.*,
  377 N.W.2d 660 (Iowa 1985) ...........................................................12

*Free v. Granger*,
  887 F.2d 1552 (11th Cir. 1989) ........................................................10

*Gater v. Bank of Am., N.A.*,
  No. 13 C 3267, 2013 WL 5700595 (N.D.Ill. Oct. 18, 2013) ...........25

*In re Gilead Scis. Sec. Litig.*,
  536 F. 3d 1049 (9th Cir. 2008) ...........................................................9

*Gleeson v. Borough of Moosic*,
  15 A.3d 479 (Pa. 2011) .............................................................12, 14

*Gonzalez v. Vantage Bank Texas*,
  No. 04-21-00285-CV, 2022 WL 14679567 (Tex. App. Oct. 26, 2022) ................................16

*Graham v. Bank of Am., N.A.*,
  172 Cal. Rptr. 3d 218 (Cal. Ct. App. 2014) ....................................27

*Haynes v. Locks*,
  711 F. Supp. 901 (E.D. Tenn. 1989) ..........................................14, 15

*Haynie v. Howmedica Osteonics Corp.*,
  137 F. Supp. 2d 1292 (S.D. Ala. 2000) ...........................................10

*Hazel v. Gen. Motors Corp.*,
  83 F.3d 422 (6th Cir. 1996) ..............................................................17

*Heavner v. Uniroyal, Inc.*,
  286 A.2d 718 (App. Div. 1972) ........................................................21

*Hickey v. Askren*,
  403 S.E.2d 225 (Ga. Ct. App. 1991) ................................................19

*Highsmith v. Chrysler Credit Corp.*,
  18 F.3d 434 (7th Cir.1994) ...............................................................25

*Horn v. A.O. Smith Corp.*,
  50 F.3d 1365 (7th Cir. 1995) ............................................................24

*Howard v. AngioDynamics, et al.*,
  No. 3:24-cv-01861-JO-VET (S.D. Cal. July 29, 2024) .......................6

1
2

*Howard v. AngioDynamics, et al.*,
   No. 3:24-cv-01861-JO-VET (S.D. Cal. Oct 15, 2024) ...........................................18

3

*Huffman v. Credit Union of Texas*,
   758 F.3d 963 (8th Cir. 2014) ..................................................................................25

4

*Huitt v. Teva Pharms. USA, Inc.*,
   No. 220CV00954WBSKJN, 2020 WL 5642369 (E.D. Cal. Sept. 22, 2020) .........21

5

*Jones v. AngioDynamics, et al.*,
   No. 3:24-cv-01901-JO-VET (S. D. Cal. Sept. 26, 2024)........................................16

6
7

*Jones v. AngioDynamics*,
   No. 6:23-CV-1554-WWB-LHP, 2024 WL 4430671 (M.D. Fla. Sept. 9, 2024) ....29

8

*Jones v. Smith & Nephew Inc.*,
   No. W202100426COAR3CV, 2022 WL 767709 (Tenn. Ct. App. Mar. 14,
   2022) ......................................................................................................................30

9
10
11

*Kasel v. Remington Arms Co.*,
   24 Cal. App. 3d 711 (Cal. Ct. App. 1972) ..............................................................8

12

*KDC Foods, Inc. v. Gray, Plant, Mooty, Mooty & Bennett, P.A.*,
   763 F.3d 743 (7th Cir. 2014) ..................................................................................24

13
14

*King v. Seitzingers, Inc.*,
   287 S.E.2d 252 (Ga. Ct. App. 1981)........................................................................20

15

*Knox College v. Celotex Corp.*,
   88 Ill.2d 407, 58 Ill.Dec. 725, 430 N.E.2d 976 (1981) ........................................25

16
17

*In re Korean Air Lines Co., Ltd.*,
   642 F.3d 685 (9th Cir. 2011) ....................................................................................8

18
19

*Koshani v. Barton*,
   374 F. Supp. 3d 695 (E.D. Tenn. 2019)..................................................................14

20

*Kritsch v. AngioDynamics, et al.*,
   No. 3:25-cv-00042-JO-VET (S.D. Cal. Dec. 12, 2024), Dkt. 3 ...............................5

21
22

*Leeds v. Cooley*,
   702 S.W.2d 213 (Tex. App. 1985)...........................................................................26

23
24

*In re Linerboard Antitrust Litig.*,
   305 F.3d 145 (3d Cir. 2002)....................................................................................26

25

*Livingston v. Danek Med., Inc.*,
   No. CIV.A. H-96-3555, 1999 WL 33537322 (S.D. Tex. Oct. 13, 1999) ...............23

26
27
28

*Louisville Trust Co. v. Johns-Manville Products*,
  580 S.W.2d 497 (Ky. 1979) .................................................................................17

*M.H.D. v. Westminster Schs.*,
  172 F.3d 797 (11th Cir. 1999) ..............................................................................19

*Massingill v. AngioDynamics, et al.*,
  No. 3:25-cv-00273-JO-VET (S.D. Cal. Feb. 6, 2025), Dkt. 3 ...............................6

*McLain v. Dana Corporation*,
  16 S.W.3d 320 (Ky. App. 2000) ...........................................................................17

*In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*,
  No. 2004408MD2004CDL, 2015 WL 5886207 (M.D. Ga. Oct. 8, 2015) ..............10

*In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*,
  No. 2004408MD2004CDL, 2016 WL 873814 (M.D. Ga. Mar. 4, 2016)..................21

*In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*,
  No. 4:08-MD-2004 CDL, 2013 WL 592409 (M.D. Ga. Feb. 14, 2013) .................23

*Mezroub v. Capella*,
  702 So. 2d 562 (Fla. Dist. Ct. App. 1997) ..............................................................8

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*,
  848 F.2d 674 (6th Cir. 1988) ................................................................................29

*Mills v. Ethicon*,
  406 F. Supp. 3d 363 (D.N.J. 2019) ........................................................................8

*In re Mirena IUD Prods. Liab. Litig.*,
  29 F. Supp. 3d 345 (S.D.N.Y 2014)..................................................................15, 22

*Moon v. Harco Drugs, Inc.*,
  435 So. 2d 218 (Ala. 1983).....................................................................................10

*Moore v. A.H. Robins Co.*,
  520 N.E.2d 1007 (1988)..........................................................................................13

*Morris v. AngioDynamics, Inc.*,
  716 F.Supp.3d 1205 (M.D. Ala. 2024) .............................................................22, 29

*Newberry v. Serv. Experts Heating & Air Conditioning, LLC*,
  806 F. App'x 348 (6th Cir. 2020) ..........................................................................22

*Norgart v. Upjohn Co.*,
  21 Cal. 4th 383 (1999) ...........................................................................................11

*Norman v. Apache Corp.*,
  19 F.3d 1017 (5th Cir. 1994) .................................................................................26

*Norris v. AngioDynamics, et al.*,
  No. 3:24-cv-02399-JO-VET (S.D. Cal. Dec. 19, 2024) ..........................................15

*Norris v. Baxter Healthcare Corp.*,
  397 F.3d 878 (10th Cir. 2005) ........................................................................11

*Outboard Marine Corp. v. Babcock Ind., Inc.*,
  No. 91 C 7247, 1994 WL 468596 (N.D. Ill. Aug. 26, 1994)................................23

*Patchett v. AngioDynamics, et al.*,
  No. 3:24-cv-01902-JO-VET (S.D. Cal. Oct. 17, 2024) .......................................15

*Patten v. Standard Oil Co. of Louisiana*,
  55 S.W.2d 759 (1933)......................................................................................26

*Petrey v. Ethicon, Inc.*,
  No. CV 5:19-298-DCR, 2019 WL 5295185 (E.D. Ky. Oct. 18, 2019) .................25

*Porterfield v. Ethicon, Inc.*,
  183 F.3d 464 (5th Cir. 1999) .........................................................................13

*Powel v. Chaminade Coll. Preparatory, Inc.*
  197 S.W.3d 576 (Mo. 2006) ...........................................................................12

*Redwing v. Catholic Bishop for Diocese of Memphis*,
  363 S.W.3d 436 (Tenn. 2012)........................................................................12

*Reece v. Intuitive Surgical, Inc.*,
  63 F. Supp. 3d 1337 (N.D. Ala. 2014) ...............................................................8

*Reed v. AngioDynamics, Inc.*,
  No. 2:23-CV-04066-MDH, 2023 WL 8478023 (W.D. Mo. Dec. 7, 2023)
  .................................................................................2, 14, 16, 27, 28, 29

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
  683 F.3d 239 (6th Cir. 2012) .........................................................................24

*Robinson v. Baptist Mem'l Hosp.*,
  464 S.W.3d 599 (Tenn. Ct. App. 2014)......................................................14, 26

*Roman Catholic Diocese v. Secter*,
  966 S.W.2d 286 (Ky. App. 1998) ....................................................................17

*Rozas v. Dep't of Health & Hum. Res.*,
  522 So. 2d 1195 (La. Ct. App. 1988)...............................................................13

*Rustico v. Intuitive Surgical, Inc.*,
  424 F. Supp. 3d 720 (N.D. Cal. 2019), *aff'd*, 993 F.3d 1085 (9th Cir. 2021)..........27

*Rutledge v. Bos. Woven Hose & Rubber Co.*,
   576 F.2d 248 (9th Cir.1978) .......................................................................26

*Ryan v. AngioDynamics, et al.*,
   No. 3:24-cv-02033-JO-VET (S.D. Cal. Sept. 26, 2024)..........................15

*Sanderson v. HCA-The Healthcare Co.*,
   447 F.3d 873 (6th Cir. 2006) ..................................................................29

*Schrott v. Bristol-Myers Squibb Co.*,
   No. 03 C 1522, 2003 WL 22425009 (N.D. Ill. Oct. 23, 2003), *aff'd*, 403 F.3d
   940 (7th Cir. 2005)...................................................................................24

*Seim v. AngioDynamics, et al.*,
   No. 3:24-cv-01675-JO-VET (S.D. Cal. Sept. 19, 2024)..................5, 6, 15

*Smalley v. AngioDynamics, et al.*,
   No. 3:24-cv-01957-JO-VET (S.D. Cal. Oct. 22, 2024) ...........................16

*Smith v. Medtronic, Inc.*,
   607 So. 2d 156 (Ala. 1992) .....................................................................10

*Sparks v. Metalcraft, Inc.*,
   408 N.W.2d 347 (Iowa 1987) ..................................................................13

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
   No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014)...........25

*Strayhorn v. Wyeth Pharms., Inc.*
   887 F. Supp. 2d 799, 813 (W.D. Tenn. 2012)........................................21

*Taylor v. Goldsmith*,
   870 P.2d 1264 (Colo. App. 1994) ...........................................................14

*Terrel v. Perkins*,
   704 So. 2d 35 (La. Ct. App. 1997) ..........................................................12

*Tolen v. A.H. Robins Co.*,
   570 F. Supp. 1146 (N.D. Ind. 1983) .......................................................22

*Torkie-Tork v. Wyeth*,
   739 F. Supp. 2d 887 (E.D. Va. 2010) .......................................................8

*Urquilla-Diaz v. Kaplan Univ.*,
   780 F.3d 1039 (11th Cir. 2015) ...............................................................26

*Van Wechel v. Van Wechel*,
   159 N.W. 1039 (1916) ............................................................................24

*Wade v. Armstrong World Indus., Inc.*,
  746 F. Supp. 493 (D.N.J. 1990) ...................................................................12

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) ...............................................................26, 29

*Wilson v. El–Daief*,
  964 A. 2d 354 (2009) ...................................................................................14

*Wimbush v. Wyeth*,
  619 F.3d 632 (6th Cir. 2010) .......................................................................21

*Winkler v. Bos. Sci. Corp.*,
  No. CV 5:17-274-KKC, 2018 WL 1474067 (E.D. Ky. Mar. 26, 2018) .................23

*Witherell v. Weimer*,
  421 N.E.2d 869 (1981)..................................................................................12

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022), *opinion clarified sub nom. In re ZF-*
  *TRW Airbag Control Units Prods.*, No. LAML1902905JAKFFMX, 2022 WL
  19425927 (C.D. Cal. Mar. 2, 2022) ..........................................................7, 8

**Statutes**

73 P.S. § 201-9.2...........................................................................................25

13 Pa. Cons. Stat. § 2725(b) .........................................................................22

28 U.S.C. § 1407..............................................................................................8

Ala.Code 1975 §  6-2-38 ................................................................................11

Ala. Code § 6–2–3 .........................................................................................24

Ala. Code § 7-2-725(b) ..................................................................................22

Colo. Rev. Stat. Ann. § 4-2-725(2)................................................................22

Colo. Rev. Stat. Ann. § 6-1-115.....................................................................25

Colo. Rev. Stat. Ann. § 13-80-108(3)............................................................24

Fla. Stat. § 95.031(2)(b).................................................................................11

Ill. Comp. Stat. Ann. 505/1(e).......................................................................25

Ind. Code Ann. § 26-1-2-725(2) ....................................................................22

Iowa Code Ann. § 714H .................................................................................25

Iowa Code § 554.2725(2) ..............................................................................22

Kan. Stat. Ann. § 60-513(b) ...........................................................................12

Kan. Stat. Ann. § 60-3302(c) ..........................................................................21

Ky. Rev. Stat. Ann. § 355.2-725(2) ................................................................22

La. Stat. Ann. § 9:2800.52 ..............................................................................21

Mo. Ann. Stat. § 400.2–725(2) .......................................................................22

Ohio Rev. Code Ann. § 2305.10(C)(7)(b) ......................................................13

Ohio Rev. Code § 2307.71(B) .........................................................................21

Pa..Stat. Ann. § 201–9.2 .................................................................................25

S.C. Code Ann. § 15-3-535 .............................................................................12

Tenn. Code Ann. § 29-28-103(a) .....................................................................29

Tex. Bus. & Com. Code Ann. § 2.725 (b) .......................................................22

Tex. Bus. & Com. Code Ann. § 17.49 (e) ........................................................25

Tex. Bus. & Com. Code Ann. § 17.565 ...........................................................25

Tex. Civ. Prac. & Rem. Code Ann. § 16.012(b) ..............................................30

Va. Code Ann. § 8.01-243(A) ..........................................................................22

Va. Code § 8.01-249(9) ...................................................................................13

Wis. Stat. Ann. § 402.725(2) ...........................................................................22

**Other Authorities**

Federal Rule of Civil Procedure 8 ...................................................................29

Federal Rule of Civil Procedure 9 .........................................................26, 28, 29

Federal Rule of Civil Procedure 12(b)(6) .........................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants AngioDynamics, Inc. and Navilyst Medical, Inc. hereby submit this Memorandum of Points and Authorities in support of their Motion to Dismiss the above-captioned cases and/or certain causes of action therein, with prejudice, as time-barred.

## I.    INTRODUCTION

To date, 125 actions have been transferred to or filed directly into this MDL.  Of those 125 actions, 58 of them, filed by Plaintiffs from 19 states, are facially time-barred.  This is *over 46%* of this MDL's current inventory and it signals a growing problem of stale claims that will burden the efficient progress of the MDL.  Facially time-barred cases serve only to waste judicial and litigant resources and should be dismissed at the outset of the litigation.  Furthermore, unless Plaintiffs are admonished that similarly stale cases filed in the future will likewise be dismissed under the analysis presented herein, the current pattern will only result in even greater inflation of this MDL.  Indeed, demonstrating the extent of the abusive pattern in the current filings, a number of Plaintiffs waited more than 10 years after their alleged injuries and removal of their port catheters to file their lawsuits, with one Plaintiff waiting *more than 22 years* to file suit.  Under the Court's authority to efficiently manage and streamline these pretrial proceedings, the Court should dismiss time-barred actions and order that any future Complaints with similarly stale claims will be promptly dismissed. [1]

The central allegation in this MDL is that the catheter in Defendants' port devices contains an excessive concentration of barium sulfate (contrast material used for decades in medical applications to achieve radiopacity on imaging such as x-ray and CT scan), which allegedly causes the surface of the catheter to pit or crack and leads to the following complications: fracture, infections, and/or blood clots.  Each of the individual, cookie-cutter Complaints that have been transferred to or directly filed in this MDL identify the critical basic information needed to evaluate application of the statute of limitations to the action.  In all of the Complaints, Plaintiffs allege

---

[1] Almost all of the above-captioned actions are fully time-barred and thus may be dismissed.  As detailed in Section IV(F) and n.7 and noted in Section IV(D), n.5, certain claims may have longer limitations periods but are subject to dismissal for other reasons.  Each time-barred claim is identified in **Exhibits A** and **B** in bold text**.**

their state of residence, the date the port catheter was implanted by a surgeon, the state where the catheter was implanted, the discovery of the alleged injury, a connection between that injury and the port catheter, the resulting removal of the port catheter, and the date of the removal surgery and where it took place. All Plaintiffs allege that they became aware of a connection between their injury and the port catheter at the time of the injury or the removal of the port catheter. Plaintiffs claiming infection allege that their medical teams specifically identified the port as the source of the infection. Plaintiffs claiming blood clots allege that they suffered "port-related" or "catheter-associated" thrombosis or emboli. And those that experienced fracture allege that the fracture was immediately apparent to their physicians and that their ports were therefore promptly removed.

This motion presents common questions of law that can be resolved now. Regardless of the particular state law that applies, *all* states agree that a cause of action accrues (and the statute of limitations begins to run) when a plaintiff connects (or reasonably should have connected) the injury to the product at issue. Indeed, before this MDL was created, the Western District of Missouri considered near-identical allegations in a port catheter case filed against Defendants by one of the lead Plaintiff firms herein and determined that the case was time-barred because the alleged damage sustained was capable of ascertainment, at the latest, when the plaintiff's device had to be surgically removed as a result of the alleged infection. *See Reed v. AngioDynamics, Inc.*, No. 2:23-CV-04066-MDH, 2023 WL 8478023, at *3 (W.D. Mo. Dec. 7, 2023) (applying Missouri law). Moreover, statutes of limitations begin to run even if a plaintiff does not know the precise identity of the device manufacturer, the specific nature of the defect, or the exact legal theory underlying the potential claims. A plaintiff simply may not wait years, let alone decades, to file a product liability lawsuit when he or she is aware of a product-related injury at the time it occurs.

As demonstrated below, Plaintiffs and their medical teams expressly connected the alleged injury to the port catheter at or near the time of the injury. Thus, regardless of the applicable state law, given the nature of the injuries claimed in this MDL and Plaintiffs' allegations, the clock started to run on Plaintiffs' claims – at the latest – when they experienced the injury, it was connected to the port catheter, and the port catheter was therefore surgically removed. Plaintiff's time-barred claims should be dismissed with prejudice.

2

## II.    STATEMENT OF FACTS

### A.    AngioDynamics and the Port Catheter Products

AngioDynamics is a Delaware corporation headquartered in Latham, New York.  *See* Def.s' Opp'n to Pls.' Mot. to Transfer Actions, *In re: AngioDynamics, Inc. & Navilyst Med, Inc., Port Catheter Prods. Liab. Litig.*, MDL No. 3125 (J.P.M.L. Aug. 20, 2024), Dkt. 23 at 2 ("*In re: AngioDynamics, Inc.*").  Defendant Navilyst Medical, Inc. was a wholly owned subsidiary of Navilyst Medical Holdings, Inc., which was later merged with and into AngioDynamics. AngioDynamics is now the surviving entity.  *See* Corporate Disclosure Statement, *In re: AngioDynamics, Inc.*, MDL No. 3125 (J.P.M.L. Aug. 14, 2024), Dkt. 16 at 1.

AngioDynamics has been selling implantable port catheter devices since 2007 across multiple product lines, including: Smart Port, Vortex, BioFlo, and Xcela, the products at issue in this matter.  Port catheters provide easy and reliable access to the bloodstream.  They are widely utilized by physicians for patients who require frequent intravenous treatments, such as chemotherapy, long-term medication administration, blood transfusions, or blood draws, as they reduce the need for repeated needle sticks, making treatments more comfortable and less invasive. *See* Def.s' Opp'n to Pls.' Mot. to Transfer Actions, *In re: AngioDynamics, Inc.,* MDL No. 3125 (J.P.M.L. Aug. 20, 2024), Dkt. 23 at 3.  The port catheter is surgically implanted under local or general anesthesia.  *Id.*  The procedure involves placing the port body – a small, round device – under the skin, typically in the chest, and connecting it to a catheter that goes into a large vein.  *Id.* The catheters (and in many instances, the port bodies) are radiopaque so that they can be seen on x-rays, CT scans, and similar medical imaging.  *Id.*

Port catheters are FDA-regulated and have been used for venous access since the early 1980s.  The devices, like all implantable medical devices, carry inherent risks of complications such as infection, fracture, and thrombosis.  *See* Def.s' Opp'n to Pls.' Mot. to Transfer Actions, *In re: AngioDynamics, Inc.,* MDL No. 3125 (J.P.M.L. Aug. 20, 2024), Dkt. 23 at 5-6.

### B.    The JPML Coordinates Actions in this Court

On October 3, 2024, the JPML centralized actions against Defendants in this Court. Transfer Order, *In re: AngioDynamics, Inc. & Navilyst Med., Inc., Port Catheter Prods. Liab.*

3

*Litig.*, No. 3:24-md-03125-JO-VET (S.D. Cal. Oct. 11, 2024), Dkt. 1 at 1 ("*In re: AngioDynamics, Inc.*"). The central allegation in this MDL is that the catheter connected to Defendants' port devices contains an excessive concentration of barium sulfate, which allegedly causes the surface of the catheter to degrade, leading to fracture, infections, and blood clots. *Id.* Specifically, the JPML found, as the basis for establishing this MDL, that these actions:

> "share factual questions arising from allegations that defendants manufacture the catheter component of their port devices with an excessive concentration of barium sulfate, causing the material to degrade and the surface of the catheter to pit or crack. As a result, plaintiffs contend, the catheters are prone to fracture and to collect fibrinous blood products, which causes perforation, infections, and blood clots, among other injuries."

*Id.* To date, 125 cases have been transferred or directly filed into this MDL. Of those, 58 Plaintiffs from the following 19 states failed to timely file their Complaints: Alabama, California, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Missouri, New Jersey, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia. For ease of reference, Defendants have included a chart as **Exhibit A** that identifies the (1) Plaintiff name; (2) individual docket number; (3) relevant state law; (4) relevant dates; (5) applicable statutes of limitation; (6) legal claims asserted (and which are time-barred); and (7) number of years that the Complaint was filed after removal.

**C.    Each Plaintiff Claims an Injury Allegedly Connected to and Caused by a Port Catheter**

Each Plaintiff alleges physical injury due to an allegedly defective port catheter product and brings some combination of the same core claims: (1) Negligence; (2) Strict Liability – Failure to Warn; (3) Strict Liability – Design Defect; (4) Strict Liability – Manufacturing Defect; (5) Breach of Implied Warranty; (6) Breach of Express Warranty; (7) Fraud; and/or (8) Violation of a State Consumer Protection Statute.

The types of allegations in each individual Complaint are virtually identical in all cases. *First,* each Plaintiff alleges surgical implantation of an AngioDynamics port catheter product to

4

be used for repeated access to the circulatory system.  *See, e.g.*, Compl., *Smalley v. AngioDynamics, et al.*, No. 3:24-cv-01957-JO-VET (S.D. Cal. Oct. 9, 2024), Dkt. 1 at ¶ 47 ("On or about April 17, 2020, Plaintiff underwent placement of the AngioDynamics SmartPort product … for the purpose of ongoing chemotherapy."); Am. Compl., *Seim v. AngioDynamics, et al.*, No. 3:24-cv-01675-JO-VET (S.D. Cal. Sept. 19, 2024), Dkt. 3 at ¶ 38 ("On or about January 6, 2014, Plaintiff underwent placement of an AngioDynamics Xcela product … for the purpose of ongoing chemotherapy."); Compl., *Porter v. AngioDynamics, et al.*, No. 3:24-cv-01898-JO-VET (S.D. Cal. Sept. 13, 2024), Dkt. 1 at ¶¶ 38-39 ("On or about June 11, 2020 [Plaintiff] underwent placement of an AngioDynamics BioFlo … for chemotherapy treatment for Plaintiff's tonsil cancer."); Compl., *Carrier v. AngioDynamics, et al.*, No. 3:25-cv-00293-JO-VET (S.D. Cal. Dec. 20, 2024), Dkt. 1 at ¶ 40 ("On or about July 22, 2014, Plaintiff underwent placement of an AngioDynamics LifePort … for the purpose of ongoing Chemotherapy for his cancer."); Compl., *Wilson v. AngioDynamics, et al.*, No. 3:24-cv-02377-JO-VET (S.D. Cal. Dec. 3, 2024), Dkt. 1 at ¶ 40 ("On or about February 23, 2011, Plaintiff underwent placement of an AngioDynamics Vortex … for the purpose of ongoing chemotherapy."); Compl., *Goodson v. AngioDynamics, et al.*, No. 3:25-cv-00188-JO-VET (S.D. Cal. Dec. 23, 2024), Dkt. 1 at ¶ 44 ("On or about January 18, 2011, the Decedent underwent placement of the AngioDynamics Vaxcel … for the purpose of administering chemotherapy").

**Second**, each Plaintiff alleges that the concentration of barium sulfate in the port catheter led to weakened and roughened areas that increased the risk of complications such as fracture, infection, and thrombosis.  *See, e.g.*, Compl., *Kritsch v. AngioDynamics, et al.*, No. 3:25-cv-00042-JO-VET (S.D. Cal. Dec. 12, 2024), Dkt. 3 at ¶¶ 19-23; Compl., *Chapman v. AngioDynamics, et al.*, No. 3:24-cv-02389-JO-VET (S.D. Cal. Dec. 4, 2024), Dkt. 1 at ¶¶ 18-21.

**Third**, each Plaintiff alleges that he or she experienced an injury – primarily fracture, infection, or thrombosis – that was directly caused by the port catheter product.  For example, a number of Plaintiffs allege that they experienced an infection that their medical team "identified as originating from" the port catheter or allege that their medical team otherwise "determined that the [port catheter] was the source of the infection."  *See, e.g.*, Compl., *Caldwell v. AngioDynamics,*

*et al.*, No. 3:25-cv-00142-JO-VET (S.D. Cal. Jan. 22, 2025), Dkt. 1 at ¶ 41; Compl., *Austin-Rogers v. AngioDynamics, et al.*, No. 3:24-cv-02448-JO-VET (S.D. Cal. Nov. 26, 2024), Dkt. 1 at ¶ 43; Compl., *Davenport v. AngioDynamics, et al.*, No. 3:25-cv-00180-JO-VET (S.D. Cal. Jan. 6, 2025), Dkt. 1 at ¶ 49; Compl., *Norris v. AngioDynamics, et al.*, No. 3:24-cv-02399-JO-VET (S.D. Cal. Nov. 27, 2024), Dkt. 1 at ¶ 48; Compl., *Montgomery v. AngioDynamics, et al.*, No. 3:25-cv-00218-JO-VET (S.D. Cal. Jan. 30, 2025), Dkt. 1 at ¶ 43; Compl., *Honore v. AngioDynamics, et al.*, No. 3:24-cv-01893-JO-VET (S.D. Cal. Sept. 12, 2024), Dkt. 1 at ¶ 43; Compl., *Chapman v. AngioDynamics, et al.*, No. 3:24-cv-02389-JO-VET (S.D. Cal. Dec. 4, 2024), Dkt. 1 at ¶ 47; Compl., *Davis v. AngioDynamics, et al.*, No. 3:24-cv-02176-JO-VET (S.D. Cal. Nov. 20, 2024), Dkt. 1 at ¶ 44.  Others assert that they experienced blood clots caused by the port catheter, alleging that they were diagnosed with injuries such as "port-related thrombosis", "port thrombosis", "pulmonary emboli that was [sic] caused by the [port]", and "catheter-associated large thrombus with significant venous obstruction."  *See, e.g.*, Compl., *Schultz v. AngioDynamics, et al.*, No. 3:24-cv-01921-JO-VET (S.D. Cal. Sept. 9, 2024), Dkt. 1 at ¶ 44; Am. Compl., *Seim v. AngioDynamics, et al.*, No. 3:24-cv-01675-JO-VET (S.D. Cal. Sept. 19, 2024), Dkt. 3 at ¶¶ 43-44; Am. Compl., *Massingill v. AngioDynamics, et al.*, No. 3:25-cv-00273-JO-VET (S.D. Cal. Feb. 6, 2025), Dkt. 3 at ¶ 42; Compl., *Avis v. AngioDynamics, et al.*, No. 3:24-cv-01912-JO-VET (S.D. Cal. Sept. 19, 2024), Dkt. 1 at ¶ 49; Am. Compl., *Howard v. AngioDynamics, et al.*, No. 3:24-cv-01861-JO-VET (S.D. Cal. July 29, 2024), Dkt. 16 at ¶ 49.  Similarly, others allege that their medical providers determined upon examination that their ports were leaking or that the catheters fractured, with pieces migrating through the bloodstream and to the heart.  *See, e.g.*, Compl., *Harris v. AngioDynamics, et al.*, No. 3:24-cv-02338-JO-VET (S.D. Cal. Nov. 26, 2024), Dkt. 1 at ¶ 48; Compl., *Valdez v. AngioDynamics, et al.*, No. 3:24-cv-02490-JO-VET (S.D. Cal. Dec. 13, 2024), Dkt. 1 at ¶¶ 42-44; Compl., *Holder v. AngioDynamics, et al.*, No. 3:24-cv-02449-JO-VET (S.D. Cal. Nov. 26, 2024), Dkt 1 at ¶¶ 44-46.

**Fourth,** Plaintiffs allege that their port catheters needed to be removed as a result of the injury they experienced, as well as the date that the removal surgery was performed.  *See, e.g.*, Compl., *Ryan v. AngioDynamics, et al.*, No. 3:24-cv-02033-JO-VET (S.D. Cal. Sept. 26, 2024),

Dkt. 1 at ¶¶ 47-48 ("Plaintiff's medical team determined that the SmartPort was the source of the thrombosis and that the defective port had to be removed. On or about March 27, 2015, Plaintiff's defective port was removed by Dr. Gregory Groglio, MD at Lakeview Regional Medical Center."); Compl., *Straughter v. AngioDynamics, et al.*, No. 3:24-cv-01908-JO-VET (S.D. Cal. Sept. 5, 2024) Dkt. 1 at ¶¶ 46-47 ("Plaintiff requested that her port be removed as soon as possible because of the irritation and discomfort she was experiencing. Plaintiff's defective port was removed by Alexandra Birch, M.D. on June 30, 2021, at OLMH Periop Services in Monroe, Louisiana"); Compl., *Davis v. AngioDynamics, et al.*, No. 3:24-cv-02176-JO-VET (S.D. Cal. Nov. 20, 2024), Dkt. 1 at ¶¶ 44-45 ("Plaintiff's blood cultures were drawn and were persistently positive. Plaintiff's medical team determined that the Xcela was the source of the infection and that the defective port had to be removed. On or about September 24, 2012, Plaintiff's defective port was removed by Dr. Brixey R. Shelton at Methodist Le Bonheur Germantown in Germantown, Tennessee."); Compl., *Smalley v. AngioDynamics, et al.*, No. 3:24-cv-01957-JO-VET (S.D. Cal. Oct. 9, 2024), Dkt. 1 at ¶ 50 ("On or about August 5, 2020" Plaintiff's doctor "diagnosed Plaintiff with cellulitis and immediately removed the defective port.").

As set forth below, based on the applicable law and Plaintiff's own allegations, this Court can apply each state's statute of limitations and dismiss Plaintiffs' claims, with prejudice, as untimely filed. For ease of reference, Defendants have included as **Exhibit B** a chart that identifies the allegations in the Complaint relevant to the statute of limitations analysis for each individual Plaintiff, the legal claims brought by each (including which claims are untimely), and the applicable state law.

## III.    LEGAL FRAMEWORK

### A.    Applicable Law

An MDL transferee court applies the choice of law rules of the transferor court. *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625 (C.D. Cal. 2022), *opinion clarified sub nom. In re ZF-TRW Airbag Control Units Prods.*, No. LAML1902905JAKFFMX, 2022 WL 19425927 (C.D. Cal. Mar. 2, 2022). Therefore, to determine the applicable law for cases that were transferred to this MDL, this Court should look to the choice-of-law rules for the

jurisdiction where the action was originally filed.  *Id.*at fn. 12.  With respect to direct-filed complaints, the Ninth Circuit is clear that the law of the plaintiff's originating jurisdiction, not the law of the state where the MDL is situated, applies.  *In re Korean Air Lines Co., Ltd.,* 642 F.3d 685, 699 (9th Cir. 2011).  This is consistent with this Court's Case Management Order No. 1, which states: "All parties stipulate and agree that a case filed directly in MDL 3125 pursuant to this Order will have no impact on choice of law that otherwise would apply to an individual case had it been originally filed in another district court and transferred to this Court pursuant to 28 U.S.C. § 1407."  Case Management Order No. 1, *In re: AngioDynamics, Inc.*, No. 3:24-md-03125-JO-VET (S.D. Cal. Jan. 27, 2025), Dkt. 152 at 4.

Generally, the choice-of-law analysis for personal injury claims in the relevant states points to application of the law of the state of residence of the plaintiff or the law of the place where the injury occurred.  *See, e.g.*, *Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 734 (Cal. Ct. App. 1972) ("California courts have tended to apply the law of the place of the injured's domicile") (**California**); *Elvig v. Nintendo of Am., Inc.,* 696 F. Supp. 2d 1207, 1210 (D. Colo. 2010) ("the location of the injury presumptively provides the controlling law unless some other state has a more significant relationship") (**Colorado**); *Clair v. Monsanto Co.,* 412 S.W.3d 295, 304 (Mo. Ct. App. 2013) (applying the choice of law of where the injury occurred in a personal injury action) (**Missouri**); *Mills v. Ethicon*, 406 F. Supp. 3d 363, 375–76 (D.N.J. 2019) (applying Pennsylvania law because plaintiff was a Pennsylvania resident and was harmed in Pennsylvania) (**Pennsylvania**); *Mezroub v. Capella*, 702 So. 2d 562, 564 (Fla. Dist. Ct. App. 1997) ("An action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties") (**Florida**).  Other states, like Alabama and Virginia, deem statutes of limitations to be procedural and therefore apply the law of the forum.  *See Reece v. Intuitive Surgical, Inc.,* 63 F. Supp. 3d 1337, 1339-40 (N.D. Ala. 2014) (**Alabama**); *Torkie-Tork v. Wyeth,* 739 F. Supp. 2d 887, 890 (E.D. Va. 2010) (**Virginia**).  Defendants have identified the state law to be applied to each Plaintiff's claims in **Exhibits A** & **B.**

### B.    Legal Standard on Motion to Dismiss Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Such a motion tests the legal sufficiency of a complaint. *Corbett v. PharmaCare U.S., Inc.,* 567 F. Supp. 3d 1172, 1184 (S.D. Cal. 2021). A motion to dismiss under Rule 12(b)(6) should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  As the Supreme Court explained in *Twombly*, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted).  While the Court is required to take all material allegations of fact as true, the Court should not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F. 3d 1049, 1055 (9th Cir. 2008).  "Factual allegations must be enough to raise a right to relief above the speculative level … ." *Twombly*, 550 U.S. at 555–56.  "A violation of the statute of limitations is a defense to a claim and may be raised by a motion to dismiss" when it is evident from the face of the complaint.  *E.E.O.C. v. ABM Indus. Inc.*, 249 F.R.D. 588, 591 (E.D. Cal. 2008).

## IV.    ARGUMENT

Plaintiffs bring a combination of (1) product liability claims (*i.e.* negligence, strict liability); (2) breach of warranty claims; and (3) fraud/violation of state consumer protection statutes.  Below, Defendants take each group of claims in turn, demonstrating that the statute of limitations in each state accrues when the Plaintiff experienced the injury and connected it (or objectively should have connected it) to the port catheter, which is—*at latest*—when it was removed due to the alleged injury.[2]

---

[2] Defendants expressly reserve their right to assert in individual cases that the statute of limitations accrued before the time of removal or that the discovery rule does not apply.

9

**A.** **Plaintiffs' Product Liability Claims are Barred by the Applicable Statutes of Limitations**

All of the product liability claims in the above-captioned cases are time-barred by the applicable statute of limitations across the relevant jurisdictions. These jurisdictions fall into three categories: (1) jurisdictions that do not apply the discovery rule, meaning that the cause of action accrues at the time of injury; (2) jurisdictions that apply the discovery rule, meaning that the cause of action accrues at the point that the plaintiff discovers (or reasonably should have discovered) a connection between the device and the injury; and (3) jurisdictions that apply the discovery rule *only* in certain instances (*i.e.*, when there are allegations of latent injuries or continuing tort), which do not apply here. *See* **Exhibit B,** which identifies the rule applied in each particular state.

**1.** *In states that do not apply the discovery rule, the statute of limitations for product liability claims accrues at the time of injury.*

Alabama does not apply the discovery rule. Under Alabama law, a cause of action accrues for product liability claims "when the injury occurs." *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983). This means that the statute of limitations begins to run *when the product fails* and injures the plaintiff—not when the plaintiff learns of the product's failure. *Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1229 (N.D. Ala. 2014) ("the event that triggered the statute of limitations for the plaintiffs' non-fraud and ADTPA tort claims is when the Kugel Patch injured Mr. Collins, not when he learned of the device's failure."). Stated differently, the "first legal injury" occurs when the plaintiff first suffers complications due to the device. *See In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, No. 2004408MD2004CDL, 2015 WL 5886207, at *2 (M.D. Ga. Oct. 8, 2015) ( applying Alabama law and holding plaintiff's cause of action accrued when she first suffered complications due to the OB tape); *see also CertainTeed Corp. v. Russell*, 883 So. 2d 1266, 1269 (Ala. Civ. App. 2003) ("Under Alabama law, a noncontract cause of action arises when the first indication of damage becomes apparent to the claimant."); *Haynie v. Howmedica Osteonics Corp.*, 137 F. Supp. 2d 1292, 1294 (S.D. Ala. 2000); Moreover, the statute of limitations begins to run "whether or not the full amount of damages is apparent at the time of the first legal injury." *Id.* (citing *Smith v. Medtronic, Inc.*, 607 So. 2d 156, 159 (Ala. 1992)); *Free*

10

*v. Granger*, 887 F.2d 1552, 1555–56 (11th Cir. 1989) ("The statute of limitations begins to run when the first injury, however slight, occurs, even though that injury may later become greater or different.").

The statute of limitations for product liability claims in Alabama is two years.  Ala.Code 1975 § 6-2-38. Therefore, Plaintiffs in those states were required to file their Complaints within two years of the first complication associated with their port catheter.  Instead, as reflected in **Exhibit A**, they waited more than two years and up to *9 years* to file. Their claims are time-barred.

> **2.    *In states that apply the discovery rule, the cause of action accrues when the plaintiff connects the injury to the device.***

Sixteen of the subject states apply the discovery rule to product liability claims: California, Colorado, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Missouri, New Jersey, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia.  As discussed below, while the exact language varies by jurisdiction, the discovery rule at its core triggers the statute of limitations when a reasonable plaintiff is on notice that he or she has a claim.  Stated differently, all states applying the discovery rule agree that a cause of action accrues when a plaintiff connects, or reasonably should connect, the injury to the allegedly defective device.  The discovery rule does not require that a plaintiff know the precise identity of the device manufacturer or the specific nature of the defect.

Under ***California*** law, the statute of limitations begins to run "when, simply put, [s]he at least 'suspects … that someone has done something wrong' to [her] … wrong being used, not in any technical sense, but rather in accordance with its 'lay understanding.'" *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397–98 (1999).  Likewise, under ***Colorado*** law, "the statute of limitations beg[ins] to run when the fact of injury was known or *should have been* known." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 888 (10th Cir. 2005) (emphasis added).  Under ***Florida*** law, a cause of action accrues when "the date that the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence."  Fla. Stat. § 95.031(2)(b).  On a similar note, under ***Illinois*** law, the statute of limitations is triggered when a plaintiff "knows or reasonably should know of [her] injury and also knows or reasonably should

know that it was wrongfully caused." *Witherell v. Weimer*, 421 N.E.2d 869, 874 (1981).  **Iowa** law holds that "the statute of limitations begins to run when the injured person discovers or in the exercise of reasonable care should have discovered the allegedly wrongful act." *Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985).   Comparably, under **Kansas** law, the statute of limitations is triggered when "the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until sometime after the initial act, then …. [when] the fact of injury becomes reasonably ascertainable to the injured party."  Kan. Stat. Ann. § 60-513(b).  Similarly, **Louisiana** law recognizes claim accrual "from the time there is notice enough to call for *inquiry* about a claim, not from the time when the inquiry reveals facts or evidence sufficient to *prove* the claim." *Terrel v. Perkins*, 704 So. 2d 35, 39 (La. Ct. App. 1997) (emphasis added).  Under **Missouri** law, a claim accrues when "when the 'evidence [of damages] was such to place a reasonably prudent person on notice of a potentially actionable injury.'" *Powel v. Chaminade Coll. Preparatory, Inc*. 197 S.W.3d 576, 582 (Mo. 2006) (Wolff, M. concurring) (quoting *Bus. Men's Assurance Co. of Am. v. Graham*, 984 S.W.2d 501, 507 (Mo. 1999)). Additionally, **New Jersey** law provides that a cause of action accrues "when an injured person discovers or should have discovered by the exercise of reasonable diligence and intelligence, that he might have a basis for an actionable claim against another person." *Wade v. Armstrong World Indus., Inc*., 746 F. Supp. 493, 499 (D.N.J. 1990).  Likewise in **Pennsylvania,** "the commencement of the limitations period is grounded on 'inquiry notice' that is tied to 'actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice to the full extent of the injury, the fact of actual negligence, or precise cause.'"  *Gleeson v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011).  Under **South Carolina** law, the statute of limitations accrues when the plaintiff "knew or by the exercise of reasonable diligence should have known that he had a cause of action."  S.C. Code Ann. § 15-3-535.  In **Tennessee**, "a cause of action accrues, and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of 'facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct.'" *Redwing v. Catholic Bishop for Diocese of Memphis*, 363

12

S.W.3d 436, 459 (Tenn. 2012).  Under ***Texas*** law, the discovery rule "tolls the statute of limitations until the plaintiff discovers, or through the exercise of reasonable care and diligence should have discovered, the nature of the injury."  *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467 (5th Cir. 1999).  Likewise, ***Virginia*** law recognizes the statute of limitations accrues when a plaintiff "knew or should have known of the injury and its causal connection to the device." Va. Code § 8.01-249(9).

In ***Indiana*** and ***Ohio***, "mere suspicion or speculation that another's product caused the injuries is insufficient to trigger the statute." *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 411 (Ind. 2001).  However, both states are clear that the statute of limitations begins to run once a medical professional informs a plaintiff that the injury is related to the product.  *See* Ohio Rev. Code Ann. § 2305.10(C)(7)(b) ("the cause of action accrues upon the date on which the claimant is informed by competent medical authority that the bodily injury was related to the exposure to the product, or upon the date on which by the exercise of reasonable diligence the claimant should have known that the bodily injury was related to the exposure to the product, whichever date occurs first."); *Degussa Corp.*, 744 N.E.2d at 411 ("Once a plaintiff's doctor expressly informs the plaintiff that there is a reasonable possibility, if not a probability, that an injury was caused by an act or product, then the statute of limitations begins to run and the issue may become a matter of law.").  Plaintiffs here expressly allege that their injuries were not only related to, but caused by, use of the port catheter and that they were informed of that fact by their medical teams, who then surgically removed the port catheters for that reason.  Compl., *Norris v. AngioDynamics, et al.*, No. 3:24-cv-02399-JO-VET (S.D. Cal. Nov. 27, 2024), Dkt. 1 at ¶ 48; *Compl. Reynolds v. AngioDynamics,et al.*, No. 3:25-cv-00296-JO-VET (S.D. Cal. Feb. 6, 2025), Dkt. 1 at ¶ 52; Compl., *Amon v. AngioDynamics, et al.*, No. 3:24-cv-02381-JO-VET (S.D. Cal. Nov. 27, 2024), Dkt. 1 at ¶¶ 41-42.

Moreover, when a plaintiff suspects or should suspect a wrongdoing, the plaintiff has a duty to investigate.  *See, e.g.*, *Rozas v. Dep't of Health & Hum. Res.*, 522 So. 2d 1195, 1197 (La. Ct. App. 1988); s*ee also Moore v. A.H. Robins Co.*, 520 N.E.2d 1007, 1010 (1988); S*parks v. Metalcraft, Inc.*, 408 N.W.2d 347, 352 (Iowa 1987).  To that end, "once a plaintiff gains information sufficient to alert a reasonable person of the need to investigate the injury, the

13

1   limitations period begins to run." *Koshani v. Barton,* 374 F. Supp. 3d 695, 703 (E.D. Tenn. 2019)

2   (quoting *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 608 (Tenn. Ct. App. 2014).

3         Importantly, the discovery rule jurisdictions do not require that the plaintiff know the

4   specific defect, the identity of the defendant, or the full extent of the injury in order for a claim to

5   accrue. *See Castello v. Kalis*, 816 N.E.2d 782, 789 (2004) (For this case, the key concept is

6   "wrongfully caused." It "does not mean knowledge of a *specific* defendant's negligent conduct or

7   knowledge of the existence of a cause of action."); *see also Taylor v. Goldsmith*, 870 P.2d 1264,

8   1266 (Colo. App. 1994) ("A plaintiff's uncertainty as to the full extent of the damage does not

9   prevent the filing of a timely complaint."); *Gleeson*, 15 A. 3d at 484 ("The commencement of the

10  limitations period is grounded on 'inquiry notice' that is tied to 'actual or constructive knowledge

11  of at least some form of significant harm and of a factual cause linked to another's conduct, without

12  the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise

13  cause.'" (quoting *Wilson v. El–Daief*, 964 A. 2d 354, 361 (2009))); *Haynes v. Locks,* 711 F. Supp.

14  901, 903 (E.D. Tenn. 1989) (holding the statute of limitations accrued even though plaintiff was

15  still trying to identify the correct defendants).

16        Applying this analysis, before this MDL was created, the Court in *Reed v. AngioDynamics*

17  dismissed an almost identical action as time-barred because the "damage sustained [was] capable

18  of ascertainment" at latest when the plaintiff's device "had to be surgically removed" because

19  "Plaintiff was on notice the SmartPort was infected, had to be surgically removed, and had caused

20  her alleged damage." 2023 WL 8478023 at *3 (applying Missouri law). Likewise, in *Curtis v.

21  Mentor Worldwide LLC*, applying Illinois law, the court held that a plaintiff's case was time-barred

22  because her cause of action accrued when she experienced an infection that caused her to have her

23  surgical pelvic mesh product removed. 543 F. App'x 901 (11th Cir. 2013). Although the plaintiff

24  argued that her cause of action did not accrue until she realized the defendant was the manufacturer

25  of the product, the court squarely rejected that argument because the plaintiff "knew that her

26  infection and related problems had something to do with the ObTape sling, and she had the sling

27  removed." *Id.* at *903-04. At that time, when plaintiff made the connection between her injury

28  and her device, "Mrs. Curtis was obligated to begin her inquiry as to who manufactured her sling

14

and whether her complications were due to a problem with the surgery or a defective sling." *Id.*
at 904.

Similarly, the court in *In re Mirena IUD Prods. Liab. Litig.* held that the plaintiff's product
liability claims were time-barred on the face of her complaint under Indiana law because the statute
of limitations was triggered when the plaintiff realized her IUD required removal because it had
perforated her uterus, not when, as the plaintiff argued, she saw a commercial connecting her IUD
to her injuries. 29 F. Supp. 3d 345, 354 (S.D.N.Y. 2014). In rejecting the plaintiff's interpretation
of the statute of limitations, the court stated, "when the plaintiff knows that the IUD is no longer
in the uterus and has to be removed from wherever it has migrated, the conclusion that the statute
of limitations is triggered seems unavoidable." *Id.* at 355.

Here, as outlined in Section II(C) above and reflected in **Exhibit A & B**, each Plaintiff's
allegations irrefutably show that Plaintiff's claims accrued by the time the port catheter was
removed, even if the discovery rule applies. ***First,*** the Complaints at issue are replete with
allegations clearly connecting the alleged injury to the port catheter – and in most instances
expressly allege that their injuries were ***caused by*** the device. *See, e.g.*, Compl., *Schultz v.
AngioDynamics, et al.*, No. 3:24-cv-01921-JO-VET (S.D. Cal. Sept. 9, 2024), Dkt. 1 at ¶ 44("After
further review of the imaging, it was determined that defective port was thrombosed."); Compl.,
*Seim v. AngioDynamics, et al.*, No. 3:24-cv-01675-JO-VET (S.D. Cal. Sept. 19, 2024), Dkt. 1 at ¶
43 ("The diagnosis on May 21, 2014, was superior vena cava syndrome, secondary to venous
access device port-a-cath thrombosis."); Compl., *Ryan v. AngioDynamics, et al.*, No. 3:24-cv-
02033-JO-VET (S.D. Cal. Sept. 26, 2024), Dkt. 1 at ¶ 47 ("On or about March 26, 2015, Plaintiff
was diagnosed with thrombus appearing round structures at the base of the right atrium and
superior vena cava at Lakeview Regional Medical Center. Plaintiff's medical team determined that
the SmartPort was the source of the thrombosis and that the defective port had to be removed.").
Indeed, most Plaintiffs explicitly or impliedly allege that their *medical teams* determined that their
injuries were caused by their port catheters. *See, e.g.*, Compl., *Patchett v. AngioDynamics, et al.*,
No. 3:24-cv-01902-JO-VET (S.D. Cal. Oct. 17, 2024), Dkt. 1 at ¶ 42 ("Plaintiff's medical team
determined that the Xcela was the source of the infection."); Compl., *Norris v. AngioDynamics, et*

15

*al.*, No. 3:24-cv-02399-JO-VET (S.D. Cal. Dec. 19, 2024), Dkt. 1 at ¶ 48 ("Plaintiff's medical team determined that Plaintiff had developed an infection and identified as the SmartPort as the source."); Compl., *Jones v. AngioDynamics, et al.*, No. 3:24-cv-01901-JO-VET (S. D. Cal. Sept. 26, 2024), Dkt. 1 at ¶ 42 ("Upon information and belief, on January 31, 2014, the Plaintiff's medical team determined that Plaintiff had a port-a-cath-related Gram (-) Klebsiella sepsis, which would require a port removal."). **Second,** Plaintiffs expressly allege that their port catheters had to be removed as a result of their injuries. *See, e.g.*, Compl., *Davis v. AngioDynamics, et al.*, No. 3:24-cv-02176-JO-VET (S.D. Cal. Nov. 20, 2024), Dkt. 1 at ¶ 44 ("Plaintiff's blood cultures were drawn and were persistently positive. Plaintiff's medical team determined that the Xcela was the source of the infection and that the defective port had to be removed."); Compl., *Smalley v. AngioDynamics, et al.*, No. 3:24-cv-01957-JO-VET (S.D. Cal. Oct. 22, 2024), Dkt. 1 at ¶ 50 (Plaintiff's doctor "diagnosed Plaintiff with cellulitis and immediately removed the defective port.").

Like the plaintiff in the pre-MDL action *Reed v. Angiodynamics,* Plaintiffs here were ***all*** on notice of their claims when they knew (or reasonably should have known) that (1) they experienced an alleged injury (infection, thrombosis, or fracture); and (2) their injury was related to the port catheter. 2023 WL 8478023 at *5. It would defy logic to find that a Plaintiff was unaware of her injury when a doctor told her that a piece of the catheter migrated to her heart or that the port catheter was the source of her infection or thrombosis. Plaintiffs' own allegations show that there was no uncertainty about their injury or its relation to the port catheter. Indeed, almost all of the Plaintiffs allege that their port catheters were surgically removed – almost immediately – as a result of the alleged complication. As reflected in **Exhibits A & B,** Plaintiffs' claims are time-barred, even if the discovery rule is applied.[3]

---

[3] It should also be noted that in order to invoke the discovery rule in California, Illinois, Indiana, Iowa, Kansas, Louisiana, Pennsylvania, and Texas, a plaintiff must properly plead the facts necessary to support application of the discovery rule. *See, e.g., E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal.App.4th 1308, 1319 (2007); *Gonzalez v. Vantage Bank Texas*, No. 04-21-00285-CV, 2022 WL 14679567, at *3 (Tex. App. Oct. 26, 2022); *Coyne v. Porter-Hayden Co*, 286 Pa. Super. 1, 6–7, 428 A.2d 208, 210 (1981). No Plaintiff has done that here. Nor could they, as they were able to, and did, discover their alleged injury and its connection to the product at the time they experienced the complication and had the product removed.

> **3.     Some states only apply the discovery rule in certain instances that do not apply here and, thus, the cause of action accrues at the time of injury.**

Kentucky and Georgia apply the discovery rule, but only under certain circumstances that do not apply here.  In Kentucky, the discovery rule is only available in cases of latent injury for product liability claims.  In Georgia the discovery rule is only applied in instances of a continuing tort.  Neither of these circumstances are applicable here because all of the injuries were finite and immediately ascertainable.

> **a.     The Kentucky Plaintiffs' product liability claims accrued at the time of injury because the injuries were not latent**

"Generally, a cause of action . . . accrue[s] when the injury occurs."  *Roman Catholic Diocese v. Secter*, 966 S.W.2d 286, 288 (Ky. App. 1998) (citation omitted).  When the injury is not readily apparent, Kentucky applies a discovery rule, which recognizes that the cause of action accrues when, "plaintiff first discovers the injury or should have reasonably discovered it."  *Id.*; *see also Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010).  But Kentucky courts generally only apply the discovery rule to cases involving latent injury or illnesses—where the injury is inherently unknowable.  *See Louisville Trust Co. v. Johns-Manville Products*, 580 S.W.2d 497, 500-01 (Ky. 1979) (asbestos exposure); *compare Hazel v. Gen. Motors Corp.*, 83 F.3d 422 (6th Cir. 1996) (plaintiff's negligence claim accrued at the time of the truck accident that caused his burns, when he "knew of both his injury and the instrumentality that caused it").  Indeed, the Kentucky Supreme Court has expressly declined "to extend application of the discovery rule to cases not involving latent injuries, latent illnesses, or professional malpractice."  *Fluke*, 306 S.W.3d at 56 (Ky. 2010).  Moreover, it does not matter whether the full extent of the injury is known when the injury is discovered for the claim to accrue and the clock to start ticking.  *See Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. App. 1972) (The cause of action accrues on the date of the injury to the person even though the full extent of the injury is not known for years later.).  To that end, a "person who has knowledge of an injury is put on 'notice to investigate' and discover, within the statutory time constraints."  *McLain v. Dana Corporation*, 16 S.W.3d 320, 326 (Ky. App. 2000).

Here, the Kentucky Plaintiffs' allegations make clear that their injuries were immediately apparent. For example, in *Brierly v. AngioDynamics, et al.*, Plaintiff alleges that "[o]n or about October 21, 2018, Plaintiff presented himself to St. Elizabeth Edgewood Hospital in Edgewood, Kentucky with complaints of fever. Compl., *Brierly v. AngioDynamics, et al.*, No. 3:24-cv-00865-JO-VET (S.D. Cal. May 15, 2024), Dkt. 1 at ¶ 41. Upon being admitted, Plaintiff's blood cultures were drawn and were persistently positive. ***Plaintiff's medical team determined that the Xcela was the source of the infection and that the defective port had to be removed*.**" *Id.* (emphasis added). Plaintiff Brierly further alleges that he underwent surgery to remove his device on October 22, 2018, just one day later. *Id.* at ¶ 43. Thus, it is clear from Plaintiff's allegations that he experienced a discrete event, an infection, which was immediately attributed to his device. Therefore, his claim accrued on the date of injury and is time-barred because it was filed five years later. *See* **Exhibit A.**

Likewise in *Howard v. AngioDynamics*, Plaintiff alleges that "CT imaging on or about October 14, 2021, demonstrated Superior Vena Cava Syndrome *secondary to internal jugular catheter-associated large thrombus* with significant venous obstruction with secondary venous collateral circulation and abnormal venous shunt." Compl., *Howard v. AngioDynamics, et al.*, No. 3:24-cv-01861-JO-VET (S.D. Cal. Oct 15, 2024), Dkt. 1 at ¶ 42 (emphasis added). She further alleges that her device was removed five days after she underwent CT imaging showing the "catheter-associated large thrombus." *Id.* at ¶¶ 42-43. Once again, it is clear from Plaintiff's allegations that there was no latency to her alleged injury because the imaging allegedly identified the port catheter as the source of the injury, reaffirming the date her claim accrued was the date of injury.

All of the other Kentucky cases follow the same pattern, making clear that each Plaintiff experienced an ascertainable complication from the port catheter. *See, e.g.*, Compl., *Avis* v. *AngioDynamics, et al.,* No. 3:24-cv-01912-JO-VET (S.D. Cal. Oct. 17, 2024), Dkt. 1 at ¶ 49 (alleging Plaintiff's first port fractured and was removed the same day and Plaintiff Avis's second port was promptly removed the same day her medical team discovered a port-related thrombosis.); Compl., *Caldwell v. AngioDynamics, et al.*, No. 3:25-cv-00142-JO-VET (S.D. Cal. Jan. 22, 2025),

18

Dkt. 1 at ¶ 41 (alleging Plaintiff's medical team diagnosed infection and sourced it to her port the same day and the port was removed three days later); Compl., *Blankenship et al. v. AngioDynamics, et al.*, No. 3:24-cv-01952-JO-VET (S.D. Cal. Oct. 22, 2024), Dkt. 1 at ¶¶ 49-50 (alleging Plaintiff was injured by "pulmonary emboli that was [sic] caused by the SmartPort").

Thus, the discovery rule does not apply, and the statute of limitations for claims asserted by Kentucky Plaintiffs began to run at the time of injury.[4]   As reflected in **Exhibit A**, these Plaintiffs instead waited up to five years *after* their injury to file their Complaints.  Their claims are time-barred under Kentucky's one year statute of limitations.

> **b.** **The Georgia Plaintiffs' product liability claims accrued at the time of injury because they experienced discrete injuries.**

"[I]n Georgia, the discovery rule only applies to cases involving 'continuing torts,' where the plaintiff's injury developed from prolonged exposure to the defendant's tortious conduct." *M.H.D. v. Westminster Schs.*, 172 F.3d 797, 804–05 (11th Cir. 1999).  The "continuing tort" label is used as a shorthand for "cases of bodily injury which develop only over an extended period of time." *Collett v. Olympus Optical Co.*, No. 3:18-CV-66 (CDL), 2018 WL 6517442, at *3 (M.D. Ga. Dec. 11, 2018) (quoting *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 368 S.E.2d 732, 733 (Ga. 1988)).

Where a plaintiff experiences a discrete injury or illness that occurs at a specific point in time, the discovery rule does not apply.  For example, in *Bell v. C.B. Fleet Holding Co.*, the Court declined to apply the discovery rule where the plaintiff ingested a laxative and shortly thereafter become ill.  *Bell v. C.B. Fleet Holding Co.*, No. 1:07-CV-84-GET, 2008 WL 11336406, at *3 (N.D. Ga. Aug. 15, 2008); *see also Burch v. Remington Arms Co., LLC*, No. 2:13-CV-00185-RWS, 2014 WL 12543887, at *3 (N.D. Ga. May 6, 2014) (declining to apply discovery rule in a case where the plaintiff was injured when an allegedly defective rifle discharged); *Hickey v. Askren*, 403 S.E.2d 225, 228 (Ga. Ct. App. 1991) (plaintiff's injury was not caused by a continuous tort where her injury resulted from two sexual encounters with her doctor

---

[4] Nonetheless, for the reasons discussed in Section IV(A)(2), Plaintiffs' claims would be time-barred even if the discovery rule was applied.

that occurred over a period of several months); *compare to Andel v. Getz Servs., Inc.*, 399 S.E.2d 226, 228 (Ga. Ct. App. 1990) (applying discovery rule in case where plaintiff was exposed and injured over a period of six years by toxic chemicals); *King v. Seitzingers, Inc.*, 287 S.E.2d 252, 254 (Ga. Ct. App. 1981) (applying discovery rule in case of fume inhalation and related injury over five years).

Here, the "continuing tort" theory is inapplicable because the Georgia Plaintiffs' allegations demonstrate that they experienced an acute complication from the port catheter and were aware of a connection between the device and the alleged injury at the time of injury. For example, in June 2020, Plaintiff Davenport claims that she presented to her physician with complaints of an infection, at which time "Plaintiff's medical team determined that she had indeed developed an infection and identified the SmartPort as the source." *See* **Exhibit B** at 4. Similarly, in May 2017, Plaintiff Jordan presented himself to the hospital "where his port was subsequently removed due to an infection that caused hospitalization." *See* **Exhibit** B at 4. Because there is no continuing tort, the discovery rule does not apply and the statutes of limitations for claims asserted by Georgia Plaintiffs began to run at the time of injury.[5] As reflected in **Exhibit A**, these Plaintiffs instead waited years, even up to 11 years, after their injury to file their Complaints. Their claims are time-barred.

**B.** **Plaintiffs' Warranty Claims Accrued at the Time of Implantation, or, at Latest, the Time of Removal.**

As set forth below, California, Florida, Georgia, Kansas, Louisiana, New Jersey, Ohio, South Carolina, Tennessee, and Virginia have product liability statutes or case law that require all theories of liability to be brought pursuant to those statutes, in which case the statute of limitations for warranty claims will be applied as set forth above in Section IV(A). For states without such statutes or case law, the breach of warranty claims accrue at the time of implantation.

**1.** *Certain states' laws subsume warranty claims under product liability statutes or personal injury statutes of limitation.*

---

[5] And, for the reasons discussed in Section IV(A)(2), Plaintiffs' claims would be time-barred even if the discovery rule was applied.

Kansas, Louisiana, New Jersey, Ohio, and Tennessee have specific product liability acts that require all theories of liability to be brought under these statutes. *See Wimbush v. Wyeth*, 619 F.3d 632, 639 (6th Cir. 2010) (quoting Ohio Rev. Code § 2307.71(B)) (stating the Ohio Products Liability Act, "explicitly eliminate[s] 'all common law product liability claims or causes of action.'"); Kan. Stat. Ann. § 60-3302(c) (noting the act includes "any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product. It includes, but is not limited to, any action based on …. breach of express or implied warranty….").  Thus, any breach of warranty claims brought under these states' laws are subsumed under the product liability act, and the statute of limitations to be applied is the same as the product liability claims. *See Heavner v. Uniroyal, Inc.*, 286 A.2d 718, 720 (App. Div. 1972) (two-year statute of limitations applied to breach of warranty claim); *Strayhorn v. Wyeth Pharms.*, Inc., 887 F. Supp. 2d 799, 813 (W.D. Tenn. 2012) (The TPLA also encompasses several different theories of products liability, including breach of warranty); La. Stat. Ann. § 9:2800.52 ("This Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products.").

Even in the absence of a formal product liability statute, California, Florida, Georgia, South Carolina, and Virginia recognize that in cases involving personal injury, the statute of limitations applies equally to all claims regardless of title, including breach of warranty. *Huitt v. Teva Pharms. USA, Inc.*, No. 220CV00954WBSKJN, 2020 WL 5642369, at *2 (E.D. Cal. Sept. 22, 2020) ("This limitations period on personal injury claims based upon defective products applies to all causes of action asserted in a personal injury action, regardless of the legal theory invoked."); *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 893 (N.D. Cal. 2013*); In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, No. 2004408MD2004CDL, 2016 WL 873814, at *2 fn. 1 (M.D. Ga. Mar. 4, 2016) (applying Florida law and holding the accrual period and statute of limitations is the same for all personal injury actions, regardless of the theory of liability); *Adair v. Baker Bros., Inc.*, 366 S.E.2d 164, 165 (1988) ("[A]n action to recover for personal injuries is, in essence, a personal injury action, and, regardless of whether it is based upon an alleged breach

21

of an implied warranty or is based upon an alleged tort, the limitations statute governing actions for personal injuries is controlling."); Va. Code Ann. § 8.01-243(A) ("[u]nless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, ... shall be brought within two years after the cause of action accrues."); *Brugger v. C.R. Bard, Inc.,* No. 3:17-CV-0228-CMC, 2017 WL 3085749, at *3 (D.S.C. July 20, 2017) (applying three year statute of limitations to all product liability claims, regardless of injury asserted).  Thus, because California, Florida, Georgia, Kansas, Louisiana, New Jersey, Ohio, Tennessee, South Carolina, and Virginia treat warranty claims as product liability claims (and/or apply the same statute of limitations), the warranty claims brought under these states accrues, at latest, at the time of removal of the product as described in Section IV(A).

### 2.    *In other jurisdictions, warranty claims accrue at the time of implantation.*

Alabama, Colorado, Illinois, Indiana, Iowa, Kentucky, Missouri, Pennsylvania, and Texas recognize that breach of warranty claims accrue "when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  Ky. Rev. Stat. Ann. § 355.2-725(2); *see also* 13 Pa. Cons. Stat. § 2725(b); Ala. Code § 7-2-725(b); Colo. Rev. Stat. Ann. § 4-2-725(2); Ind. Code Ann. § 26-1-2-725(2); Iowa Code § 554.2725(2); Mo. Ann. Stat. § 400.2–725(2); *Newberry v. Serv. Experts Heating & Air Conditioning, LLC*, 806 F. App'x 348, 362 (6th Cir. 2020); Tex. Bus. & Com. Code Ann. § 2.725 (b); Wis. Stat. Ann. § 402.725(2).

No Plaintiff has alleged facts suggesting the existence of a warranty extending to future performance, and no such warranty exists here.  Indeed, in *Morris v. AngioDynamics*, the court considered allegations almost identical to those at issue here and held that they did not create any type of express warranty, let alone a warranty for future performance for Defendants' port catheters.  *Morris v. AngioDynamics, Inc.*, 716 F. Supp. 3d 1205, 1212 (M.D. Ala. 2024).  Further, the court in *Tolen v. A.H. Robins* noted that to demonstrate a warranty for future performance, the plaintiff must make "specific reference to a future time period."  *Tolen v. A.H. Robins Co.*, 570 F. Supp. 1146, 1154 (N.D. Ind. 1983); *see also In re Mirena*, 29 F. Supp. 3d at 360 (applying

22

Indiana and Texas law and holding that "Plaintiff does not plead an express warranty at all, let alone one that extends to future performance."); *Outboard Marine Corp. v. Babcock Ind., Inc.*, No. 91 C 7247, 1994 WL 468596, at *9 (N.D. Ill. Aug. 26, 1994) ("Because the warranty in OMC's purchase order does not list a specific and clear future duration or time period, the future performance exception is not applicable and the limitation period did begin to run at the time of delivery.").

When there is no warranty relating to future performance, a breach of warranty claim "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* at 7. Courts have routinely held that for medical devices, this means that the statute of limitations for warranty claims begins to run at the time of implantation. *See Livingston v. Danek Med., Inc.*, No. CIV.A. H-96-3555, 1999 WL 33537322, at *6 (S.D. Tex. Oct. 13, 1999) (under Texas law, delivery occurred when spinal fusion device was inserted in plaintiff's spine); *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004 CDL, 2013 WL 592409, at *4 (M.D. Ga. Feb. 14, 2013) (under Indiana law, delivery occurred when Plaintiff was implanted with suburethral sling product); *Winkler v. Bos. Sci. Corp.*, No. CV 5:17-274-KKC, 2018 WL 1474067, at *3 (E.D. Ky. Mar. 26, 2018) ("Kentucky's discovery rule is inapplicable to [plaintiff's] breach of warranty claims. These claims accrued on… the date that [plaintiff's device] was implanted.").

As set forth in **Exhibit A**, the claims for breach of warranty under Alabama, Colorado, Illinois, Indiana, Iowa, Kentucky, Missouri, Pennsylvania, and Texas law are all time-barred. The statute of limitations for the warranty claims began to run at the time of implantation and expired before Plaintiffs filed their Complaints.

### C.    Fraud Claims Accrue at the Time the Alleged Fraud Could Reasonably Have Been Discovered.

As with the warranty claims, fraud claims in California, Florida, Georgia, Kansas, Louisiana, New Jersey, Ohio, and Tennessee are subsumed by the product liability statutes/personal injury statutes of limitations and therefore accrue as set forth in Section IV(A) and Section IV(C)(1).

The statutes of limitations for fraud in Alabama, Colorado, Illinois, Indiana, Iowa, Kentucky, Missouri, Pennsylvania, South Carolina, Texas, and Virginia accrue when the fraud might reasonably have been discovered through the exercise of reasonable diligence. *See* Ala. Code § 6–2–3; *Bailey v. Ethicon, Inc.,* No. 7:20-CV-622, 2021 WL 2345357, at *5 (W.D. Va. June 8, 2021); *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 386 S.E.2d 798, 799 (S.C. Ct. App. 1989); *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 148 (3d Cir. 1997); *Carroll v. Jaques*, 927 F. Supp. 216, 223 (E.D. Tex. 1996); Colo. Rev. Stat. Ann. § 13-80-108(3); *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1369 (7th Cir. 1995); *Ellison v. Fry*, 437 S.W.3d 762, 769 (Mo. banc 2014) (citing § 516.120(5)); *In re Collazo*, 817 F.3d 1047, 1050 (7th Cir. 2016); *KDC Foods, Inc. v. Gray, Plant, Mooty, Mooty & Bennett, P.A.*, 763 F.3d 743, 750 (7th Cir. 2014); *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 259 (6th Cir. 2012); *Van Wechel v. Van Wechel,* 159 N.W. 1039, 1041 (1916).  In product liability cases, courts have interpreted this to mean that the statute of limitations for fraud claims begins to run at the time the plaintiff connected, or should have connected, the alleged injury to his or her device.  *See Corder v. Ethicon, Inc.*, No. 6:19-CV-273-REW, 2023 WL 7169091, at *5 (E.D. Ky. Sept. 26, 2023) (fraud claim barred and accrued when the plaintiff reasonably suspected her surgical mesh could be the source of her injuries); *Crowe v. Johnson & Johnson*, No. 1:21-CV-210-TFM-C, 2022 WL 2161052, at *8 (S.D. Ala. June 15, 2022) (fraud claims accrued at the time of the personal injury claims, when she began to experience pelvic pain from the product); *Schrott v. Bristol-Myers Squibb Co.,* No. 03 C 1522, 2003 WL 22425009, at *4-5 (N.D. Ill. Oct. 23, 2003), *aff'd*, 403 F.3d 940 (7th Cir. 2005) (fraud claims accrued at the time breast implants needed to be replaced.).  For the same reasons set forth in Section IV(C), because all Plaintiffs have alleged a connection between their injury and the device at or before the time of removal, the statute of limitations for fraud claims accrued at that time, and their fraud claims are time-barred.  *See* Section IV(C), **Exhibits A & B.**

### D.    Plaintiffs' Consumer Protection Claims Also Accrue When a Connection is Made between the Injury and Device.

Plaintiffs from all 19 states have included causes of action for violation of state consumer protection statutes.  Consumer protection claims in California, Georgia, Kansas, Louisiana, New

24

Jersey, Ohio, Tennessee, South Carolina and Virginia are subsumed by the product liability statutes/personal injury statutes of limitation and therefore accrue as set forth in Section IV(A) and Section IV(C)(1).  All are untimely.  *See* **Exhibits A&B.**

Florida, Indiana, and Kentucky do not apply the discovery rule to consumer protection claims, instead recognizing accrual at the time of sale, which in the case of medical devices is the date of implantation**.** *See Cook v. State Farm Mut. Auto. Ins. Co.*, No. 2002‑CA‑000801‑MR, 2004 WL 2011375, at *4 (Ky. Ct. App. Sept. 10, 2004); *Petrey v. Ethicon, Inc.*, No. CV 5:19‑298‑DCR, 2019 WL 5295185, at *2 (E.D. Ky. Oct. 18, 2019) (noting the discovery rule does not apply to claims under the Kentucky Consumer Protection Act and holding plaintiff's consumer protection claim accrued at the time of implantation.); *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14‑20107‑CIV, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014); *Carroll v. BMW of N. Am., LLC*, 553 F. Supp. 3d 588, 612 (S.D. Ind. 2021) (the date of occurrence of the deceptive act involving a car that allegedly consumed excessive oil was the date of the sale of the vehicle); *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 965 (Ind. Ct. App. 2000).  Because these the statutes of limitations for consumer protection claims accrued at the time the device was implanted, Plaintiffs' claims under these states' laws are untimely.  *See* **Exhibits A & B.**

Alabama, Colorado, Illinois, Iowa, Missouri, Pennsylvania, and Texas apply the discovery rule in consumer protection claims and therefore the claim "accrues when the plaintiff 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.'"[6] *Gater v. Bank of Am., N.A.,* No. 13 C 3267, 2013 WL 5700595, at *1 (N.D.Ill. Oct. 18, 2013) (citing *Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434, 441 (7th Cir.1994)) (quoting *Knox College v. Celotex Corp.,* 88 Ill.2d 407, 58 Ill.Dec. 725, 430 N.E.2d 976, 980 (1981)). ; *see also* Iowa Code § 714H.5; Colo. Rev. Stat. Ann. § 6‑1‑115; 73 P.S. § 201‑9.2; Tex. Bus. & Com. Code Ann. § 17.565; *Huffman v. Credit Union of Texas*, 758 F.3d 963, 967 (8th Cir. 2014) (applying Missouri law).  For cases in these jurisdictions, as explained in Section

---

[6] However, in Illinois, Iowa, Pennsylvania, and Texas, the consumer protection claims fail because they do not apply to medical devices or the Plaintiffs otherwise have no standing; they must be dismissed, regardless of application of the statute of limitations. 815 Ill. Comp. Stat. Ann. 505/1(e); Iowa Code Ann. § 714H.2; 73 Pa..Stat. Ann. § 201–9.2; Tex. Bus. & Com. Code Ann. § 17.49(e).

25

**IV(C)(1)**, the consumer protection claim accrued *at latest* at the time the device was removed. Plaintiffs' claims under these states' laws are untimely.  *See* **Exhibits A & B.**

    **E.**    **The Statutes of Limitation are not Tolled by Fraudulent Concealment**

    Plaintiffs have not adequately alleged fraudulent concealment to toll the statute of limitations, nor could they.  First, it is well-established that fraudulent concealment, as a type of fraud claim, is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  In practice, this requires the party alleging fraud to "identify the 'who, what, where, when, and how' of the alleged fraud."  *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003); *see also Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993); *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n. 10 (3d Cir. 2002); *Norman v. Apache Corp.*, 19 F.3d 1017, 1022 (5th Cir. 1994); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015).  To invoke the doctrine of fraudulent concealment, the plaintiff carries "the burden of both pleading and ultimately proving fraudulent concealment."  *Rutledge v. Bos. Woven Hose & Rubber Co.*, 576 F.2d 248, 249 (9th Cir.1978); *Leeds v. Cooley*, 702 S.W.2d 213, 215 (Tex. App. 1985), *writ refused no reversible error* (Feb. 5, 1986); *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 611 (Tenn. Ct. App. 2014).

    Second, the doctrine of fraudulent concealment permits a plaintiff to toll the statute of limitations only if the plaintiff properly pleads that the defendant prevented the plaintiff from discovering the cause of action by some affirmative action, despite the plaintiff's reasonable diligence.  *See, e.g.*, *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 532 (9th Cir. 1985); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002)*;Patten v. Standard Oil Co. of Louisiana*, 55 S.W.2d 759, 761 (1933); *In re Engle Cases*, No. 309CV10000J32JBT, 2012 WL 12904243, at *5 (M.D. Fla. Nov. 26, 2012); *Foxfield Villa Assocs., LLC v. Robben*, 449 P.3d 1210, 1217  (Kan. App., 2019).  To be clear, it is not enough to allege underlying fraud, or fraud in general, in order to invoke the doctrine of fraudulent concealment to toll the statute of limitations.

*See Rustico v. Intuitive Surgical, Inc.,* 424 F. Supp. 3d 720, 740 (N.D. Cal. 2019), *aff'd*, 993 F.3d 1085 (9th Cir. 2021). Instead, a defendant must engage in wrongful concealment to specifically induce the *delay of the filing or pursuit of legal claims. Graham v. Bank of Am., N.A.*, 172 Cal. Rptr. 3d 218, 228 (Cal. Ct. App. 2014). Moreover, once a plaintiff has actual or constructive notice that he or she has a claim, the doctrine can no longer be used to toll the statute of limitations (even if it is properly alleged). *Rustico,* 424 F. Supp. 3d at 740.

*Braxton-Secret* is instructive. There, the court rejected the plaintiff's claim that the statute of limitations was tolled by the defendant's fraudulent concealment. *Braxton-Secret*, 769 F.2d at 532. The plaintiff, who experienced a miscarriage and soon after had her IUD removed, alleged that she could not have discovered she had a claim against the defendant because the defendant "concealed and misrepresented the actual pregnancy rate associated with the use of the Dalkon Shield." *Id.* at 531. The court held that the plaintiff was on notice of her injury when her IUD was removed shortly after her miscarriage, because she was independently aware that the IUD's purpose was to prevent pregnancy and that the IUD failed, resulting in the pregnancy that ended in the miscarriage. *Id.* In other words, she was aware of facts – the failure of the IUD – within the limitations period that would put her on notice that she had a claim, even if her allegations of concealment were true. *Id.* at 532.

*Reed v. AngioDynamics,* a case with almost identical allegations, is also instructive. *Reed*, 2023 WL 8478023 at *4–5. There, the plaintiff pointed to general, boilerplate fraud allegations regarding Defendants' purported marketing strategies and general statements about the port catheter's safety in order to support her fraudulent concealment argument. *Id.* at *5. She also argued that she was prevented from ascertaining that her infections were due to the port catheter and that her damages were causally linked to the defective product because she was just a "member of [the] public." *Id.* at *3. The court found this wholly unpersuasive given that the plaintiff had expressly alleged in her complaint that she experienced a "port-a-cath-related" infection and that her physician connected the infection to the port. *Id.* The court also rejected any application of fraudulent concealment because Plaintiff had not included any factual allegations that would support the position that Defendants had concealed the existence of the plaintiff's claim. *Id.* at *5.

Here, Plaintiffs similarly fail to plead any of the requisite "who, what, where, when, or how" of any purported fraudulent concealment. Even under the most generous reading, Plaintiffs' allegations are mere boilerplate. *See, e.g.*, *Beach v. AngioDynamics, et al.*, No. 3:25-cv-00184-JO-VET (S.D. Cal. Jan. 27, 2025), Dkt. 1 at ¶ 60. Plaintiffs certainly do not include any allegations that they were induced by Defendants to delay filing their lawsuits after their injuries. None of the Plaintiffs specify what specific "material" facts were concealed, who concealed them, or how these alleged concealments specifically prevented Plaintiffs from discovering their causes of action. And none of the Plaintiffs allege any "due diligence" that was undertaken by Plaintiffs. This lack of detail makes sense: Plaintiffs cannot properly plead fraudulent concealment because, like the plaintiffs in *Braxton-Secrets* and *Reed*, they were aware of their injuries – and thus on notice of their claims – when they experienced the complication and their device was removed (at latest). The doctrine of fraudulent concealment is simply inapplicable here and does not toll the statute of limitations.

### F.    Plaintiffs' Standalone Fraudulent Concealment Claims Should be Dismissed.

Of the 58 actions subject to this Motion, 50 actions will be subject to complete dismissal pursuant to the arguments above. A few actions – five from Kentucky and one from Illinois – have asserted separate, stand-alone fraudulent concealment claims that may not be time barred or asserted for tolling purposes.[7] *See* **Exhibit A** at pgs. 4-6. To be clear, these fraudulent concealment claims do not assert that Defendants concealed the *legal claim* from Plaintiffs and thus toll the statute of limitations (as discussed above in Section IV(E)) but instead, that Defendants failed to disclose material facts to Plaintiffs regarding the safety of the port catheters. These fraud claims are nonetheless also subject to dismissal under Rule 9.

The Sixth Circuit is clear that to meet the Rule 9(b) standard, a plaintiff must "at a minimum, allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the Defendants; and the injury resulting from

---

[7] As reflected in Exhibit A, a few others also assert breach of warranty claims that may be timely. Although such claims are also insufficiently pled, Defendants do not argue for their dismissal in this Motion. Defendants reserve their right to challenge such claims as appropriate at a later date. The remaining consumer protection claims must be dismissed as set forth on page 25, n.6, *supra*.

the fraud." *Coffey*, 2 F.3d at 161-62. This requires Plaintiff to "specify the who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotation marks omitted); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). The Seventh Circuit is in accord. *Wigod*, 673 F.3d at 569 (to meet the Rule 9(b) standard, a plaintiff must plead "with particularity," and the allegations should read like "the first paragraph of any newspaper story" and include "the who, what, when, where, and how" of the alleged fraud). Both the Sixth and Seventh Circuits also agree that claims for fraudulent concealment are subject to this heightened pleading standard.

Plaintiffs allege none of the required facts under Rule 9. They do not plead the specific information that was allegedly concealed, when the concealment allegedly took place, or how the information was concealed. Notably, multiple district courts have already dismissed almost identical claims against the same Defendants, emphasizing that Plaintiffs' allegations do not even meet the less stringent pleading standards under Rule 8, let alone Rule 9. *See Morris v. AngioDynamics, Inc.*, 716 F.Supp.3d -1205, (M.D. Ala. 2024) (dismissing Plaintiff's nearly identical fraudulent concealment claim for failure to meet the heightened pleading standard and noting the allegations did not even meet the less stringent Rule 8(a) pleading standards); *Reed,* 2023 WL 8478023, at *4-5 (dismissing plaintiff's nearly identical claim because plaintiff failed to meet the pleading standard under Rule 9(b)); *Jones v. AngioDynamics,* No. 6:23-CV-1554-WWB-LHP, 2024 WL 4430671, at *4 (M.D. Fla. Sept. 9, 2024) (plaintiff's near identical claims failed to meet the heightened pleading standard). This Court should do the same.

### G. Certain Plaintiffs' Claims are also Barred by the Applicable Statute of Repose

In addition to being barred by the applicable statutes of limitations, certain Tennessee and Texas Plaintiffs' claims are barred by the statutes of repose. The Tennessee statute of repose states that all product liability claims, regardless of theory "must be brought within the period fixed by [the applicable statute of limitations], but notwithstanding any exceptions to these provisions, it must be brought within six (6) years of the date of injury" or "within ten (10) years from the date on which the product was first purchased for use or consumption" or "within one (1) year after the expiration of the anticipated life of the product, whichever is the shorter." Tenn. Code Ann. § 29-

28-103(a).  Tennessee's statute of repose is not subject to any tolling. *Damron v. Media Gen., Inc.*, 3 S.W.3d 510, 513 (Tenn. Ct. App. 1999); *Jones v. Smith & Nephew Inc.*, No. W202100426COAR3CV, 2022 WL 767709, at *4 (Tenn. Ct. App. Mar. 14, 2022).  Plaintiffs Davis and Trail's claims are barred by the Tennessee statute of repose because their claims were filed beyond six years of the date of injury. *See* **Exhibit A.**  Similarly, the Texas statute of repose bars all product liability claims, regardless of theory, brought fifteen years "after the date of the sale of the product" and is also not subject to any tolling. Tex. Civ. Prac. & Rem. Code Ann. § 16.012(b).  Plaintiff Cothrin's device was sold more than 22 years ago.  *See* **Exhibit A**.  Therefore, her claims are barred by the Texas statute of repose.

## V.    CONCLUSION

Without Court intervention, Plaintiffs will continue to file untimely cases, which will serve to bloat the MDL's inventory and waste the time and resources of the Court and the parties.  For the foregoing reasons, Defendants respectfully request that this Court dismiss, with prejudice, each of the above-captioned claims as time-barred under the applicable statutes of limitations. Defendants further request that this Court issue an order that requires that any future Complaints direct-filed in this MDL continue to include allegations sufficient to evaluate the statute of limitations, including: (1) the date of the implantation; (2) the date and nature of the alleged injury and its connection to the port catheter; and (3) the date of removal of the product, so that future Complaints that are time-barred can be promptly dismissed by further order of the Court or motions to dismiss by Defendants.

Dated:  February 20, 2025                                    **POLSINELLI LLP**

                                                            By:  _____
                                                                 Thomas J. Yoo

                                                            Attorneys for Defendants
                                                            *AngioDynamics, Inc. and Navilyst Medical, Inc.*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

I certify that I served a copy of this document on the Court and all parties by filing this

3

document with the Clerk of Court through the CM/ECF filing system, which will provide

4

electronic notice and an electronic link to the document to all counsel of record.

5

*/s/ Thomas J. Yoo*

6

Thomas J. Yoo

7

*Counsel for Defendants*
*AngioDynamics, Inc. and Navilyst Medical, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28