1

2

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

3   IN RE: ANGIODYNAMICS, INC.,
4   AND NAVILYST MEDICAL, INC.,
    PORT CATHETER PRODUCTS
5   LIABILITY LITIGATION

6

7

8

9

Case No. 3:24-md-03125-JO-VET

**PLAINTIFFS' MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS
ANGIODYNAMICS, INC. AND
NAVILYST MEDICAL, INC.'S
MOTION TO DISMISS**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   LEGAL STANDARD..........................................................................................3

III.  ARGUMENT .......................................................................................................4

A.  Under Applicable Discovery Rules, Plaintiffs' Product Liability Claims Are Not
Time-Barred..........................................................................................................4

    1.   Summary of State Discovery Rules.....................................................5

    2.   Application of Discovery Rules to Complaints .................................13

B.  Beyond UCC-Accrual States, Plaintiffs' Breach of Warranty Claims Are Not
Time-Barred........................................................................................................17

C.  Plaintiffs' Fraud Claims Are Not Time-Barred...................................................18

D.  Plaintiffs' Consumer Protection Claims Are Not Time-Barred ..........................20

E.  The Statutes of Limitations Are Tolled By Fraudulent Concealment...................23

F.  Plaintiffs' Standalone Fraudulent Concealment Claims Are Sufficiently Pled ....27

IV.  CONCLUSION ..................................................................................................28

1
2

# **TABLE OF AUTHORITIES**

3

## **Cases**

4   *Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257 (Ind. 2014) ........................... 30

5
6   *Andrade-Heymsfield v. NextFoods, Inc.*, No. 3:21-CV-01446-BTM-MSB, 2022 WL 1772262 (S.D. Cal. Apr. 27, 2022) .............................................................................. 31

7   *Bergin v. Mentor Worldwide LLC*, 871 F.3d 1191 (11th Cir. 2017) ............................... 14

8   *Blanton v. Cooper Industries, Inc.*, 99 F. Supp. 2d 797 (E.D. Ky. 2000) ...................... 16

9   *Borderlon v. Peck,* 661 S.W.2d 907 (Tex. 1983) ........................................................... 29

10  *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985) ........................... 33, 34

11
12  *Burdess v. Cottrell, Inc.*, 359 F. Supp. 3d 704 (E.D. Mo. 2019) .............................. 11, 23

13  *Burdess v. Cottrell, Inc.*, No. 4:17-CV-01515-JAR, 2023 WL 4422642 (E.D. Mo. July 10, 2023) ....................................................................................................................... 22

14  *Campo v. Correa*, 828 So. 2d 502 (La. 2002) .......................................................... 10, 11

15
16  *Chole v. Bos. Sci. Corp.*, No. 4:19-CV-02976 JAR, 2020 WL 1853266 (E.D. Mo. Apr. 13, 2020) ....................................................................................................................... 23

17  *Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222 (N.D. Ala. 2014) ....................................... 24

18  *Corder v. Antero Res. Corp.*, 57 F. 4th 384 (4th Cir. 2023) ........................................... 32

19
20  *Corder v. Ethicon, Inc.*, No. 6:19-CV-273-REW, 2023 WL 7169091 (E.D. Ky. Sept. 26, 2023) ............................................................................................................................. 24

21
22  *Crowe v. Johnson & Johnson,* No. 1:21-CV-210-TFM-C, 2022 WL 2161052 (S.D. Ala. June 15, 2022) ............................................................................................................... 24

23  *Curtis v. Mentor Worldwide LLC*, 543 F. App'x 901 (11th Cir. 2013) .......................... 20

24  *Cutter v. Ethicon, Inc.*, No. 20-6040, 2021 WL 3754245 (6th Cir. Aug. 25, 2021) ....... 16

25  *Davis v. Johnson & Johnson*, No. 2:20-CV-02635-HLT, 2022 WL 1566117 (D. Kan. May 18, 2022) ................................................................................................................ 10

26
27  *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645 (1996) .................................. 13, 28

28  *Degussa Corp. v. Mullens*, 744 N.E.2d 407 (Ind. 2001) ................................................. 9

*Devaney v. Chester*, 813 F.2d 566 (2d Cir. 1987) ............................................................ 33

*Dougherty v. Gifford,* 826 S.W.2d 668 (Tex. App.—Texarkana 1992, no writ) ............ 29

*Du Page Cnty. v. Graham, Anderson, Probst & White, Inc.*, 485 N.E.2d 1076 (Ill. 1985)7

*Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321 (7th Cir. 1998) .......................................... 33

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ............................ 37

*Farrand v. Stryker Corp.*, No. 4:13-CV-00443-RAW, 2014 WL 11514684 (S.D. Iowa Nov. 12, 2014) ................................................................................................................. 9

*Filip v. Block,* 879 N.E.2d 1076 (Ind. 2008) ..................................................................... 8

*Fluke Corp. v. LeMaster,* 306 S.W.3d 55 (Ky. 2010) ...................................................... 30

*Franzen v. Deere & Co.*, 377 N.W.2d 660 (Iowa 1985) .................................................... 9

*Fruge v. Ethicon US, LLC*, No. CV 16-149-JWD-EWD, 2017 WL 1807610 (M.D. La. Feb. 24, 2017) .............................................................................................................. 10

*Gater v. Bank of Am., N.A.*, No. 13 C 3267, 2013 WL 5700595 (N.D. Ill. Oct. 18, 2013) ............................................................................................................................. 28

*Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594 (2014) .......................................... 34

*Hall v. Ethicon, Inc.*, No. 3:20-CV-516-RLM-MGG, 2020 WL 6826489 (N.D. Ind. Nov. 20, 2020) .............................................................................................................. 8

*Hall v. Walter*, 969 P.2d 224 (Colo. 1998) ...................................................................... 25

*Heatherman v. Ethicon, Inc.*, No. 1:20-CV-01932-RBJ, 2021 WL 2138543 (D. Colo. Jan. 22, 2021) ................................................................................................................. 6

*Helm v. Ratterman*, 778 F. App'x 359 (6th Cir. 2019) ................................................... 35

*In re Bridgestone/Firestone, Inc.*, 200 F. Supp. 2d 983 (S.D. Ind. 2002) .................... 1, 2

*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997) ...... 33

*In re Holzenthal*, 580 B.R. 868 (Bankr. M.D. Fla. 2016) ................................................. 7

*In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345 (S.D.N.Y. 2014) .................. 21

*In re Paraquat Products Liab. Litig.*, No. 3:21-MD-3004-NJR, 2023 WL 3226189 (S.D. Ill. May 3, 2023) ........................................................................................................... 8

*In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prods. Liab. Litig.*, No. 1:17-md-2775, 2018 WL 6067505 (D. Md. Nov. 19, 2018)......................24

*Johnson v. Johnson*, No. 1-16-0684, 2017 WL 1012445 (Ill. Ct. App. Mar. 10, 2017) ...8

*Jones v. Angiodynamics*, No. 6:23-CV-1554-WWB-LHP, 2024 WL 4430671 (M.D. Fla. Sept. 9, 2024) ..............................................................................................................36

*Jones v. Davol, Inc.*, No. 3:18-CV-00182, 2018 WL 4369978 (E.D. Tenn. Sept. 12, 2018) ...........................................................................................................4, 14, 20

*Jones v. Gen. Motors, LLC*, No. 23-11102, 2024 WL 861064 (11th Cir. Feb. 29, 2024) 5

*Kanon v. Methodist Hosp.*, 9 S.W.3d 365 (Tex. App. 1999) ..........................................29

*Katz v. Household Int'l, Inc.*, 91 F.3d 1036 (7th Cir. 1996) ..........................................32

*Kennedy v. Axa Equitable Life Ins., Co.*, No. CIV.06-6082(RBK), 2007 WL 2688881 (D.N.J. Sept. 11, 2007) ...............................................................................................27

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .............................31

*Louisville Trust Co. v. Johns-Mansville Prods. Corp.*, 580 S.W.2d 497 (Ky. 1979) .....15

*Lundy v. Lederle Labs., Div. of Am. Cyanamid Co.*, 54 Ohio App. 3d 192, 561 N.E.2d 1027 (1988)..............................................................................................................12

*Marie Renteria v. Ethicon, Inc.*, No. CV205673MWFKESX, 2020 WL 7414744 (C.D. Cal. Nov. 18, 2020)....................................................................................6, 17, 19, 20

*McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804 (E.D. Pa. 2016) ................................26

*Med. Review Panel Proceedings for Timpton v. Touro Infirmary*, 313 So. 3d 1022 (La. Ct. App. 2021)......................................................................................................10, 11

*Michaels Bldg. Co. v. Ameritrust Co.*, N.A., 848 F.2d 674 (6th Cir. 1988)..............35, 36

*Montoney v. Lincoln Logs, Ltd.*, 2007-Ohio-236, 2007 WL 155451 (10th Dist.) ..........29

*Morgan v. Columbus McKinnon Corp.*, 837 N.E.2d 546 (Ind. Ct. App. 2005)...............9

*Morris v. Angiodynamics*, 716 F. Supp. 3d 1205 (M.D. Ala. 2024) ...............................36

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 981 P.2d 79 (1999) ...........................................6

*Norris v. Baxter Healthcare Corp.*, 397 F.3d 878 (10th Cir. 2005)..................................6

*Perez v. Am. Med. Sys. Inc.*, 461 F. Supp. 3d 488 (W.D. Tex. 2020) .............................14

iv

*Perry v. Ethicon, Inc.*, No. 2:20-CV-6592, 2022 WL 912214 (S.D. Ohio Mar. 29, 2022) ........................................................................................................................ 21

*Price v. KNL Custom Homes, Inc.*, 2015-Ohio-436, 28 N.E.3d 640 (9th Dist.) ............. 29

*Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211 (Tex. 2003)........................... 29

*Reed v. AngioDynamics, Inc.*, No. 2:23-CV-04066-MDH, 2023 WL 8478023 (W.D. Mo. Dec. 7, 2023) ................................................................................................... 20, 23

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18CV967-GPC(MSB), 2020 WL 1864781 (S.D. Cal. Apr. 14, 2020).................................... 4, 37

*Scheidt v. Klein*, 956 F.2d 963 (10th Cir. 1992)................................................................ 33

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ................................................................. 4

*Schrott v. Bristol-Myers Squibb Co.,* No. 03 C 1522, 2003 WL 22425009 (N.D. Ill. Oct. 23, 2003), *aff'd*, 403 F.3d 940 (7th Cir. 2005) ............................................................ 25

*Stack v. Lobo*, 903 F. Supp. 1361 (N.D. Cal. 1995)......................................................... 31

*State ex rel. Wilson v. Ortho-McNeil-Janssen Pharm., Inc.*, 414 S.C. 33, 777 S.E.2d 176 (2015)............................................................................................................................ 13

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir. 1995).............. 3, 5, 15, 21

*The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC*, 230 N.J. 427, 169 A.3d 473 (2017)................................................................................................ 11, 12

*Thomas v. Lopez*, 982 So. 2d 64 (Fla. 5th DCA 2008) ....................................................... 7

*Tilley v. Franklin Life Ins. Co.* 957 S.W.2d 349 (Mo. Ct. App. 1997) ........................... 30

*Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo. 1993) .......... 6

*United States v. Hempfling*, 431 F. Supp. 2d 1069 (E.D. Cal. 2006).............................. 31

*Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019)................................ 35

*Vigil v. Coloplast Corp.*, No. 319CV01851GPCBGS, 2020 WL 94378 (S.D. Cal. Jan. 8, 2020) ............................................................................................... 1, 3, 18, 19

*Wanke v. Invasix Inc.*, No. 3:19-cv-0692, 2020 WL 2542594 (M.D. Tenn. May 19, 2020) ............................................................................................................................ 23

*Wells v. Johnson & Johnson*, 554 F. Supp. 3d 1207 (W.D. Okla. 2021) ........................ 31

*Wilson v. El-Daief*, 600 Pa. 161, 964 A.2d 354 (2009)................................................... 13

*Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709 (Ky. 2000)........................................ 16

*Witherspoon v. Gen. Motors Corp.*, 535 F. Supp. 432 (W.D. Mo. 1982) ....................... 23

**Statutes**

13 Pa. Cons. Stat. § 2725 ................................................................................................ 22

815 Ill. Comp. Stat. Ann. 505/10a ............................................................................. 27, 28

815 Ill. Comp. Stat. Ann. 505/2 ...................................................................................... 25

Ala. Code § 7-2-725 ........................................................................................................ 22

Ala. Code § 8-19-14 .................................................................................................. 26, 27

Ala. Code § 8-19-2 .......................................................................................................... 25

Cal. Civ. Code § 1760 ..................................................................................................... 25

Cal. Civ. Code § 1783 ..................................................................................................... 27

Cal. Civ. Proc. Code § 335.1 .......................................................................................... 27

Colo. Rev. Stat. § 13-80-101 .......................................................................................... 22

Colo. Rev. Stat. § 4-2-725 .............................................................................................. 22

Colo. Rev. Stat. Ann. § 6-1-115 ......................................................................... 26, 28, 30

Fla. Stat. Ann § 95.031(2)(b) ............................................................................................ 7

Fla. Stat. Ann. § 501.202 ................................................................................................ 25

Ga. Code Ann. § 10-1-391 .............................................................................................. 25

Ga. Code Ann. § 10-1-401 .............................................................................................. 26

Ind. Code § 24-5-0.5-5(b) ............................................................................................... 26

Ind. Code Ann. § 24-5-0.5-1 ........................................................................................... 25

Ind. Code Ann. § 26-1-2-725 .......................................................................................... 22

Iowa Code § 554.2725 ..................................................................................................... 22

Iowa Code Ann. § 714H.3 ............................................................................................... 25

Iowa Code Ann. § 714H.5 ......................................................................................... 27, 28

K.S.A. § 60-513(b). ................................................................................................... 10

Ky. Rev. Stat. Ann. § 355.2-725 ................................................................................ 22

Ky. Rev. Stat. Ann. § 367.120.................................................................................... 25

Ky. Rev. Stat. Ann. § 367.220.................................................................................... 27

La. Stat. Ann. § 51:1409....................................................................................... 25, 27

Mo. Ann. Stat. § 407.020............................................................................................ 25

Mo. Ann. Stat. § 516.120............................................................................................ 22

Mo. Rev. Stat. § 516.100 ............................................................................................ 11

N.J. Stat. Ann. § 2A:14-2 ...................................................................................... 21, 27

N.J. Stat. Ann. § 2A:58C-1(3) ................................................................................... 21

N.J. Stat. Ann. § 56:8-2 .............................................................................................. 25

Ohio Rev. Code § 1345.10(C) .................................................................................... 27

Ohio Rev. Code § 2305.10(B)(1) ............................................................................... 12

Ohio Rev. Code Ann. § 1345.02 ................................................................................ 26

S.C. Code Ann. § 39-5-150 ................................................................................... 27, 28

S.C. Code Ann. § 39-5-20 ........................................................................................... 26

Tenn. Code Ann. § 47-18-102..................................................................................... 26

Tenn. Code Ann. § 47-18-110................................................................................ 27, 28

Tex. Bus. & Com. Code Ann. § 17.565 ............................................................. 27, 28, 30

Tex. Bus. & Com. Code Ann. § 2.725 ........................................................................ 22

Va. Code Ann. § 59.1-197........................................................................................... 26

Va. Code Ann. § 8.01-249(9) ...................................................................................... 15

**Other Authorities**

Civil Practice and Procedure, 51 U. Rich. L. Rev. 7 (2016) ............................................ 12

Restatement (Second) of Torts § 7 (1965) ...................................................................... 12

## Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 3

Fed. R. Civ. P. 8(a) ............................................................................................................ 26

Fed. R. Civ. P. 9(b) ...................................................................................................... 23, 26

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS ANGIODYNAMICS, INC. AND NAVILYST MEDICAL, INC.'S MOTION TO DISMISS**

## I.    INTRODUCTION

An age-old aphorism warns against missing the forest for the trees. But just as dangerous is missing the trees for the forest. This is what Defendants ask this Court to do in their Motion to Dismiss.

Defendants have lumped together fifty-three separate complaints that are subject to nineteen different states' laws. They have asked this Court to ignore all relevant legal and factual distinctions and instead hold that each state uses the removal date of a defective medical device as a blunt proxy for a plaintiff's "discovery" of his or her claim, thereby triggering the running of the statute of limitations.

In the overwhelming majority of the relevant states, that is simply not the law. As this Court has previously explained, "There are no hard and fast rules for determining what facts or circumstances will compel inquiry by [an] injured party." *Vigil v. Coloplast Corp.*, No. 319CV01851GPCBGS, 2020 WL 94378, at *5 (S.D. Cal. Jan. 8, 2020) (rejecting defendant medical device manufacturer's argument that limitations period begins to run as a matter of law from the date that the plaintiff "underwent her removal surgery").

Defendants' Motion also brushes over the key distinction between, on the one hand, a plaintiff's knowledge that an injury was caused by a *product* and, on the other hand, that it was caused by a *defective product*. In most discovery rule jurisdictions, "[i]t is not enough that [plaintiffs] knew that their injuries were caused by [the defendant's product]; they had to know—or have such information that a reasonable person would have to suspect—that their injuries were caused by *a defect* in the [product]." *In re Bridgestone/Firestone, Inc.*, 200 F. Supp. 2d 983, 990 (S.D. Ind. 2002) (emphasis added). In other words, the plaintiff must have reason to suspect "an alleged link between his injuries and someone's *wrongdoing*." *Id.* (emphasis added).

Under the circumstances giving rise to Plaintiffs' claims, it is not at all obvious that at the time of their respective devices' removal, Plaintiffs were on inquiry notice that the devices were defective. It is essential to remember that each of the Plaintiffs in this MDL was undergoing long-term treatment for serious, chronic medical conditions (often chemotherapy treatment for cancer). Plaintiffs' port catheters were removed because Plaintiffs developed device-related issues like infection, thrombosis, or fracture and migration. Defendants admit that port catheters "carry inherent risks of complications such as infection, fracture, and thrombosis." Defs.' Mem., Dkt. 194-1, at 3. A reasonable patient in Plaintiffs' position, therefore, could have believed that the infection, fracture, or thrombosis precipitating his or her device removal was not caused by any defect in the device, but was simply an expected side-effect of a non-defective device. This is particularly true because these Plaintiffs suffered from chronic medical conditions that *themselves* weakened Plaintiffs' immune systems and made them more susceptible to infection and thrombosis.[1] Moreover, many of the Plaintiffs' devices had been in place *for years*. Plaintiffs could therefore reasonably have believed that their device was not defective but instead fractured and migrated through normal, expected wear-and-tear, until they discovered, sometime after the device's removal, that it may in fact have been defective.

Because a proper application of state law does not establish that Plaintiffs' claims were time-barred as a matter of law, Defendants' motion should be denied.[2]

---

[1] *See* U.S. Centers for Disease Control and Prevention, "Risk Factors for Blood Clots," https://www.cdc.gov/blood-clots/risk-factors/index.html (last visited Mar. 13, 2025) (listing chronic illnesses including cancer as a risk factor for blood clots); American Cancer Society, "Why Are People with Cancer More Likely to Get Infections?," https://www.cancer.org/cancer/managing-cancer/side-effects/infections/why-people-with-cancer-are-at-risk.html (last visited Mar. 13, 2025).

[2] To gain efficiency going forward, a case management order directing Plaintiffs' counsel to file a Master Complaint would be helpful. A Master Complaint would serve as an administrative convenience for the Court and Parties by providing a master set of allegations that would eliminate the inherent complexity of motions like this one that involve the language of more than fifty separate complaints.

## II.    LEGAL STANDARD

Generally, the timeliness of a claim depends on matters outside the pleadings and is not "amenable to resolution on a Rule 12(b)(6) motion." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995). "A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Id.* (quoting *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980)). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* For this reason, dismissal is not appropriate "where the applicability of the equitable tolling doctrine depend[s] upon factual questions not clearly resolved in the pleadings." *Id.* Similarly, dismissal is improper where "the factual and legal issues are not sufficiently clear to permit [the court] to determine with certainty whether the doctrine could be successfully invoked." *Id.*

In jurisdictions in which the statute of limitations can be tolled by the discovery rule, "[t]he question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Vigil*, 2020 WL 94378, at *4 (quoting *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1218 (N.D. Cal. 2014)) (internal citation omitted).

Under most state laws, a plaintiff need not affirmatively plead tolling under the discovery rule. In those states, when "the pleading does not reveal when the limitations period began to run ... the statute of limitations cannot justify Rule 12 dismissal." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014); *see also, e.g.*, *Jones v. Davol, Inc.*, No. 3:18-CV-00182, 2018 WL 4369978, at *2–3 (E.D. Tenn. Sept. 12, 2018) (denying motion to dismiss because "based on the present record, the Court cannot definitively say that within one year of the Device's removal, [Plaintiff] *should* have known of the precise cause of her injuries and that the injuries were caused by Defendants' wrongful conduct"). In a

minority of states, however, a plaintiff seeking to rely on tolling under the discovery rule has an affirmative obligation to plead tolling. As relevant to the present matter, these states include California, Illinois, Indiana, Iowa, Kansas, Louisiana, Pennsylvania, and Texas. *See, e.g.*, *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18CV967-GPC(MSB), 2020 WL 1864781, at *4 (S.D. Cal. Apr. 14, 2020) (discussing California law). The Ninth Circuit has held that when such an affirmative obligation exists, the "plaintiff must meet the pleading requirements of [the applicable] state law." *Id.* (citations omitted).

Defendants have acknowledged this law but only in footnote—no doubt because it shows the state-specific and complaint-specific nature of the discovery rule analysis, cutting against Defendants' contention that the device removal date uniformly triggers the running of the statute for every Plaintiff. Here, each Plaintiff's Complaint includes allegations that support the application of their respective states' discovery rules, and Defendants' motion should be denied.

## III.   ARGUMENT

Plaintiffs have each adequately pleaded multiple causes of action related to their injuries caused by Defendants' defective port catheter products, as well as the application of the discovery rule. None of the Complaints establishes that it is time-barred as a matter of law—in other words, that "no set of facts" could establish the timeliness of Plaintiffs' claims. *Supermail*, 68 F.3d at 1206. Consequently, Defendants' motion should be denied.

### A.   Under Applicable Discovery Rules, Plaintiffs' Product Liability Claims Are Not Time-Barred

Defendants have misstated the applicable limitations period and tolling rules for nearly every claim at issue in their Motion. Under the rules as properly applied, Plaintiffs' claims cannot be dismissed at the 12(b)(6) stage.

### 1. Summary of State Discovery Rules

Plaintiffs agree that **Alabama** law does not recognize a discovery rule. However, the Alabama Plaintiffs have each pleaded fraudulent concealment, and therefore their claims are not subject to dismissal at the 12(b)(6) stage. *See infra* Section E.

So too, Plaintiffs agree that under **Georgia** law, statutes of limitations are only tolled under the discovery rule in cases of continuing torts. *See Jones v. Gen. Motors, LLC*, No. 23-11102, 2024 WL 861064, at *2 (11th Cir. Feb. 29, 2024). However, like the Alabama Plaintiffs, the Georgia Plaintiffs have pleaded fraudulent concealment, and therefore their claims should not be dismissed. *See infra* Section E.

Other than Alabama and Georgia, Defendants have mischaracterized the relevant states' discovery rules by selectively quoting statutes and case law that articulate only part of each state's rule.

Under **California**'s discovery rule, the limitations period does not begin to run until a plaintiff "has suffered appreciable harm and knows or suspects that ... blundering is its cause." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 398, 981 P.2d 79, 89 n.2 (1999) (citation omitted). "In California, the statute of limitations for products liability claims begins to run when a plaintiff has knowledge of facts that would create a suspicion of ***wrongdoing*** in a ***reasonable person***." *Marie Renteria v. Ethicon, Inc.*, No. CV205673MWFKESX, 2020 WL 7414744, at *6 (C.D. Cal. Nov. 18, 2020) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988); *Rivas v. Safety-Kleen Corp.*, 98 Cal. App. 4th 218, 228, 119 Cal. Rptr. 2d 503 (2002)).

Under **Colorado**'s discovery rule, the limitations period begins to run when a plaintiff "is aware or should be aware, in the exercise of reasonable diligence, of all of the elements of the cause of action." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 887–88 (10th Cir. 2005) (citations omitted). "Once a plaintiff has suspicion of *wrongdoing*, she is under a duty to attempt to find the facts." *Id.* (emphasis added). *See also Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 926–27 (Colo. 1993); *Heatherman v. Ethicon, Inc.*, No. 1:20-CV-01932-RBJ, 2021 WL 2138543, at *4 (D. Colo. Jan. 22,

2021) (holding that whether device removal date triggered running of statute of limitations was a jury question).

Under **Florida** law, a products liability action accrues on "the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence." Fla. Stat. Ann § 95.031(2)(b). "The discovery rule delays the accrual of a cause of action until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action." *Thomas v. Lopez*, 982 So. 2d 64, 67 (Fla. 5th DCA 2008). "Put another way, the cause of action accrues when the plaintiff knows, or through the exercise of reasonable diligence, should have known of the reasonable possibility that an injury was caused by [actionable wrongdoing]." *Id.* "It requires a determination of when the injured party, or his or her representative, became possessed of sufficient information concerning the injury and its cause to prompt a reasonable person to inquire further to determine if *actionable conduct* is involved. Simply suspecting wrongdoing is not enough." *Id.* at 68 (emphasis added). For products liability claims, "the limitations period … begins to run when the plaintiff knows or should have known of a causal connection between an injury distinct in some way from conditions naturally to be expected and her exposure to the product in question." *In re Holzenthal*, 580 B.R. 868, 871 (Bankr. M.D. Fla. 2016).

The **Illinois** Supreme Court has "construed the discovery rule relating to a statute of limitations to activate the running of the statute "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.'" *Du Page Cnty. v. Graham, Anderson, Probst & White, Inc.*, 485 N.E.2d 1076, 1080 (Ill. 1985) (citations omitted). "The question whether a person knew or reasonably should have known of their injury *and* its wrongful cause is emphatically one of fact, and courts will not decide it as a matter of law 'unless the facts are undisputed and only one conclusion can be drawn from them.'" *In re Paraquat Products Liab. Litig.*, No. 3:21-MD-3004-NJR, 2023 WL 3226189, at *3 (S.D. Ill. May 3, 2023) (quoting *Janetis v. Christensen*, 558 N.E.2d 304, 307 (Ill. App. Ct. 2015)). *See also Johnson v.*

*Johnson*, No. 1-16-0684, 2017 WL 1012445, at *3 (Ill. Ct. App. Mar. 10, 2017) (holding that trial court erred in granting defendant's motion to dismiss on limitations grounds where no allegations in the complaint suggested circumstances that would put a "reasonable person on notice that the cause was wrongful as opposed to a natural result of the underlying condition").

"In **Indiana**, the statute of limitations for tort claims begins to run when 'the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the *tortious act* of another.'" *Filip v. Block,* 879 N.E.2d 1076, 1082 (Ind. 2008) (citation omitted) (emphasis added). "The pertinent question is whether the plaintiff 'experienced symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery of his cause of action.'" *Hall v. Ethicon, Inc.*, No. 3:20-CV-516-RLM-MGG, 2020 WL 6826489, at *5 (N.D. Ind. Nov. 20, 2020) (quoting *DuRocher v. Riddell, Inc.*, 97 F. Supp. 3d 1006, 1029 (S.D. Ind. 2015) (quoting *Morgan v. Columbus McKinnon Corp.*, 837 N.E.2d 546, 549 (Ind. Ct. App. 2005)). As Defendants admit, "a plaintiff's mere suspicion or speculation that another's product caused the injuries is insufficient to trigger the statute." *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 411 (Ind. 2001); *see also Morgan*, 837 N.E.2d at 549–50 (holding that "once a plaintiff's doctor expressly informs the plaintiff that there is a reasonable possibility, if not a probability, that an injury was caused by an act or product, then the statute of limitations begins to run").

Under **Iowa**'s discovery rule, "the statute of limitations begins to run when the injured person discovers or in the exercise of reasonable care should have discovered the allegedly *wrongful act*." *Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985) (emphasis added). "In the realm of products liability, the action accrues for limitations purposes when the person is aware 'a problem' may be present with the product requiring 'diligent investigation' and such an investigation 'would have revealed the existence of the defect.'" *Farrand v. Stryker Corp.*, No. 4:13-CV-00443-RAW, 2014 WL 11514684,

at *9 (S.D. Iowa Nov. 12, 2014) (quoting *Buechel v. Five Star Quality Care, Inc.*, 745 N.W.2d 732, 738 (Iowa 2008)).

Under **Kansas** law, a claim does not accrue "until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. § 60-513(b). This provision "postpones the running of the limitations period until the time the plaintiff is able to determine that her injury may be caused by some act of the defendant." *Davis v. Johnson & Johnson*, No. 2:20-CV-02635-HLT, 2022 WL 1566117, at *3 (D. Kan. May 18, 2022) (quoting *Benne v. Int'l Bus. Machines Corp.*, 87 F.3d 419, 427 (10th Cir. 1996)). "The term 'substantial injury' is interpreted to mean 'actionable injury.'" *Id.* (citing *Michaelis v. Farrell*, 296 P.3d 439, 444 (Kan. Ct. App. 2013)). "[A] 'substantial injury' is one that justifies a legal action for damages." *Id.* (citations omitted). "If there are conflicting facts about when a substantial injury occurred or was reasonably ascertainable, it is a question of fact for the jury." *Id.*

Under **Louisiana**'s discovery rule (known as "contra non valentem"), the running of the statute of limitations "commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is *the victim of a tort*." *Med. Review Panel Proceedings for Timpton v. Touro Infirmary*, 313 So. 3d 1022, 1029–30 (La. Ct. App. 2021) (emphasis added) (quoting *Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002) (holding that "the mere fact there is an injury during or following medical care or treatment is not an indication of substandard care that either the physician or hospital provided"). *See also Fruge v. Ethicon US, LLC*, No. CV 16-149-JWD-EWD, 2017 WL 1807610, at *12–14 (M.D. La. Feb. 24, 2017) (discussing Louisiana law). In the malpractice context, for example, "a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may

have been caused by acts of malpractice." *Campo*, 828 So. 2d at 511. The application of the discovery rule is necessarily "fact-intensive." *Timpton*, 313 So. 3d at 1030.

Under **Missouri** law, a cause of action for product liability and personal injury accrues, and the statute of limitations begins to run "when the damage resulting therefrom is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. As the Eastern District of Missouri explained in a thorough discussion of accrual, "the statute of limitations begins to run when a reasonably prudent person would have been put on notice of two things: that he has suffered an injury and that the injury is 'potentially actionable.'" *Burdess v. Cottrell, Inc.*, 359 F. Supp. 3d 704, 710 (E.D. Mo. 2019) (quoting *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W. 3d 576, 584 (Mo. 2006)). A "potentially actionable" injury is "an injury for which another party could be held liable." *Id.* at 708.

The discovery rule in **New Jersey** is broad. As the New Jersey Supreme Court recently summarized state law: "In construing accrual statutes … we have eschewed 'a rigid and automatic adherence to a strict rule of law' that would produce unjust results." *The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC*, 230 N.J. 427, 443, 169 A.3d 473, 482–83 (2017) (quoting *Lopez v. Swyer*, 62 N.J. 267, 273–74, 300 A.2d 563, 566 (1973)). "That is because, in the realm of tort law, a plaintiff may not realize immediately that he suffered a personal injury or property damage or know that he has a cause of action against an identifiable wrongdoer." *Id.* Consequently, "[t]he trigger point for the start of a cause of action under an accrual statute is when 'the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured *due to the fault of another*.'" *Id.* (quoting *Caravaggio v. D'Agostini*, 166 N.J. 237, 246, 765 A.2d 182, 187 (2001)) (emphasis added).

Under **Ohio** law, a cause of action related to a medical device:

> accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first.

Ohio Rev. Code § 2305.10(B)(1). Once a person "discovers the causal relationship between a physical injury and use of a product, ... he may infer a defective or negligently manufactured product, *unless the physical injury is known and anticipated to be the natural and probable result of the use of the product.*" *Lundy v. Lederle Labs., Div. of Am. Cyanamid Co.*, 54 Ohio App. 3d 192, 561 N.E.2d 1027, 1032 (1988) (quotation omitted) (emphasis added). Here, Defendants have admitted that the "inherent risks" of their port catheters include infection, fracture, and thrombosis. Defs.' Mem., Dkt. 194-1, at 3. Consequently, under Ohio Rev. Code § 2305.10(B)(1) and *Lundy*, these "known and anticipated" symptoms cannot by themselves give rise as a matter of law to inquiry notice on the part of Plaintiffs at the pleading stage.

Similarly to Ohio law, under **Pennsylvania** law, "[i]n certain cases involving latent injury, *and/or instances in which the causal connection between an injury and another's conduct is not apparent*, the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been injured and that her injury has been caused by another party's conduct." *Wilson v. El-Daief*, 600 Pa. 161, 174, 964 A.2d 354, 361–62 (2009) (emphasis added). The Pennsylvania Supreme Court explained in *Wilson* that where a plaintiff has "legitimate and reasonable confusion" as to whether his or her symptoms are "linked to [wrongdoing]" or instead are "common side effects of the procedure performed," the limitations period is "clearly toll[ed] … via the discovery rule." *Id.* at 367 (citing *Fine v. Checcio*, 582 Pa. 253, 272–73, 870 A.2d 850, 861 (2005))."[The determination concerning the plaintiff's awareness of the injury and its cause is fact intensive, and therefore, ordinarily is a question for a jury to decide." *Id.* at 361–62; *see also id.* at 367 n.14 ("[L]egitimacy and reasonableness must be assessed factually, with this determination being relegated to jurors as fact-finders.").

Under **South Carolina**'s discovery rule, the statute of limitations "runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from … wrongful conduct." *Dean v. Ruscon Corp.*,

321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996); *see also State ex rel. Wilson v. Ortho-McNeil-Janssen Pharm., Inc.*, 414 S.C. 33, 76, 777 S.E.2d 176, 198–99 (2015).

Under **Tennessee** law, a plaintiff's claim accrues only when "the plaintiff is 'aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.'" *Jones v. Davol, Inc.*, No. 3:18-CV-00182, 2018 WL 4369978, at *2 (E.D. Tenn. Sept. 12, 2018) (quoting *Stanbury v. Bacardi*, 953 S.W.2d 671, 678 (Tenn. 1997)) (internal citation omitted). "In other words, once the injury is detected and *wrongdoing* is suspected, the limitations period begins to run." *Id.* (emphasis added). Applying this rule, the Eastern District of Tennessee in *Jones v. Davol, Inc.* denied the defendant implant manufacturer's motion to dismiss, rejecting the argument that the state of limitations began to run as a matter of law from the device's removal date.

> [Plaintiff] was clearly aware of her injury by September 2012, when the Device was surgically removed due to an infection. But [Plaintiff] says that the *cause* of her injury could not have been discovered within the applicable limitations period, and that she did not learn of Defendants' wrongful conduct until approximately July 19, 2017. If this is true, then [Plaintiff's] complaint (submitted in May 2018) was timely filed…. The fact that Plaintiff had the infected Device removed in September 2012 does not prove she knew the cause of her injury at that time….

*Id.*

Although **Texas** law appears somewhat unsettled, the better-reasoned authority holds that under Texas law, a claim does not accrue until the plaintiff knew or had reason to know that her injury was caused by a "wrongful act." *See generally Bergin v. Mentor Worldwide LLC*, 871 F.3d 1191 (11th Cir. 2017) (discussing Texas law); *see also Perez v. Am. Med. Sys. Inc.*, 461 F. Supp. 3d 488, 497 (W.D. Tex. 2020) (holding that a factfinder could find that cause of action did not accrue until plaintiff saw ads connecting her injury to pelvic mesh long after her revision surgery). To the extent that there is any doubt about the relevant rule of law in Texas, this requires denying a 12(b)(6) motion to dismiss. *Supermail*, 68 F.3d at 1206 (holding that dismissal is improper where "the … legal issues

are not sufficiently clear to permit [the court] to determine with certainty whether [the discovery rule] could be successfully invoked").

Section 8.01-249(9) of the **Virginia** Statutes provides that a products liability action for injury to the person resulting from or arising as a result of the implantation of any medical device accrues "when the person knew or should have known of the injury and its causal connection to the device." Va. Code Ann. § 8.01-249(9) . To date, no Virginia court has interpreted this statute. The better reading, however, interprets "causal connection" as extending the accrual date so as to "give more time to plaintiffs whose cause of action otherwise would have accrued when the injury occurred." Civil Practice and Procedure, 51 U. Rich. L. Rev. 7, 29 (2016). In any event, this Court need not resolve this unsettled question of state law at the 12(b)(6) stage; the legal uncertainty is reason alone to deny Defendants' motion to allow development of the factual record. *Supermail*, 68 F.3d at 1206.

Finally, under **Kentucky** law, a plaintiff must have a reasonable opportunity to discover the causal relationship between the product and her injury before the statute of limitations begins to run. *Louisville Trust Co. v. Johns-Mansville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979). The court in *Louisville Trust*—a case cited by Defendants— stated the discovery rule as follows:

> A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured *but also that his injury may have been caused by the defendant's conduct*.

*Louisville Trust Co.*, 580 S.W.2d at 501 (quoting *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170, 174 (1977)) (emphasis added). The Kentucky Supreme Court further explained that the discovery rule has two components. *Blanton v. Cooper Industries, Inc.*, 99 F. Supp. 2d 797, 801 (E.D. Ky. 2000). "The statute of limitations commences from the date the plaintiff knew or should have known not only (1) that he or she has been injured; but also (2) that his or her injury may have been caused by the defendant's conduct." *Id.*

The determination lies in the distinction between "discovery of harm" and "discovery of injury." *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 712 (Ky. 2000). "Harm" is defined as "the existence of loss or detriment in fact of any kind to a person resulting from any cause." Restatement (Second) of Torts § 7 (1965). The harm in this case would be the infection, catheter fracture, or thrombus following use of the Defendants' port. *Wiseman*, 37 S.W.3d at 712. "Injury" is defined as "the invasion of any legally protected interest of another." Restatement (Second) of Torts § 7 (1965). The "injury" is this case "refers to the actual wrongdoing," specifically Defendants' negligent, fraudulent, and otherwise tortious acts involving the port. *Wiseman*, 37 S.W.3d at 712. "So regardless of when a plaintiff experienced 'harm,' a 'legally recognizable injury does not exist until the plaintiff discovers the defendant's wrongful conduct' or the fact of the misconduct becomes 'objectively ascertainable.'" *Cutter v. Ethicon, Inc.*, No. 20-6040, 2021 WL 3754245, at *4 (6th Cir. Aug. 25, 2021) (quoting *Wiseman*, 37 S.W.3d at 713).

## 2. Application of Discovery Rules to Complaints

Defendants argue that each of the Plaintiffs has pleaded that they "(1) … experienced an alleged injury (infection, thrombosis, or fracture); and (2) their injury was related to the port catheter," and that this alone is sufficient to dismiss Plaintiffs' claims. Defs.' Mem. at 16. As set forth above, however, this is not the law in any of the nineteen relevant jurisdictions. With the exception of Georgia and Alabama, each state's law tolls the product liability limitations period until a plaintiff had reason to connect his or her injury to *wrongdoing*. None of the 53 Complaints pleads that such a connection was made outside the relevant limitations period.

In the main, each Complaint alleges that the Plaintiff suffered a port-related infection, thrombosis, or fracture and migration. For example, the Lapper Complaint (24-cv-02357) and Silva Complaint (25-cv-00190) both involve infections at the site of the port. *See* Lapper Compl. ¶ 43; Silva Compl. ¶ 43. Neither Complaint alleges or otherwise suggests that the Plaintiff was told, knew, or reasonably should have known at the time of her device's removal that her infection was caused by a defect in the device (that is, by

someone's "wrongdoing") rather than by a non-tortious cause (for example, a naturally-occurring infection, which is common among those like Plaintiffs with chronic illnesses). *Marie Renteria*, 2020 WL 7414744, at \*6.

The Schultz Complaint (24-cv-01921) and Valdez Complaint (24-cv-02490) both involve devices that fractured and migrated. *See* Schultz Compl. ¶ 44; Valdez Compl. ¶ 41–44. (Ms. Schultz also experienced thrombosis. *See* Schultz Compl. ¶ 44.). Nothing in either Complaint suggests that either Ms. Schultz or Ms. Valdez knew or had reason to suspect as of the date of their devices' removal that the devices fractured and migrated *because they were defective*. As Defendants have argued, port catheters can fracture due to non-tortious causes. *See* Defs.' Mem., Dkt. 194-1, at 3. It is possible based on their Complaints that both Ms. Schultz and Ms. Valdez reasonably believed as of their device removal dates that their devices fractured due to non-tortious causes, and this Court must assume so in viewing the facts alleged in the light most favorable to the Plaintiffs.

The Meyer Complaint (25-cv-00303) alleges that Ms. Meyer was implanted with a first SmartPort device, which caused extravasion. The first device was therefore replaced with a second SmartPort, which ultimately caused Ms. Meyer to develop thrombosis. Meyer Compl. ¶ 40, 43–44. Nothing in the facts alleged suggests that Ms. Meyer knew or reasonably should have been aware that either of these devices was defective. Indeed, the fact that Ms. Meyer's doctor replaced the first malfunctioning device with another of the same model would indicate to a reasonable person in Ms. Meyer's position that the device was *not* defective. *See Fruge*, 2017 WL 1807610, at \*15 (holding that use of second device of same model could have suggested to a reasonably prudent plaintiff that the first device was not defective). Each of the conditions Ms. Meyer experienced could have had non-tortious causes. And the fact that Ms. Meyer calls the SmartPort a "Defective Device" in her pleadings, *see id.* ¶ 40, does not reflect her knowledge at the time of the devices' removal, but instead at the time she filed her Complaint.

Similarly, the Norris Complaint (24-cv-02399) involved a port catheter related infection. *See id*. Like all the other Complaints at issue here, the Norris Complaint does

1    not facially establish that Ms. Norris knew, or in the exercise of ordinary diligence could

2    have discovered as of the date of her device's removal, that her infections were caused by

3    a defective product (rather than a product operating as it should). The mere fact that Ms.

4    Norris's doctors identified the port catheter as the "source" of the infection, *see* Norris

5    Compl. ¶ 48, does not establish that her doctors knew (let alone advised Ms. Norris) that

6    a *defective* port catheter was the source of her injury.

7         Given the pleadings, it is premature to hold that Plaintiffs' claims are time-barred

8    as a matter of law. This Court rejected a similar argument in *Vigil v. Coloplast Corp*. In

9    that MDL case, a defendant mesh implant manufacturer opposed a plaintiff's motion for

10   leave to amend her complaint. 2020 WL 94378 at *1. The defendant argued that

11   amendment would be futile because, according to the defendant, the plaintiff's claim was

12   time-barred as a matter of law where she had filed her claim outside the limitations period,

13   calculated as running from the date of the defective device's surgical removal. *Id.* at *3.

14   This Court disagreed with the defendant. It held that the device's removal date does not

15   "categorically trigger[] the statute of limitations to run." *Id.* at *5. "There are no hard and

16   fast rules for determining what facts or circumstances will compel inquiry by the injured

17   party." *Id.* (quoting *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1320

18   (2007)). "Consequently, the Court must study the specific record at hand, especially

19   because under the relevant standard Defendant's success requires that 'the evidence ...

20   support[s] only *one* reasonable conclusion.'" *Id.* (quoting *Eidson v. Medtronic, Inc.*, 40 F.

21   Supp. 3d 1202, 1218 (N.D. Cal. 2014)).

22        So too, in *Marie Renteria v. Ethicon, Inc.*, the defendant mesh implant

23   manufacturer moved for summary judgment on its statute of limitations affirmative

24   defense, arguing that there was no genuine issue of material fact as to when the plaintiff

25   was put on inquiry notice of her claim: According to the defendant, it was as of the date

26   of her removal surgery. 2020 WL 7414744, at *6. The Central District of California

27   disagreed:

28

15

1

2

3

4

5

6

7

8

9

> Drawing all reasonable inferences in favor of Plaintiff, the Court determines that there is a genuine dispute as to whether a reasonable person would have suspected *wrongdoing* in 2014. Even crediting Dr. Chew's testimony that she told Plaintiff about the mesh removal during the August 2014 surgery, a reasonable jury could find that Plaintiff was not put on inquiry notice of Defendants' *wrongdoing*: at no point did Dr. Chew explain to Plaintiff that there was a defect with the mesh implant or indicate that something had gone unexpectedly wrong with Plaintiff's mesh implant because of the implant manufacturers' conduct. Rather, a reasonable jury could find that Dr. Chew repeatedly assured Plaintiff in September and October 2014 that her pain was normal and caused by surgical scarring, not by the mesh implant itself. Therefore, the question of whether the August 2014 surgery would have made a reasonable person suspicious of wrongdoing is best left to a jury.

10

*Id.* at *7.

11

12

13

14

15

16

17

18

The Eastern District of Tennessee reached a similar result in *Jones v. Davol, Inc.*, another mesh implant case. In *Jones*, the manufacturer moved to dismiss plaintiff's claim on limitations grounds, arguing that the claim accrued no later than the device's removal date. 2018 WL 4369978, at *2. The court disagreed, holding that the "fact that Plaintiff had the infected Device removed in September 2012 does not prove she knew the cause of her injury at that time." *Id.* "[T]he Court cannot definitively say that within one year of the Device's removal, Jones *should* have known of the precise cause of her injuries and that the injuries were caused by Defendants' wrongful conduct." *Id.*

19

20

21

22

23

24

25

26

27

Defendants rely heavily on the Western District of Missouri's decision in *Reed v. AngioDynamics, Inc*., No. 2:23-CV-04066-MDH, 2023 WL 8478023 (W.D. Mo. Dec. 7, 2023). Not only does *Reed* not control in this Court, but Plaintiffs respectfully submit that *Reed* was wrongly decided, because the *Reed* court failed to grapple with the key question that these port catheter cases raise—namely, whether the occurrence of an *expected side effect* related to Defendants' port catheter devices triggers the running of the statute of limitations, where the Plaintiff admittedly knew that the side-effect was *related* to the port catheter, but did not know that it was related to any *unusual or unexpected problem* with the port catheter.

28

16

Defendants' other case law is no more controlling or persuasive. *Curtis v. Mentor Worldwide LLC*, 543 F. App'x 901, 902 (11th Cir. 2013), was decided on a motion for summary judgment, not a motion to dismiss. And *In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) involved an intra-uterine device (IUD) that perforated the plaintiff's uterus and migrated into her abdomen. Unlike the port catheter related infections, migrations, and thrombosis at issue here, uterine perforation was not an admittedly expected side-effect of an IUD. *See Wilson*, 964 A.2d at 361–62 (stating that where a plaintiff has "legitimate and reasonable confusion" as to whether his or her symptoms are "linked to [wrongdoing]" or instead are "common side effects of the procedure performed," the limitations period is "clearly toll[ed] … via the discovery rule"). Because it does not "appear[] beyond doubt that the plaintiff[s] can prove no set of facts that would establish the timeliness of [their] claim[s]," *Supermail*, 68 F.3d at 1206, Defendants' motion should be denied.[3]

## B. Beyond UCC-Accrual States, Plaintiffs' Breach of Warranty Claims Are Not Time-Barred

Plaintiffs do not dispute that Kansas, Louisiana, New Jersey, Ohio, and Tennessee subsume personal injury warranty claims into product liability statutes, subject to certain exceptions.[4] It is also true that California, Florida, Georgia, South Carolina, and Virginia

---

[3] Plaintiffs do not offer a substantive opposition to Defendants' argument that certain complaints are time-barred by operation of Tennessee's and Texas's statutes of repose. Each of those complaints was voluntarily dismissed prior to the filing of this response rendering the issue moot.

[4] Defendants overreach on several issues. First, the New Jersey PLA explicitly carves out breach of express warranty. *See* N.J. Stat. Ann. § 2A:58C-1(3). To the extent this claim is still subject to the personal injury statute of limitations, *id.* at § 2A:14-2, New Jersey's discovery rule still forecloses Defendants' motion. *See supra* Section A. Second, Ohio claimants can maintain common law breach of implied warranty claims for economic loss in the alternative to those subsumed by the OPLA. *See Perry v. Ethicon, Inc.*, No. 2:20-CV-6592, 2022 WL 912214, at *5 (S.D. Ohio Mar. 29, 2022) (in medical device case, plaintiffs' breach of implied warranty claims could proceed in the alternative under common law theory for economic loss, including for the change in value of a defective product and other indirect losses).

courts apply uniform statutes of limitations to all personal injury claims. *See* Defs.' Mem. at 21. But Defendants' motion remains premature under each state's law. All apply discovery rules—meaning that no warranty claims accrue until Plaintiffs had reason to connect their injuries to Defendants' *wrongdoing*. *See supra* Section A.

Plaintiffs also acknowledge that Alabama, Colorado, Illinois, Indiana, Iowa, Kentucky, Pennsylvania, and Texas apply the Uniform Commercial Code ("UCC") statute of limitations to personal injury warranty claims—three years in Colorado, five in Iowa, and four elsewhere. *See* Ala. Code § 7-2-725; Colo. Rev. Stat. §§ 4-2-725, 13-80-101; Ind. Code Ann. § 26-1-2-725; Iowa Code § 554.2725; Ky. Rev. Stat. Ann. § 355.2-725; 13 Pa. Cons. Stat. § 2725; Tex. Bus. & Com. Code Ann. § 2.725. Because these states enforce UCC accrual-upon-delivery rules, *see id.*, Plaintiffs concede that warranty claims based on port catheters implanted outside the statutory period are time-barred.

But Defendants cannot lump Missouri claimants into this group. *See* Defs.' Mem. at 22. Courts have repeatedly held that Missouri's personal injury statute of limitations,[5] not the UCC provision, applies to breach of warranty claims alleging personal injury. *See Burdess v. Cottrell, Inc.*, No. 4:17-CV-01515-JAR, 2023 WL 4422642, at *5 (E.D. Mo. July 10, 2023); *Chole v. Bos. Sci. Corp.*, No. 4:19-CV-02976 JAR, 2020 WL 1853266, at *3 (E.D. Mo. Apr. 13, 2020); *Witherspoon v. Gen. Motors Corp.*, 535 F. Supp. 432, 434 (W.D. Mo. 1982).[6] Consequently, the Missouri claimants' warranty claims did not accrue upon delivery, but instead when they were put on notice that their injury was potentially actionable. *See supra* Section A.1; *Cottrell*, 359 F. Supp. 3d at 708.

### C.    Plaintiffs' Fraud Claims Are Not Time-Barred

As to Plaintiffs' fraud claims, Defendants again argue that all of the Plaintiffs' fraud claims accrued at the time of the devices' removal at latest. This is nothing more

---

[5] Mo. Ann. Stat. § 516.120.

[6] Defendants cite no authority for applying Missouri's UCC statute of limitations and accrual-on-delivery rule in the personal injury context. And despite Defendants' emphasis on *Reed* elsewhere, even there the court did not hold that the plaintiff's warranty claims accrued upon implantation. 2023 WL 8478023, at *4 (applying Missouri law).

than a rehash of Defendants' same flawed argument, which fails for the reasons set forth above. *See supra* Section A. Numerous courts in medical device cases have refused to dismiss fraud claims under the discovery rule. *See, e.g., Wanke v. Invasix Inc.*, No. 3:19-cv-0692, 2020 WL 2542594, at \*11 (M.D. Tenn. May 19, 2020) ("[W]hether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a question of fact for the jury to determine.") (citation omitted); *In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prods. Liab. Litig.*, No. 1:17-md-2775, 2018 WL 6067505 (D. Md. Nov. 19, 2018) (allowing leave to amend fraud claims subject to California law to reflect the time and manner of discovering the injury's cause, and denying defendant's motion to dismiss fraud claims subject to Indiana, New Jersey, Ohio, and Pennsylvania law) (concluding that discovery rules are inherently fact-bound, the application of which demands inquiries in the plaintiffs' states of mind and medical histories); *Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1227 (N.D. Ala. 2014) ("[T]he question of when a party should have reasonably discovered fraud is generally one for a jury, and … courts should decide this issue 'as a matter of law only in cases where the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud.'") (citation omitted).

Defendants have relied exclusively upon cases decided on summary judgment, *see* Defs.' Mem., Dkt. 194-1 at 24, lines 14–21, which just highlights the fact-intensive nature of the discovery rule analysis and shows why dismissal would be improper at the 12(b)(6) stage. In *Corder v. Ethicon, Inc.*, the Court relied on specific statements made by plaintiff and her husband in their depositions, including the plaintiff's statement that something "never has been right about [my mesh implant] since I got it" and that she had seen a lawyer's advertisement about her specific product—and even communicated with that lawyer—in deciding that plaintiff's claims accrued outside the relevant limitations period. No. 6:19-CV-273-REW, 2023 WL 7169091, at \*3 (E.D. Ky. Sept. 26, 2023). *See also Crowe v. Johnson & Johnson,* No. 1:21-CV-210-TFM-C, 2022 WL 2161052, at \*8 (S.D. Ala. June 15, 2022) (relying on deposition testimony from the plaintiff and evidence of an

FDA Public Health Notification in finding plaintiff's claim had accrued outside the limitations period); *Schrott v. Bristol-Myers Squibb Co.,* No. 03 C 1522, 2003 WL 22425009, at \*4-5 (N.D. Ill. Oct. 23, 2003), *aff'd*, 403 F.3d 940 (7th Cir. 2005) (granting summary judgment where plaintiff offered no evidence that her symptoms were consistent with symptoms typically suffered by breast implant patients).

### D.    Plaintiffs' Consumer Protection Claims Are Not Time-Barred

Consumer protection claims are created to protect consumers against false, misleading, deceptive, and unfair business practices, including selling unsafe or defective products. *See* Ala. Code § 8-19-2; Cal. Civ. Code § 1760; *Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998); Fla. Stat. Ann. § 501.202; Ga. Code Ann. § 10-1-391; 815 Ill. Comp. Stat. Ann. 505/2; Ind. Code Ann. § 24-5-0.5-1; Iowa Code Ann. § 714H.3; Ky. Rev. Stat. Ann. § 367.120; La. Stat. Ann. § 51:1409; Mo. Ann. Stat. § 407.020; N.J. Stat. Ann. § 56:8-2; Ohio Rev. Code Ann. § 1345.02; S.C. Code Ann. § 39-5-20; Tenn. Code Ann. § 47-18-102; Va. Code Ann. § 59.1-197.[7]  Consumer protection laws safeguard individuals against harmful practices by businesses and emphasize businesses' responsibility to act prudently to protect consumers. These statutes address distinct types of harm and provide a vital means for consumers to assert their rights and seek redress against wrongdoing, ensuring a safer marketplace through accountability.

Despite Defendants' contentions in Section IV(D) of their Motion to Dismiss, only Kansas, Missouri, and Virginia consumer protection claims are subsumed by those states' product liability or personal injury statutes of limitations. In those states, the same accrual rules that apply to Plaintiffs' product liability claims also apply to Plaintiffs' consumer protection claims, making them facially timely. *See supra* Section A.

---

[7] Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) analysis has been omitted. "Because a medical device manufacturer does not have a duty to disclose information directly to the consumer under Pennsylvania law, a consumer does not have a cause of action under the UTPCPL against the manufacturer of a medical device." *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 831 (E.D. Pa. 2016) (citing *Kee v. Zimmer, Inc.*, 871 F.Supp.2d 405, 411 (E.D. Pa. 2012)) (internal quotes omitted). These claims will be dismissed.

Alabama, California, Colorado, Georgia, Illinois, Indiana, Iowa, Kentucky, Louisiana, Ohio, South Carolina, Tennessee, Texas, and Virginia each have specific limitations periods established by their respective consumer protection statutes. *See* Ala. Code § 8-19-14; Colo. Rev. Stat. Ann. § 6-1-115; Ga. Code Ann. § 10-1-401; Ind. Code § 24-5-0.5-5(b); 815 Ill. Comp. Stat. Ann. 505/10a; Iowa Code Ann. § 714H.5; Ky. Rev. Stat. Ann. § 367.220; La. Stat. Ann. § 51:1409; Ohio Rev. Code § 1345.10(C); S.C. Code Ann. § 39-5-150; Tenn. Code Ann. § 47-18-110; Tex. Bus. & Com. Code Ann. § 17.565. For example, under **California**'s Consumer Remedies Act (CLRA), "any action brought shall be commenced not more than three years from the date of the commission of such method, act, or practice." Cal. Civ. Code § 1783. This differs from the two-year limitations period under Cal. Civ. Proc. Code § 335.1.

**New Jersey** courts have held that state consumer protection claims are not subject to the two-year tort limitations period under N.J. Stat. Ann. § 2A:14-2, but instead the state's six-year statute of limitations for contract claims. "New Jersey's 6-year statute of limitations for contract actions also covers… claims under the [Consumer Fraud Act][.]" *Kennedy v. Axa Equitable Life Ins., Co.*, No. CIV.06-6082(RBK), 2007 WL 2688881, at *2 (D.N.J. Sept. 11, 2007) (citing *D'Angelo v. Miller Yacht Sales,* 261 N.J. Super. 683, 619 A.2d 689 (N.J. Super. Ct. App. Div. 1993); *Gahnney v. State Farm Ins. Co.,* 56 F. Supp. 2d 491 (D.N.J. 1999)).

Alabama, Colorado, Illinois, Iowa, Missouri, South Carolina, Tennessee, and Texas apply the discovery rule to consumer protection claims. *See* Ala. Code § 8-19-14; Iowa Code Ann. § 714H.5; S.C. Code Ann. § 39-5-150; Tenn. Code Ann. § 47-18-110 (any action shall be brought within one year from a person's discovery of the unlawful act or practice); Tex. Bus. & Com. Code Ann. § 17.565. Under the **Colorado** Consumer Protection Act, "[a]ll actions brought under this article must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have

discovered the occurrence of the false, misleading, or deceptive act or practice." Colo. Rev. Stat. Ann. § 6-1-115. An **Illinois** Consumer Fraud and Deceptive Business Practices Act claim "accrues when the plaintiff 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.'" *Gater v. Bank of Am., N.A.*, No. 13 C 3267, 2013 WL 5700595, at \*1 (N.D. Ill. Oct. 18, 2013) (citing *Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434, 441 (7th Cir. 1994) (quoting *Knox College v. Celotex Corp.,* 430 N.E.2d 976, 980 (Ill. 1981)); 815 Ill. Comp. Stat. Ann. 505/10a. Under **South Carolina**'s discovery rule, "the three-year clock starts ticking on the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from wrongful conduct." *Dean v. Ruscon Corp.,* 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) (citation omitted). Nothing in language of these statutes expressly or impliedly sets a device's removal date as the time the limitations period starts running. Instead, these laws require a case-by-case analysis. "Although as a general rule, determining the accrual date of a cause of action is a question of law, the accrual date of a cause of action involving… [a] violation of the Deceptive Trade Practices Act (DTPA), may present questions of fact to be determined on a case-by-case basis." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 222 (Tex. 2003).

Florida, Indiana, Kentucky and Ohio do not apply the discovery rule to consumer protection claims. However, the statutory periods' triggering events vary based on each state's statutory language. While **Ohio** does not apply the discovery rule, "[t]he two-year statute of limitations commences to run from the date of the occurrence of the violation, which is not necessarily the date of any underlying transaction." *Price v. KNL Custom Homes, Inc.*, 2015-Ohio-436, 28 N.E.3d 640, ¶ 16 (9th Dist.). "Rather, the General Assembly explicitly recognized that a [Consumer Sales Practices Act] violation may occur before, during or after the underlying consumer transaction." *Montoney v. Lincoln Logs, Ltd.*, 2007-Ohio-236, 2007 WL 155451, ¶ 26 (10th Dist.).

Further, each of the Plaintiffs' Complaints alleges fraudulent concealment, and "[l]ike the discovery rule, proof of fraudulent concealment also tolls accrual of

limitations." *See Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex. 1983); *Dougherty v. Gifford,* 826 S.W.2d 668, 673 (Tex. App.—Texarkana 1992, no writ); *Kanon v. Methodist Hosp.*, 9 S.W.3d 365, 368 (Tex. App. 1999), disapproved of by *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573 (Tex. 2001). If a party takes affirmative action to conceal the fraud, the statue is tolled until the fraud is discovered. *Tilley v. Franklin Life Ins. Co.* 957 S.W.2d 349 (Mo. Ct. App. 1997); *Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1261 (Ind. 2014). Under *Kentucky* law, "equitable estoppel requires both a material misrepresentation by one party and reliance by the other party, which requires a fact specific analysis," again making the application of the law to the facts essential. *Fluke Corp. v. LeMaster,* 306 S.W.3d 55, 62 (Ky. 2010). Colorado and Texas go so far as to include fraudulent concealment provisions within their respective consumer protection statutes. *See* Colo. Rev. Stat. Ann. § 6-1-115 ("The period of limitation provided in this section may be extended for a period of one year if the plaintiff proves that failure to timely commence the action was caused by the defendant engaging in conduct calculated to induce the plaintiff to refrain from or postpone the commencement of the action"); Tex. Bus. & Com. Code Ann. § 17.565 ("The period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action").

**E.    The Statutes of Limitations Are Tolled By Fraudulent Concealment**

Plaintiffs have pled, with sufficient particularity, that the applicable statutes of limitations are tolled by fraudulent concealment. Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," while "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The particularity requirement "exists to provide a defendant with sufficient notice of the misrepresentations alleged so that he can answer and defend himself." *Wells v. Johnson & Johnson*, 554 F. Supp. 3d 1207, 1214 (W.D. Okla. 2021) (citing *Gardner v. Inv'rs Diversified Capital, Inc.*, 805 F.

1  Supp. 874, 876 (D. Colo. 1992)). Rule 9(b) essentially requires that a party provide the

2  "who, what, when, where and how" of the alleged fraud. *Khoja v. Orexigen Therapeutics,*

3  *Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted). "Rule 9(b) does not necessitate

4  pleading of detailed evidentiary matter," but ony sufficient facts to "give the opposing

5  party notice of the particular conduct which is alleged to constitute the fraud." *Stack v.*

6  *Lobo*, 903 F. Supp. 1361, 1367 (N.D. Cal. 1995). Additionally, where "fraud allegedly

7  occurred over a period of time … Rule 9(b)'s particularity requirement is less stringently

8  applied." *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006); *see*

9  *also Andrade-Heymsfield v. NextFoods, Inc.*, No. 3:21-CV-01446-BTM-MSB, 2022 WL

10  1772262, at *3 (S.D. Cal. Apr. 27, 2022).

11      In each complaint, Plaintiffs allege that Defendants (who) misrepresented the

12  safety of the port catheter device and withheld critical information from Plaintiffs and

13  their healthcare providers (how), specifically regarding the substantial risks of using the

14  device. These risks include (1) an increased propensity to precipitate infection and other

15  complications, (2) data indicating the device was less safe than market alternatives, (3) the

16  frequency of device failures, and (4) the severity of injuries resulting from such failures

17  (what). Plaintiffs further specify when the port catheter device was implanted in them

18  (when) and detail the means through which Defendants disseminated their

19  misrepresentations, including direct-to-consumer marketing and marketing to healthcare

20  professionals (where and how). Plaintiffs also allege the contents of Defendants'

21  misrepresentations (failure to disclose that Defendants' port catheter device had a

22  substantially higher failure rate than other alternatives on the market). Additionally,

23  Plaintiffs' allegations include what Defendants fraudulently concealed from Plaintiffs and

24  their healthcare providers (the devices' propensity to cause infection and other

25  complications, and the Defendants' knowledge thereof). Further, Plaintiffs allege that

26  Defendants made numerous misrepresentations and omissions over the course of several

27  years. Considering these circumstances, Plaintiffs' allegations meet the "particularity"

28  requirement of Rule 9(b) because they sufficiently allege specific facts regarding the

1 "who, what, when, where and how" of Defendants' alleged fraud. These allegations, as
2 pleaded, were sufficient to put Defendants on notice of the claims against them and
3 provide a fair opportunity for response.

4      Alternatively, Plaintiffs' complaints are subject to, and survive, a relaxed 9(b)
5 pleading standard given that the facts regarding Defendants' fraudulent concealment are
6 in the sole possession of the Defendants and cannot be obtained without pretrial discovery.
7 Rule 9(b) does not require Plaintiffs to set forth facts that they lack access to prior to
8 discovery. *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996). In this
9 situation, the "particularity" requirement of 9(b) is relaxed, and may be satisfied by a
10 showing that the particulars of the alleged fraud could not have been obtained without
11 pretrial discovery. *Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2023) (quoting
12 *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019)); *Emery*
13 *v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998); *In re Burlington Coat Factory*
14 *Securities Litigation*, 114 F.3d 1410, 1418 (3d Cir. 1997); *Kowal v. MCI Communications*
15 *Corp.*, 16 F.3d 1271, 1279 n. 3 (D.C. Cir. 1994); *Scheidt v. Klein*, 956 F.2d 963, 967 (10th
16 Cir. 1992); *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987).

17      Plaintiffs allege that Defendants concealed the safety risks and complications
18 associated with their port catheter devices and concealed their knowledge about such
19 safety risks. Additionally, Plaintiffs plead that they lack access to material facts
20 concerning the dangers and unreasonable risks of the devices, Defendants' knowledge of
21 such risks, and the extent of Defendants' knowledge. Because Defendants concealed this
22 information from Plaintiffs, Plaintiffs are limited in their ability to allege specific facts
23 regarding the Defendants' fraudulent concealment. Dismissing Plaintiffs' complaints
24 would thus create a "Catch-22" situation, where Plaintiffs are penalized for their inability
25 to obtain essential information that is exclusively within Defendants' control. *Emery*, 134
26 F.3d at 1323. This Court should deny Defendants' Motion to Dismiss because Plaintiffs
27 have not yet had an opportunity to obtain facts regarding Defendants' fraudulent

28

concealment which are in the Defendants' sole possession and control, and have sufficiently pled their cause of action using facts available to them to date.

Defendants rely on *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985) as sufficient authority for dismissal. However, *Braxton-Secret*'s reasoning was based on a fact-intensive inquiry with undisputed facts, a situation not present here. In *Braxton-Secret*, the court, relying on a fully developed record, found that the plaintiff knew or should have known of her injury when she had her IUD removed following a miscarriage while the IUD was implanted. The court granted summary judgment based on the recognition that, because the plaintiff knew the IUD was designed to prevent pregnancy, the "only reasonable conclusion" from her becoming pregnant was that the IUD had failed. *Id.* at 531. Here, however, Plaintiffs' infections and other injuries were not so obviously attributable to the port catheter and/or its alleged defects. Unlike the rare occurrence of pregnancy with an IUD, the sequelae that Plaintiffs experienced are common, particularly among patients with underlying health conditions like Plaintiffs, which prevented them from discovering their injuries and the cause of their injuries. Furthermore, "whether a party knew or should have known of a particular condition" is generally a "factual issue" inappropriate for resolution on a Motion to Dismiss. *Id*. at 531. Plaintiffs have therefore met their burden of *pleading* fraudulent concealment.

Defendants' reliance on *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594 (2014) ) is also misplaced. *Graham* did not address tolling the statute of limitations due to fraudulent concealment; rather, it involved a motion to dismiss a plaintiff's separate and distinct cause of action for "fraud or deceit." *See id.* at 605. Moreover, *Graham* does not even mention Rule 9(b)'s requirements. As such, it provides no support for Defendants' argument. Plaintiffs have adequately pled fraudulent concealment with the particularity required under Rule 9(b), and therefore Defendants' Motion to Dismiss should be denied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### F.    Plaintiffs' Standalone Fraudulent Concealment Claims Are Sufficiently Pled

Several Plaintiffs assert standalone fraudulent concealment claims under Kentucky and Illinois law. Under Federal Rule of Civil Procedure 9(b), Plaintiffs must specify the "who, what, when, where, and how" of the alleged fraud. *Helm v. Ratterman*, 778 F. App'x 359, 369 (6th Cir. 2019); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Defendants improperly overemphasize Rule 9(b)'s particularity requirement without considering Rule 8(a), which requires only a "short and plain statement" with "simple" and "concise" allegations. "[I]t is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Michaels Bldg. Co. v. Ameritrust Co.*, N.A., 848 F.2d 674, 679 (6th Cir. 1988) (quoting Wright & Miller, Federal Practice and Procedure: Civil § 1298 (1969)). The primary focus under Rule 9(b) is whether Plaintiffs' allegations provide fair notice of the substance of their claims so that Defendants can prepare a responsive pleading. *Id.*

Plaintiffs have pleaded sufficient facts to satisfy this standard. Plaintiffs allege that Defendants fraudulently concealed critical safety information from Plaintiffs and their healthcare providers through labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions. Specifically, Plaintiffs allege that Defendants concealed information about the device's heightened propensity to cause infection, port erosion, and other complications; evidence demonstrating the device was not safer than alternatives available on the market; and Defendants' knowledge of these risks, including the frequency of device failures and the severity of resulting injuries, which were substantially worse than reported. Plaintiffs further allege that Defendants made these misrepresentations before the device was implanted and that Plaintiffs' healthcare providers relied on these misrepresentations in selecting and implanting the device at the relevant medical facilities. Plaintiffs cannot provide additional details regarding Defendants' specific acts of concealment or the exact

timeline because this information remains solely within Defendants' control. *See Michaels Bldg. Co.*, 848 F.2d at 680.

Defendants' reliance on the decisions in *Morris v. Angiodynamics*, 716 F. Supp. 3d 1205 (M.D. Ala. 2024), and *Jones v. Angiodynamics*, No. 6:23-CV-1554-WWB-LHP, 2024 WL 4430671 (M.D. Fla. Sept. 9, 2024), is misplaced. Not only are *Morris* and *Jones* non-binding on the Kentucky and Illinois claims at issue here, but they are also distinguishable. Unlike the plaintiffs in those cases, who merely alleged that Defendants misrepresented the device's safety in general terms, Plaintiffs here specify exactly what information was concealed—including the device's propensity for infection and erosion, its complication risks, and the frequency and severity of injuries resulting from its use. These allegations go beyond conclusory statements and meet the pleading standards of both Rule 8(a) and Rule 9(b). Accordingly, this Court should deny Defendants' motion to dismiss Plaintiffs' standalone fraudulent concealment claims.

## IV.    CONCLUSION

In sum, Defendants ask this Court to ignore all relevant legal and factual distinctions between fifty-three separate complaints and the laws of nineteen different states and instead establish a bright-line rule that the date each Plaintiff's device was removed is the date of discovery for statute of limitations purposes. Such a rule is simply not the law in the majority of states at issue here. Defendants' request disregards the difference between knowledge that an injury was caused by a product and knowledge that an injury was cause by a *defective* product. Plaintiffs have adequately pleaded their claims, including establishing that they are timely on the face of each Complaint, and therefore Defendants' Motion must be denied. In the alternative, Plaintiffs respectfully request leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."); *see also San Diego Cnty. Credit Union*, No. 18CV967-GPC(MSB), 2020 WL 1864781, at *7 (S.D. Cal. Apr. 14, 2020) (granting plaintiff leave to amend to plead discovery rule).

Dated: March 21, 2025

/s/ *Anne Schiavone*
Anne Schiavone (Admitted *Pro Hac Vice*)
**HOLMAN SCHIAVONE LLC**
4600 Madison Ave, Ste 810
Kansas City, MO 64112
Telephone: (816) 283-8738
Facsimile: (816) 283-8739
Email: aschiavone@hslawllc.com

/s/ *R. Andrew Jones*
R. Andrew Jones (Admitted *Pro Hac Vice*)
**CORY WATSON, P.C.**
2131 Magnolia Avenue
Birmingham, AL 35205
Telephone : (205) 328-2200
Facsimile: (205) 324-7896
Email: ajones@corywatson.com

/s/ *Andrew Van Arsdale*
Andrew Van Arsdale
CA State Bar No. 323370
**AVA LAW GROUP**
3667 Voltaire Street
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667
Email: andrew@avalaw.com

/s/ *Kimberly L. Boldt*
Kimberly L. Boldt
**Ratzan Weissman & Boldt**
2850 Tigertail Avenue, Suite 400
Coconut Grove, Florida 33133
Telephone: (305) 374-6366
Facsimile: (305) 374-6755
E-mail: kinberly@rwblawyers.com
Fla. Bar No. 957399

*Attorneys for Plaintiffs*

29