**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE: ANGIODYNAMICS, INC., AND NAVILYST MEDICAL, INC., PORT CATHETER PRODUCTS LIABILITY LITIGATION** | Case No. 3:24-md-03125-JO-VET<br><br>~~PROPOSED~~<br>**CASE MANAGEMENT ORDER NO. 4 (Applies to All Actions)**<br><br>**ELECTRONICALLY STORED INFORMATION AND DOCUMENT FORM AND FORMAT PRODUCTION PROTOCOL** |

### I. General Provisions

This ORDER and the procedures and protocols outlined herein govern the production of electronically-stored information ("ESI") and hard-copy paper documents by parties and third-parties in MDL No. 3125, whether such action is transferred to this MDL by the Judicial Panel on Multidistrict Litigation or directly filed or removed to this MDL.[1] In the event of remand or transfer to other courts, this Order will remain in effect in all respects until adopted by the receiving court or replaced by a subsequent order. Nothing in this protocol shall limit a party or

---

[1] The Parties agree to meet and confer separately regarding the form and format of production for any non-ESI or hardcopy paper items.

third-party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this Order

## II. Designated ESI Liaison

Each side shall designate one or more individuals as Designated ESI Liaison(s) for purposes of meeting and conferring with the other parties and of attending Court hearings on the subject of relevant ESI. The Designated ESI Liaison shall be reasonably prepared to speak about and to explain the party's relevant electronic systems and capabilities and the technical aspects of the manner in which the party has responded to e-discovery, including (as appropriate) relevant ESI retrieval technology and search methodology.

## III. Meet and Confer Requirements

Prior to bringing any dispute regarding the production of hardcopy documents or ESI to the Court, the parties must meet and confer in good faith to attempt to resolve the dispute.

## IV. Searching, Collecting, and Reviewing

Nothing in this protocol shall limit or affect the scope of searching, collecting, and reviewing ESI. The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to

search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

## V. Inadvertent Production

The inadvertent production of any material constituting or containing attorney client privileged information or work-product or constituting or containing information protected by applicable privacy laws or regulations, shall be governed by provisions contained in the Protective Order entered in this action.

## VI. Production of ESI

**A.    Definitions**

1.    Electronically stored information ("ESI"): The term ESI is coextensive with Fed.R.Civ.P. 34, and means information that is created, stored, or accessed electronically, including but not limited to data, data compilations, databases, emails, direct messaging, voicemails, word processing files, spreadsheets, presentations, multimedia files, presentations, and web content.

2.    Metadata: information describing the characteristics of data, embedded in a native form that is not ordinarily viewable or printable from the application that generated, edited, or modified such native form, and/or other information generated automatically by the operation of a system when information is created, modified, transmitted, deleted, or otherwise manipulated by such system.

3.    <u>Native form:</u> ESI in the default format in which it was originally created, viewed, and/or modified.

**B.    Production in Reasonably Usable Form**

1.    <u>Reasonably Usable Form:</u> As set forth in Rule 34(b)(2)(E), the Parties shall produce ESI in a form in which it is ordinarily maintained or a reasonably usable form. Except as stated in Paragraph C below or as agreed hereafter by the Parties, such reasonably usable form shall presumptively be the single-page tagged image file format ("TIFF") with extracted or optimal character recognition text ("OCR") and associated metadata set out in Attachment A, which is incorporated in full as part of this Order. Other than as specifically set forth herein, a Producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format and identify the specific Bates range for the document.  For any dispute, the Receiving Party shall bear the burden to demonstrate good cause for the production in native form and the Producing Party shall bear the burden of proving any undue hardship.

2.    <u>Redactions:</u> The Producing Party may redact from any TIFF image,

metadata field, or native file material that is protected from disclosure by an applicable privilege or immunity, HIPAA regulations, FDA regulations, or other applicable privacy law or regulation, that contains commercially sensitive, purely personal, or proprietary information not at issue in this Action, or that the Protective Order entered in this Action allows to be redacted. Each redaction and the reason for the redaction shall be indicated clearly on the face of the document. Documents that have been redacted based on attorney-client privilege, the work-product doctrine, or any other applicable legal privilege or immunity shall be identified on a Party's "privilege log," with a description of the reason(s) for redaction. For documents redacted for other reasons, if the basis for the redaction is not obvious from the face of the document, the Receiving Party may request the Producing Party identify the basis for the redaction of a particular document. Such request must identify the document by its beginning and ending Bates numbers. For each such request, the Producing Party shall provide clarification within a reasonable time after receiving the request.

      3.   <u>Color Documents:</u> With the exception of native files and pictures/photographs, ESI and original documents containing color need not be produced initially in color unless otherwise agreed. Each party may make requests, for good cause, for production of specifically identified documents (i.e., identified

by beginning and ending Bates numbers) in color.  If the Producing Party believes production in color will be unreasonably burdensome, the Parties may meet and confer in good faith about sharing the costs of such production.

**C.    Electronic Spreadsheets, Presentations, and Multimedia Files**

Electronic spreadsheets (e.g., Excel) and audio/video multimedia files that have been identified as responsive shall be produced in native form, unless they are authorized to be redacted in accordance with Paragraph A.2 above. After such redactions, the Producing Party shall either produce the redacted file in the reasonably usable form set out in Attachment A or shall produce the redacted copy in native format.

**D.    Additional Procedures for Native Form Files**

Any party seeking to use, in any proceeding in this Action, files produced in native form shall do so subject to the following: the original production number and confidentiality designation shall be stamped on each page of any TIFF image or hardcopy document representing the original native-format file. Use of a file in native form or use of a TIFF image or hardcopy document representing the original native-form file shall constitute a representation that the file being used is an accurate depiction of the original native-form file.

**E.    Email Threading**

1      1.      Email threads are email communications that contain prior or lesser

2  included email communications that also may exist separately in the party's

3  electronic files. A most inclusive email thread is one that contains all of the prior or

4  lesser-included emails, including attachments, for that branch of the email thread.

5  Each party may produce (or list on any required privilege log) only the most

6  inclusive email threads as long as the most inclusive email thread includes all non-

7  produced emails that are part of the same string.

8      2.      Following production of the most-inclusive email threads, for good

9  cause, a Receiving Party may request the metadata listed in Attachment A

10  associated with individual prior or lesser-included emails within the identified

11  most-inclusive email threads. The Parties shall meet and confer and the Producing

12  Party shall cooperate reasonably in responding to any such requests.

13  **F.      Avoidance of Duplicate Production**

14      "Duplicate ESI" means files that are exact duplicates using an industry-

15  accepted file hash algorithm. The Producing Party need produce only a single copy

16  of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-

17  duplicate ESI globally (i.e., both within a particular custodian's files and across all

18  custodians). Entire document families may constitute Duplicate ESI. De-

19  duplication shall not break apart families. When the same Duplicate ESI exists in

20

the files of multiple custodians, the Producing Party shall include with the load file for the ESI the names of all Custodians associated with the duplicate ESI.

G.    **Third Party ESI**

1.    A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the parties to the litigation have requested that third-parties produce documents in accordance with the specifications set forth herein.

2.    The Issuing Party is responsible for producing any documents obtained under a subpoena to all other parties.

3.    If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this Discovery Plan, and then produce the processed documents to all other parties. However, any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

4.    If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to

producing them to all other parties.

## VII.   Documents That Exist Only in Hardcopy (Paper) Form

The Producing Party may produce documents that exist only in hardcopy form either (a) by making them available for inspection and copying in accordance with Fed.R.Civ.P. 34, or (b) scanned and produced in TIFF form as set out in Attachment A. If the Producing Party elects to scan and to produce documents in TIFF form, the scanning must be done such that (a) the resulting image includes all information on the original hardcopy document, (b) the original document orientation is maintained, and (c) multiple distinct documents are not merged into a single record. Further, if any hardcopy document has notes and/or attachments affixed thereto, the Producing Party shall produce copies of those documents with the accompanying notes and/or attachments.

## VIII. Foreign Language Documents

Documents, whether in hardcopy form or ESI, which contain languages other than English, in whole or in part, shall be produced in the original language(s) along with any existing translations maintained by the Producing Party in the ordinary course of business. However, the Producing Party is under no obligation to create a translation if one does not already exist.

1    Dated this 1st day of May, 2025.

2

3

4    _____
     Jinsook Ohta
5    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**Attachment A:**

The following protocols apply to any ESI or hardcopy documents produced in this litigation:

(a)    Image Files: Files produced in *.tif image form will be single page black and white *.tif files at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape). Each *.tif file will be assigned a unique name matching the production number of the corresponding page. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

i. be consistent across the production;

ii. contain no special characters; and

iii. be numerically sequential within a given file.

Bates numbers should include an alpha prefix and an 8-digit number (e.g., ABC-00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, should be endorsed on the lower left corner of all images and shall not obscure any portion of the original file

(b)    File Text: Except where ESI contains text that has been redacted under

assertion of privilege or other protection from disclosure, full extracted text will be provided in the form of a single *.txt file for each file (i.e., not one *.txt file per *.tif image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page ASCII text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

(c)    <u>Word Processing Files:</u> Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in *.tif image form, as described in subsection (a). If a word processing file includes any tracked changes or comments in its native form, the *.tif image will include any tracked changes and comments.

(d)    <u>Presentation Files:</u> Presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), will be produced in *.tif image form, as described in subsection (a).. To the extent that such files contain comments, hidden slides, speakers' notes, and similar data, the presentation files shall be produced in the following formats: (i) first, as *.tif images of "clean" final versions of each slide (after all animations, etc.) in the presentation, and (ii) second, as *.tif

images that display all comments, hidden slides, speakers' notes, and similar data in such files. The second version shall be produced and bates labeled immediately following the "clean" version of the file.

(e)    Spreadsheet or Worksheet Files: Spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), will be produced in native form. To the extent that such files are produced as *.tif images, in accordance with subsection (a), for purposes of redaction and such files contain hidden rows, columns, and worksheets, the spreadsheet files shall be produced in the following formats: (i) first, as *.tif images of "clean" versions of the file without hidden rows, columns, and worksheets; and (ii) second, as *.tif images that display hidden rows, columns, and worksheets, if any, in such files. The second version shall be produced and bates labeled immediately following the "clean" version of the file.

(f)    Parent-Child Relationships: Parent-child relationships (e.g., the associations between emails and their attachments) shall be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to Paragraph (n) below.

(g)    Dynamic Fields: Where documents have an automatically updated date and time, file names, files paths, or similar information that, when processed,

would be inaccurate for how the document was used in the ordinary course of business, the Producing Party shall use best efforts to produce the document with placeholders for those fields such as: "Auto Date," "Auto File Name," "Auto File Path," or similar words that describe the automatic field.

(h)    <u>English Language:</u> If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

(i)    <u>Embedded Objects:</u> Some Microsoft Office and .RTF files may contain embedded files, including but not limited to Microsoft Excel, Word, PowerPoint, Project, Outlook, Access, and PDF. Subject to claims of privilege and immunity, as applicable, the Producing Party shall use reasonable efforts to extract as separate files those identified file types, where appropriate, and those shall be produced as attachments to the file in which they were embedded.

(j)    <u>Compressed          Files:</u>    Compressed        file        types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. Files included in compressed file type that are attached to another file shall be individually identified as related to the "parent" document in the data load file pursuant to Paragraph (n) below.

(k)    <u>Encrypted Files:</u> The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable ESI that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

(l)    <u>Non-Viewable Files:</u> During document review, certain documents are opened that are not viewable in the default HTML rendered format. In such instances, the Producing Party shall attempt to create a TIFF image with a viewable image. If unsuccessful, the Producing Party shall attempt to open the document with a native viewer. If the file cannot be viewed via any of these methods, the Producing Party shall attempt to procure a replacement of the file from the original source location. If the replacement yields the same issues, the Producing Party shall (i) identify the file in a log of "corrupt files" to be produced to the Receiving Party and (ii) maintain the native file for request for production or review by the Receiving Party in accordance with this Order.

(m)    <u>Scanned Hardcopy Documents:</u>

    i.    In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).

    ii.    If a Producing Party is requested, and agrees, to provide OCR

text for scanned images of hard copy documents, OCR should be performed on a document level and be provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file. Except where hard copy documents contain text that has been redacted under assertion of privilege or other protection from disclosure, a Producing Party may not withhold from production any OCR text that the party has in its possession, custody or control for scanned images of hard copy documents that the party is producing. Where hard copy documents contain text that has been redacted under assertion of privilege or other protection from disclosure, and the Producing Party has in its possession OCR text for said documents, the redacted *tif image will be OCR'd and file-level OCR text will be provided in lieu of the original OCR text.

iii.    In the case of an organized compilation of separate hardcopy documents -- for example, a binder containing several separate documents behind numbered tabs -- the document behind each

tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

(n)    <u>Production Numbers:</u> The Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers shall be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

(o)    <u>Data and Image Load Files for ESI:</u>

i.    <u>Load Files Required:</u> Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format produced in ASCII and an image load file in Opticon (*.opt) format.

ii.    <u>Load File Formats:</u>

a) Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat

or ABC001_metadata.dat would be acceptable.

b) Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

c) Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

iii.    Metadata Fields to Be Included in Data Load File: For all ESI produced, the following metadata fields for each file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, shall be provided in the data load file, except to the extent that a file has been produced with redactions.   To the extent reasonably practicable, ESI items shall be processed using UTC (Coordinated Universal Time).

a) FileName /FILENAME

b) DocEmailFolder/LOCATIONS

c) CreatedDateTime

d) DocCreatedDateTime

e) DateRecieved/DATERCVD and TIMERCVD (email only)

f) StartBates/BEGDOC

g) EndBates/ENDDOC

h) StartAttach/BEGATTACH

i) EndAttach/ENDATTACH

j) PageCount/PGCOUNT

k) FileExt/DOCEXT

l) ModifiedDate/DATELASTMOD and TIMELASTMOD

m) DateSent/DATESENT (email only)

n) To/TO (email only)

o) BCC (email only)

p) CC (email only)

q) AttachName (email only)

r) Hash or MD5HASH

s) Custodian/CUSTODIAN

t) DocLink/NATIVEFILE

u) TextLink/TEXTFILE

v) AuthorFrom/DOCAUTHOR

w) TitleEmailSubject/EMAIL SUBJECT

x) RECORDTYPE

y) DOCTYPE

z) DOCDATE

aa) PARENTDATE

bb) DATELASTPRINT and TIMELASTPRINT

cc) LASTAUTHOR

dd) REDACTED

ee) REDACTION REASON

ff) Confidentiality (identifying specific designation)

The Parties are not obligated to manually populate any of the foregoing fields if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) (h) TextLink and (i) DocLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

(p)     <u>Data and Image Load Files for Hardcopy Productions:</u>

i.   <u>Load Files Required:</u> Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) or Ipro (*.lfp) format.

ii.   <u>Load File Formats:</u>

a) Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

b) Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

c) Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

iii.   <u>Fields to Be Included in Data Load File:</u> For all hardcopy documents produced in *.tif format, the following fields, if available, shall be provided in the data load file:

a) StartBates

b) EndBates

c) StartAttach (if the document has one or more attachments)

d) EndAttach (if the document has one or more attachments)

e) Custodian (identifying last name, first name)

f) Pages

g) Confidentiality (identifying specific designation)

h) Redaction (identifying reason for redaction)

i) TextPath (identifying the path to *.txt file containing extracted or OCR tex)

(q)    <u>Files Produced in Native Format:</u> Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively." To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise, the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

(r)     <u>Production of Media:</u> Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

(s)     <u>Encryption of Production Media:</u> To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.