**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ANGIODYNAMICS, INC., AND NAVILYST MEDICAL, INC., PORT CATHETER PRODUCTS LIABILITY LITIGATION | MDL 3125<br><br>Case No. 3:24-md-03125-JO-VET<br><br>~~PROPOSED~~<br>**CASE MANAGEMENT ORDER NO. 5**<br><br>(Common Benefit Matters) |

## I.  SCOPE OF ORDER

This Order is entered to provide for the fair and equitable sharing among Plaintiffs and their counsel of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all Plaintiffs in the above-captioned multidistrict litigation. The Court expresses no opinion regarding whether payment of any common-benefit fees or expenses will ever be appropriate. This Order merely provides guidance so that, should the issue become ripe during or after the closure of MDL 3125, any attorney applying for common-benefit fees or expenses will have notice of the standards that will be employed in assessing those applications. The Court may issue additional procedures, limitations, and guidelines in the future, if appropriate.

### A.  Governing Principles and the Common-Benefit Doctrine

"It is beyond dispute that the Court may establish fee structures designed to compensate [lead counsel] for their work on behalf of all plaintiffs involved in [this MDL]." *In re Bard IVC Filters Prods. Liab. Litig.*, 603 F.Supp.3d 822, 832 (D. Ariz. 2022) (alteration in original) (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F.Supp.3d 170, 189-90 (S.D.N.Y. 2020)), *aff'd*, 81 F.4th 897 (9th Cir. 2023). The Court's authority to establish such fee structures derives from the United States Supreme Court's common-benefit doctrine, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881); refined in, *inter alia*, *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885),

*Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939), *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), and *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); and approved and implemented in the MDL context in, *inter alia*, *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006 (5th Cir. 1977), and *In re MGM Grand Hotel Fire Litigation*, 660 F.Supp. 522 (D. Nev. 1987).

The Court's authority to establish a fund and to order contributions also derives from its equitable authority and inherent managerial power over this litigation. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 914 F.3d 623, 644 (9th Cir. 2019); *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 546-47 (3d Cir. 2009); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *In re Air Crash Disaster*, 549 F.2d at 1008; *In re Vioxx Prods. Liab. Litig.*, 802 F.Supp.2d 740, 770 (E.D. La. 2011); MANUAL FOR COMPLEX LITIGATION § 14.121 (4th ed. 2004); *see also In re Bard IVC Filters*, 603 F.Supp.3d at 832 (citing *In re Bos. Sci. Corp., Pelvic Repair Sys. Prods. Liab. Litig.*, 2019 WL 385420, at *5 (S.D.W. Va. Jan. 30, 2019) ("A separate source of authority for MDL courts to assess attorneys' fees in common benefit fund cases comes from the inherent managerial power over the consolidated litigation.")).

Common-benefit work product includes all work performed for the benefit of all Plaintiffs, including pre-trial matters, discovery, trial preparation, a potential settlement process, and all other work that advances this litigation to conclusion. Evaluating contribution to the common benefit is a qualitative analysis because "not all types of work are created equal." *In re Vioxx*, 802 F.Supp.2d at 772. Although some work is less time consuming in hours spent, it has a greater impact on the litigation. Hours spent drafting critical briefs, presenting oral arguments, or preparing for and taking depositions of key witnesses, for example, generally provide greater common benefit than hours reviewing and coding documents. The Court expresses no opinion at this time whether payment for common-benefit fees is or will be appropriate, but if at some future date the Court does find such an award appropriate, the analysis will be guided by the value of the work performed and how it contributed to the common benefit. *See, e.g.*, *In re 3M Combat Arms*

2

*Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, Doc. 488, at *3 (N.D. Fla. July 12, 2019).

### B.  Application of this Order

This Order applies to all cases now pending and any case later filed in, transferred to, or removed to this Court and treated as part of the coordinated proceeding known as *In re: AngioDynamics, Inc. and Navilyst Medical, Inc. Port Catheter Products Liability Litigation*, MDL 3125.  This Order further applies to each attorney who represents a Plaintiff with a case now pending in or later filed in, transferred to, or removed to this Court, regardless of whether the Plaintiff's attorney signs the "Participation Agreement," attached hereto as Exhibit A. This Order shall also apply to any private lienholder who obtains reimbursement from any Plaintiff whose case is subject to this Order because that lienholder is benefiting from the common-benefit work performed by Participating Counsel. Such entities shall be subject to this Order regardless of execution of the Participation Agreement, as they are seeking to obtain part of the recovery obtained by a Plaintiff who is subject to this Order and the jurisdiction of this Court.  Counsel or any private lienholder shall pay amounts consistent with the terms of Paragraph IV.B.3. of the AngioDynamics IPC Fee Fund and the AngioDynamics IPC Expense Fund, as those terms are defined below.  Private lienholders' counsel shall not be eligible to make a claim to receive any distribution from the AngioDynamics IPC Fee Fund or the AngioDynamics IPC Expense Fund.

### C.  Participation Agreement (Exhibit A)

Exhibit A, attached hereto and incorporated herein, is a voluntary agreement between and among Plaintiffs' attorneys who have cases pending in the MDL and/or in state court. The Participation Agreement is a private and cooperative agreement between and among Plaintiffs' attorneys only ("Participating Counsel"); it is not an agreement with Defendants or their counsel.  Participating Counsel shall automatically include all present and future members of Plaintiffs' Leadership Counsel ("PLC") as proposed by Plaintiffs prior to the December 19, 2024 status conference to which there was no objection, by

3

virtue of their appointment by the Court as Plaintiffs' Co-Lead Counsel, Plaintiffs' Executive Committee ("PEC"), Plaintiffs' Liaison Counsel, Plaintiffs' Steering Committee ("PSC"), and any other attorney who executes the Participation Agreement. Executed Participation Agreements must be provided to and maintained by Plaintiffs' Co-Lead Counsel and the Common-Benefit Special Master.

All Plaintiffs' attorneys who currently have cases pending in this Court or in any state court shall, within 30 days of this Order, designate whether or not they are a Participating Counsel or a Non-Participating Counsel by signing the Participation Agreement. Any Plaintiffs' attorney who does not yet have a AngioDynamics Implanted Port Catheter ("IPC") case filed in any federal or state court shall designate whether or not they are a Participating Counsel or a Non-Participating Counsel by signing the Participation Agreement: (a) within 30 days of the date their first case is filed in or otherwise docketed in this Court via direct filing, transfer, or removal; or (b) within 30 days of the date their first case is filed in any state court, if that lawyer intends to voluntarily become a Participating Counsel at the fee and expense percentages set forth herein. Failure to execute the Participation Agreement indicating that an attorney will be a Participating Counsel within the time frame set forth in this paragraph may result in higher percentages for common-benefit assessment as a result of such later participation. Any such higher percentages must be approved by the Court.

Participating Counsel shall be entitled to receive all common-benefit work product created by those attorneys who have also executed, or have been deemed to have executed, the Participation Agreement, regardless of the venue in which Participating Counsel's cases are pending. In return, Participating Counsel agrees to pay common-benefit assessments from the gross recoveries obtained in all filed, unfiled, and tolled cases and/or claims in state and/or federal court in which they have a fee interest, regardless of the size of that fee interest. All Participating Counsel are bound by the terms, conditions, and obligations of this Order, as well as any other future common-benefit orders of this Court, regardless of whether this MDL is ongoing or closed. *See In re Bard IVC Filters*, 603

F.Supp.3d at 831-39; *see also In re Gen. Motors*, 477 F.Supp.3d at 192; *In re Bos. Sci. Corp.*, 2019 WL 385420, at *5; *In re Vioxx*, 760 F.Supp.2d at 648. Counsel who do not execute the Participation Agreement are not entitled to receive common-benefit work product and may be subject to an increased assessment on all Bard IPC cases in which they have a fee interest if they receive common-benefit work product or otherwise benefit from such work product.

The Court recognizes the jurisdictional rights and obligations of the state courts to conduct their state-court litigation as they so determine and that such litigations may include counsel who are Participating Counsel. Neither the Participation Agreement nor this Order shall be cited by a party to the Participation Agreement in any other court in support of a position that adversely impacts the jurisdictional rights and obligations of the state courts and state-court Participating Counsel.

**D.    Assessments**

From time to time, as necessary to fund common-benefit activity in this litigation, the Common-Benefit Committee established by the PLC and consisting of members thereof, in consultation with the Common-Benefit Special Master, must make assessments and may receive and hold funds in the AngioDynamics IPC Expense Fund. Once notice of an assessment is provided, the assessed firms will have 30 days to deposit their respective assessments into the AngioDynamics IPC Expense Fund.

If, after 30 days, a firm has not deposited its assessment, Participating Counsel from that firm will be ineligible for common-benefit work while the firm is delinquent in its assessment and any common-benefit assessment.

If a firm fails to deposit its assessment within 60 days of receiving notice of an assessment and the firm does not demonstrate to the satisfaction of the Common-Benefit Committee and Common-Benefit Special Master good cause for such delinquency, Participating Counsel from that firm may be rendered ineligible for any compensation for common-benefit work or expenses.

## II. COMMON-BENEFIT EXPENSES

### A. Qualified Time and Expenses Eligible for Reimbursement

In order to be eligible for reimbursement, common-benefit time and expenses must meet the requirements of this section and the limitations set forth in the Participation Agreement. Specifically, the time and expenses must be: (a) for the common benefit; (b) appropriately authorized by Plaintiffs' Co-Lead Counsel, as defined in footnote 1 of the Participation Agreement; (c) timely submitted within the defined limitations set forth in this Order; and (d) verified by a partner or shareholder in the submitting firm.

For necessary scrutiny of time and expense submissions, Participating Counsel must use the Excel forms provided as Exhibits B and C to this Order. This means that each submission will consist of one Excel file, within which there will be two "sheets" (marked by tabs at the bottom): "Monthly Expense Report" and "Monthly Time Report." In all reports, the person who performed each task should be identified in the column called "Last Name, First Name" by their complete last name, a comma, and their complete first name (e.g., Smith, John). Please do not use abbreviations or initials in this column. In all reports, the date must be provided in month/day/year format (e.g., 2/25/2025).

Time and expense submissions are to be made quarterly, beginning on May 15, 2025, at which date all qualifying time and expenses up to and including April 30, 2025, must be e-mailed to aschiavone@hslawllc.com. Thereafter, each submission should contain all time and expenses incurred during the calendar months prior to the quarterly submission date.

Submissions of time and expenses made after the applicable deadline may be rejected. Only time and expenses as defined in the Participation Agreement will be considered for common-benefit consideration. Subject to the terms of the Participation Agreement, Participating Counsel's expenses will be considered for common-benefit expenses commencing December 19, 2024, the date of this Court's status hearing. To the extent Participating Counsel incurred expenses prior to December 19, 2024, for the

common benefit of all cases, Participating Counsel shall submit such expenses on June 15, 2025. As with all time and expense submissions, only that time and those expenses incurred for the common benefit of all cases, consistent with the terms of the Participation Agreement, shall be considered. Any common-benefit work accrued before December 19, 2024, will be evaluated pursuant to the same criteria, scrutiny, audit, and guidelines as common-benefit work commencing on or after December 19, 2024. In evaluating whether to pay for common-benefit work incurred before December 19, 2024, the Court will consider the extent to which the work truly benefited Plaintiffs who joined the MDL; the extent to which the work was duplicated by work incurred after December 19, 2024, and submitted for reimbursement; the extent to which the submitting attorneys received compensation for the work from settlements completed before December 19, 2024; and other relevant factors.

### B.  Shared and Held Common-Benefit Expenses

#### 1.  Shared Costs

Shared Costs are costs incurred for the common benefit of all Plaintiffs. Shared Costs will be paid out of a separate AngioDynamics IPC Expense Fund established and administered by Plaintiffs' Co-Lead Counsel and funded through monetary assessments, as described in Paragraph I.D., by all members of the PLC and others as determined by Plaintiffs' Co-Lead Counsel. All Shared Costs must be approved by Plaintiffs' Co-Lead Counsel prior to payment. Shared Costs include: (a) certain filing and service costs related to common issues; (b) deposition, court-reporter, and video-technician costs for non-case-specific depositions; (c) costs necessary for creation and maintenance of a document depository; the operation and administration of the depository; the search, categorization, and organization of documents, depositions, and evidence; and any equipment required for the depository; (d) Plaintiffs' Co-Lead Counsel administrative matters (e.g., expenses for equipment, technology, courier services, telecopier, electronic service, photocopy and printing, secretarial/temporary staff, etc.); (e) PLC group administrative matters such as meetings and conference calls; (f) accountant and administrative consultant and auditing

fees; (g) generic expert-witness and consultant fees and expenses; (h) printing, copying, coding, and scanning, including out-of-house or extraordinary firm costs; (i) research by outside third-party vendors, consultants, and/or attorneys; (j) translation costs; (k) bank or financial-institution charges; (l) certain investigative services; (m) special-master and/or mediator charges; and (n) such other costs as the Court deems appropriate for the efficient prosecution of this MDL common to all Plaintiffs.

If a dispute arises regarding whether a cost is a Shared Cost to be paid from the AngioDynamics IPC Expense Fund, the Common-Benefit Special Master, in consultation with the Common-Benefit Committee, will make the final determination to pay or reject the expense. All proposed contracts with vendors must be reviewed and approved by the Common-Benefit Committee in order for that vendor to be eligible for payment from the AngioDynamics IPC Expense Fund.

### 2. Held Costs

Held Costs are costs incurred in connection with authorized common-benefit work but that will be carried by each Participating Counsel in MDL 3125 through the pendency of the MDL. Held Costs are those that do not fall into any of the above categories of Shared Costs but are incurred for the benefit of all Plaintiffs. Held costs can also include unreimbursed but authorized Shared Costs. No specific client-related costs shall be considered as Held Costs.

### C. Authorization and Submission

The Participation Agreement sets forth the guidelines for authorizing and submitting expenses for the common benefit. All Participating Counsel seeking reimbursement of Held Costs shall follow those guidelines. When submitting expenses pursuant to the guidelines set forth in the Participation Agreement, no entry should contain more than one expense category identified in Exhibit B. If, on the same day, one person incurs two expenses that fall into two different categories, then two separate entries for that person on that date should be noted, each with the appropriate expense description and category code. Likewise, when practical, no listed expense entry should include

expenses incurred by more than one person. If multiple people incur the same expense for the same category, a separate entry should be noted for each person, unless a single person paid the expense for multiple people. Every expense entry should be as detailed and specific as possible. Expense entries without sufficient detail may be rejected by Plaintiffs' Co-Lead Counsel and/or the Common-Benefit Special Master.

### D.  Limitations on Expenses

#### 1.  Travel Limitations

Except in extraordinary circumstances approved in advance by Plaintiffs' Co-Lead Counsel, all travel reimbursements are subject to the following limitations:

i. <u>Airfare</u>: Only the price of a coach seat for a reasonable itinerary will be reimbursed. Business/First Class Airfare will not be fully reimbursed, except for international flights, which requires prior approval by Plaintiffs' Co-Lead Counsel in order to be considered for reimbursement. Use of a private aircraft will not be reimbursed, but reimbursement may be sought for the cost of a coach seat for a comparable itinerary. If Business/First Class Airfare is used on domestic flights, then the difference between the Business/First Class Airfare and the coach fare must be shown on the travel reimbursement form, and only the coach fare will be reimbursed; absent such documentation, the expense may not be reimbursed.

ii. <u>Hotel</u>: Hotel room charges for the average available room rate of a business hotel, including the Hyatt, Westin, and Marriott hotels, in the city in which the stay occurred will be reimbursed. Luxury hotels will not be fully reimbursed but will be reimbursed at the average available rate of a business hotel.

iii. <u>Meals</u>: Meal expenses, including gratuities, must be reasonable and shall not exceed the applicable maximum daily M&IE rate for the locality per person as set by GSA Per Diem Rates (e.g., $199/day for San Diego in March 2025).

       There will be no reimbursement for alcoholic beverages, mini-bar items, or movies.

  iv.    <u>Cash Expenses</u>: Miscellaneous cash expenses for which receipts generally are not available (tips, luggage handling, pay telephone, etc.) will be reimbursed up to $50.00 per trip, as long as the expenses are properly itemized.

  v.    <u>Rental Automobiles</u>: Luxury automobile rentals will not be fully reimbursed, unless only luxury automobiles were available. If luxury automobiles are selected when non-luxury vehicles were available, then the difference between the luxury and non-luxury vehicle rates must be shown on the travel reimbursement form, and only the non-luxury rate may be claimed, unless a larger-sized vehicle is needed to accommodate several counsel or equipment; absent such documentation, the expense may not be reimbursed.

  vi.    <u>Mileage</u>: Mileage claims must be documented by stating origination point, destination, total actual miles for each trip, and the rate per mile paid by the member's firm. The maximum allowable rate will be the maximum rate allowed by the IRS as of the date of the trip.

  vii.    <u>Uber/Taxi</u>: The use of Uber/Lyft or other ride-share services shall be at the standard rate, unless the standard rate is not available due to availability or surge-rate implementation. Use of Uber Black and/or Uber Select or any advanced level of rate charge shall not be utilized unless there is no available alternative or unless they are required for the transport of large groups of individuals. In the event Black, Select, or other upgraded services are used, names of the individuals participating in the rides should be listed

**2.**     **Non-Travel Limitations**

      i.    <u>Client Recruitment</u>: Expenses for advertising or other expenses for the purposes of marketing, client recruitment, or client acquisition are not reimbursable as common-benefit expenses.

      ii.    <u>Firm Overhead Costs</u>: Firm overhead costs (including but not limited to expenses for office supplies or equipment, standard phone or internet service, maintenance of firm website, etc.) are not reimbursable as common-benefit expenses.

      iii.    <u>Shipping, Courier, and Delivery Charges</u>: All claimed expenses must be documented with bills showing the sender, origin of the package, recipient, and destination of the package.

      iv.    <u>Postage Charges</u>: A contemporaneous postage log or other supporting documentation must be maintained and submitted. Postage charges are to be reported at actual cost.

      v.    <u>In-House Photocopy</u>: A contemporaneous photocopy log or other supporting documentation must be maintained and submitted. The maximum copy charge is 15 cents per page.

**E.  Verification**

Expense submissions in the form of Exhibit B shall be certified by a partner or shareholder in each firm attesting to the accuracy of such submissions. Attorneys shall keep receipts for all expenses. Credit-card receipts are an appropriate form of verification if accompanied by a declaration from counsel that the expense was incurred and paid for the common benefit.

**III.  COMMON-BENEFIT WORK**

    **A.  Qualified Work Eligible for Reimbursement**

Only Participating Counsel are eligible for reimbursement for time and efforts expended for the common benefit. Participating Counsel shall be eligible for reimbursement for time and efforts expended for common-benefit work if the time and efforts are: (a) for the common benefit; (b) appropriately authorized by Plaintiffs' Co Lead

11

Counsel, as described in footnote 1 of the Participation Agreement; (c) timely submitted within the defined limitations set forth in this Order; and (d) verified by a partner or shareholder in the submitting firm. Any common-benefit work accrued before December 19, 2024, will be evaluated pursuant to the same criteria, scrutiny, audit, and guidelines as common-benefit work commencing December 19, 2024. In evaluating whether to pay for common-benefit work incurred before December 19, 2024, the Court will consider the extent to which the work truly benefited Plaintiffs who joined the MDL; the extent to which the work was duplicated by work incurred after December 19, 2024, and submitted for reimbursement; the extent to which the submitting attorneys received compensation for the work from settlements completed before December 19, 2024; and other relevant factors.

Any counsel intending to seek reimbursement for time and efforts expended for common-benefit work agrees to the terms and conditions herein, including submitting to this Court's jurisdiction and agreeing that this Court has plenary authority regarding the award and allocation of common-benefit fees and expense reimbursements in this matter, regardless of whether the MDL is ongoing or closed. *See, e.g., In re Bard IVC Filters,* 603 F.Supp.3d at 831-39.

### B. Compensable Common-Benefit Work

As this litigation progresses and common-benefit work product continues to be generated, Plaintiffs' Co-Lead Counsel may assign Participating Counsel with common-benefit work. Common-benefit work shall include only work specifically assigned by Plaintiffs' Co-Lead Counsel. Examples of common-benefit work include but are not limited to the following work as assigned by Plaintiffs' Co-Lead Counsel: drafting consolidated pleadings; legal research and briefing; authorized court appearances; oral argument; active participation in PLC meetings, conference calls, and communications; maintenance of and working in the document depository; document review and coding; preparing, responding to, and dealing with common-benefit discovery; expert retention and development; preparing for and conducting authorized depositions of Defendants,

third-party witnesses, and experts; and activities associated with preparation for trial and the trial of any cases designated as "common-benefit trials" by Plaintiffs' Co-Lead Counsel.

### C.     Authorization and Time Keeping

Participating Counsel intending to seek payment of common-benefit attorneys' fees shall follow the guidelines set forth in the Participation Agreement and approved by Plaintiffs' Co-Lead Counsel. All common-benefit time must be authorized and accurately and contemporaneously maintained. For example, as detailed in the Participation Agreement, time submissions must use tenth-of-an-hour increments (e.g., 0.1) and include sufficient detail to identify the precise task and how it relates to common-benefit work. Each time entry must be categorized using one of the categories in Exhibit C. When possible, a more specific category should be used instead of a more general category. Under no circumstances should Participating Counsel make up new categories. Plaintiffs' Co-Lead Counsel and/or the Common-Benefit Special Master will provide further guidance as necessary.

## IV.    PLAINTIFFS' LITIGATION FEE AND EXPENSE FUNDS

### A.     Establishing the Fee and Expense Funds

At an appropriate time, Plaintiffs' Co-Lead Counsel shall ask the Court to direct that two interest-bearing accounts be established to receive and disburse funds as provided in this Order (the "Funds"). The first fund shall be designated the "AngioDynamics IPC Fee Fund" and the second fund shall be designated the "AngioDynamics IPC Expense Fund." The Funds will be held subject to the direction of the Court.

By subsequent order of this Court, the Court will appoint a qualified certified public accountant ("CPA") to serve as escrow agent over the Funds, to keep detailed records of all deposits and withdrawals, and to prepare tax returns and other tax filings in connection with the Funds. Such subsequent order shall specify the hourly rates to be charged by the CPA and the CPA's assistants, who shall be utilized where appropriate to control costs. The CPA shall submit quarterly detailed bills to the Court and to Plaintiffs' Co-Lead

Counsel. Upon approval by the Court, the CPA's bills shall be paid from the AngioDynamics IPC Expense Fund and shall be considered a Shared Cost. Plaintiffs' Co-Lead Counsel shall provide a copy of this Order and later orders to the CPA.

### B. Payments Into the Fee and Expense Funds

#### 1. General Standards

All Plaintiffs and their attorneys who are subject to this Order and who agree to settle, compromise, dismiss, or reduce the amount of a AngioDynamics IPC claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including compensatory and punitive damages, with respect to AngioDynamics IPC claims, are subject to an assessment of the Gross Monetary Recovery, as provided herein. This assessment shall apply to all of the cases of the Plaintiffs' attorneys who are subject to this Order, whether as sole counsel or co-counsel, including all filed, unfiled, and tolled cases and/or claims in state and/or federal court in which the Plaintiffs' attorneys have a fee interest, regardless of the size of the interest or whether this MDL is ongoing or closed.

#### 2. Gross Monetary Recovery

Gross Monetary Recovery includes any and all amounts paid to Plaintiffs (either directly or through Plaintiffs' counsel) by Defendants through a settlement or pursuant to a judgment. In measuring the Gross Monetary Recovery," the parties are to (a) exclude court costs that are to be paid by the Defendants; (b) include any payments to be made by the Defendants on an intervention asserted by third-parties, such as to physicians, hospitals, or other healthcare providers in subrogation related to treatment of a Plaintiff, and any governmental liens or obligations (e.g., Medicare/Medicaid); and (c) include the present value of any fixed and certain payments to be made in the future.

#### 3. Assessment Amount

Given the incipient nature of this litigation and the volume of work that will be required, Plaintiffs estimate that the assessment amount will be 12%, which includes 10% for attorneys' fees and 2% for expenses. *See, e.g., In re Bard IVC Filters Prods. Liab. Litig.,* 2021 WL 565336, at *4 (D. Ariz. Feb. 11, 2021); *In re Bard IVC Filters Prods.*

*Liab. Litig.,* No. MDL 15-02641-PHX-DGC, Doc. 18038, at *3 (D. Ariz. May 31, 2019) (increasing fee assessment from 6% to 8% and maintaining 2% expense assessment for total holdback of 10%). The 10% assessment represents a "holdback," *see, e.g., In re Zyprexa Prods. Liab. Litig.,* 467 F.Supp.2d 256, 266-67 (E.D.N.Y. 2006), as applied in many recent MDLs, *see, e.g., In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.,* No. 4:22-md-3047-YGR, Doc. 169, at *21-22 (N.D. Cal. Mar. 6, 2023) (10% holdback); *In re Philips Recalled CPAP, Bi-Level Pap, and Mechanical Ventilator Prods. Liab. Litig.,* No. 2:21-mc-01230-JFC, Doc. 717, at *3 (W.D. Pa. Aug. 29, 2022) (same); *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.,* No. 2:19-md-02921-BRM-ESK, Doc. 370, at *13 (D.N.J. Dec. 6, 2021) (same); *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.,* No. 1:17-md-02782-RWS, Doc. 662, at *4 (N.D. Ga. Sept. 11, 2020) (same); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.,* No. 3:11-md-02244-K, Doc. 1031, at *10 (N.D. Tex. July 22, 2019) (same); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.,* No. 2:18 md- 02846-EAS-KAJ, Doc. 70, at *6 (E.D. Ohio Dec. 11, 2018) (same); *cf. In re Atrium Med. Corp., C-Qur Mesh Prods. Liab. Litig.,* No. 1:16-md-02753-LM, Doc. 1324, at *1 (D.N.H. Mar. 15, 2022) (12% holdback); *In re Proton-Pump Inhibitor Prods. Liab. Litig.,* No. 2:17-md-02789-CCC-LDW, Doc. 683, at *1 (D.N.J. Aug. 5, 2021) (same); *In re Xarelto Prods. Liab. Litig.,* No. 2:14-md-02592-EEF-MBN, Doc. 17636, at *1 (E.D. La. Apr. 3, 2020) (same); *In re Zostavax Prods. Liab. Litig.,* No. 2:18-md-02848-HB, Doc. 502, at *6 (E.D. Pa. Feb. 12, 2020) (same). The Court may adjust the assessment percentage at the end of the litigation.

However, if any counsel fails to timely execute the Participation Agreement, such counsel and members of counsel's firm may be subject to an increased assessment. Moreover, if a Non-Participating Counsel receives common-benefit work product or otherwise benefits from the common-benefit work product, such counsel and the cases in which counsel has a fee interest may be subject to an increased assessment.

### 4. The Parties' Obligations

Plaintiffs' Co-Lead Counsel shall provide Defendants' Counsel, the Common-Benefit Special Master, and the Court or its designee with a list of cases and/or counsel who have entered into written agreements with the PLC by executing the Participation Agreement. This same list shall be made available to all Plaintiffs' counsel with cases in the MDL, as well as any other Plaintiffs' counsel who signs the Participation Agreement, upon request. In the event there is a dispute as to whether a case should be on the list, or subject to assessment, Plaintiffs' Co-Lead Counsel shall seek to resolve the matter with the particular Plaintiff's counsel informally, and if that is unsuccessful, upon motion to the Court.

Defendants and their counsel shall not distribute any settlement proceeds to any Plaintiff (or anyone on behalf of a Plaintiff, including Plaintiff's counsel) who is part of the Participation Agreement until after (1) Defendants' counsel notifies Plaintiffs' Co-Lead Counsel in writing of the existence of a settlement and the name of the individual Plaintiff and Plaintiff's attorney, and the court in which the matter was filed, if applicable, without disclosing the amount of the settlement or assessment; and (2) Plaintiffs' Co-Lead Counsel has advised Defendants' counsel in writing whether or not the individual Plaintiff's attorney's cases are subject to an assessment and the amount (stated as a percentage of the recovery) of the assessment pursuant to this Order.

Plaintiffs' Co-Lead Counsel shall share this information only with each other and shall otherwise keep this information confidential. For cases subject to an assessment, Defendants are directed to withhold an assessment from any and all amounts paid to Plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment. Defendants have no obligation to withhold such assessments from cases of counsel not appearing on the lists of Participating Attorneys to be provided to Defendants by Designated Counsel as provided in this Order.

Certification by both plaintiff's and defense counsel of payment of the required Assessment into the Common Benefit Fund (or a certification that the assessment will be

16

withheld and deposited into the Benefit Fund at the same time the settlement proceeds are paid to settling counsel) must precede or accompany any notice of dismissal based upon settlement or compromise of a plaintiff's claims. If, for any reason, the assessment is not or has not been so withheld, the Plaintiff and their counsel are jointly responsible for promptly paying the assessment into the Fund.

Plaintiffs' Co-Lead Counsel shall keep track of settlements and deposits into the Funds for those settlements. If necessary, Plaintiffs' Co-Lead Counsel may request that the Court require Defendants to disclose to the Court *ex parte* the amounts of the settlements reached with each Plaintiff in order to confirm that appropriate assessments have been deposited in the Funds.

## V. DISTRIBUTIONS

### A. Court Approval

The amounts deposited into the AngioDynamics IPC Fee Fund and the AngioDynamics IPC Expense Fund shall be available for distribution to Participating Counsel who have performed professional services or incurred expenses for the common benefit in accordance with this Order and the Participation Agreement. No amounts will be disbursed without review and approval by the Court, or such other mechanism as the Court may order. Specifically, such sums shall be distributed only upon order of this Court. This Court retains jurisdiction over any common-benefit award or distribution, regardless of whether this MDL is ongoing or closed. *See, e.g., In re Bard IVC Filters,* 603 F.Supp.3d at 831-39.

### B. Application for Distribution

Each Participating Counsel who does common-benefit work has the right to present their claim(s) for compensation and/or reimbursement prior to any distribution approved by this Court. Any counsel who does not sign the Participation Agreement shall not be eligible to receive common-benefit payments for any work performed or expenses incurred.

At the appropriate time, this Court shall request that Plaintiffs' Co-Lead Counsel make recommendations to this Court for distributions to Participating Counsel who have performed common-benefit work. Plaintiffs' Co-Lead Counsel shall employ the services of the Common-Benefit Special Master who will serve in an advisory and consulting capacity to Plaintiffs' Co-Lead Counsel and PLC. The Common-Benefit Special Master shall periodically audit the time submissions of Participating Counsel whose consultation and advice regarding billing practices will be shared with Participating Counsel so as to ensure the appropriate methods, content, and substance of time submissions consistent with the guidelines set forth in this Order. Plaintiffs' Co-Lead Counsel, in consultation with the Common-Benefit Special Master, shall determine the most fair and efficient manner by which to evaluate all of the time and expense submissions in making their recommendation to this Court. This Court will give due consideration to the recommendation of the Plaintiffs' Co-Lead Counsel in conjunction with such expert consultation, advice, and recommendations.

To the extent that the billing records of any Participating Counsel or any Plaintiff's attorney are shared with Plaintiffs' Co-Lead Counsel, the CPA, the Common-Benefit Special Master, or the Court (subject to appropriate protections when filing), such records retain their status as work-product materials and are not discoverable by Defendants.

Dated this 30th day of April, 2025.

_____
Jinsook Ohta
United States District Judge