Anne Schiavone (Admitted *Pro Hac Vice*)
**HOLMAN SCHIAVONE LLC**
4600 Madison Ave, Ste 810
Kansas City, MO 64112
Telephone: (816) 283-8738
Facsimile: (816) 283-8739
Email: aschiavone@hslawllc.com

R. Andrew Jones (Admitted *Pro Hac Vice*)
**CORY WATSON, P.C.**
2131 Magnolia Avenue
Birmingham, AL 35205
Telephone : (205) 328-2200
Facsimile: (205) 324-7896
Email: ajones@corywatson.com

Andrew Van Arsdale
CA State Bar No. 323370
**AVA LAW GROUP**
3667 Voltaire Street
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667
Email: andrew@avalaw.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ANGIODYNAMICS, INC., AND NAVILYST MEDICAL, INC., PORT CATHETER PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Roberta Caldwell*, No. 3:25-cv-00599-JO-VET<br>*Stacy Valdez*, No. 3:24-cv-02490-JO-VET<br>*Pearl Meyer*, No. 3:25-cv-00303-JO-VET<br>*Bradley Ochsenbein*, No. 3:25-cv-00389-JO-VET<br>*Xavier Garrison*, No. 3:25-cv-00666-JO-VET<br>*Maria Godin*, No. 3:25-cv-01561-JO-VET | MDL 3125<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS ANGIODYNAMICS, INC. AND NAVILYST MEDICAL, INC.'S MOTION TO DISMISS CALIFORNIA CLAIMS PURSUANT TO ORDERS DATED AUGUST 25, 2025, AND SEPTEMBER 5, 2025** |

1   *Julie Lapper*, No. 3:24-cv-02357-JO-VET
2   *Vanessa Manjarrez*, No. 3:25-cv-00906-JO-VET
    *Laura Schultz*, No. 3:24-cv-01921-JO-VET
3   *Kelley Silva*, No. 3:25-cv-00190-JO-VET

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................1

II.  LEGAL STANDARD ........................................................................................4

   A.   Rule 12(b)(6) Motion to Dismiss .................................................................4

   B.   Fraudulent Concealment ...............................................................................4

III. ARGUMENT.....................................................................................................5

   A.   Under California's Applicable Discovery Rule, Plaintiffs' Claims Are Not Time-Barred..................................................................................................................5

   B.   Plaintiffs Have Sufficiently Pled Fraudulent Concealment, Thereby Tolling the Statute of Limitations Pursuant to California Law .......................................19

IV.  CONCLUSION..................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**

*Accord Committee on Children's Television, Inc. v. General Foods Corp.*, 673 P.2d 660, 673 (1983) .................................................................................................5

*Andrade-Heymsfield v. NextFoods, Inc.*, No. 3:21-CV-01446-BTM-MSB, 2022 WL 1772262, at *3 (S.D. Cal. Apr. 27, 2022) ...................................................19

*Bennett v. C.R. Bard*, 2025 U.S. App. LEXIS 9130, at *4 (9th Cir. 2025) ........................9

*Branick v. Downey Savings & Loan Assn*, 39 Cal. 4th 235 (2006) ....................................5

*Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985) .............................22, 23

*Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1218 (N.D. Cal. 2014) ..............4, 6, 8, 13

*Emery v. American Gen. Fin.*, 134 F.3d 1321, 1323 (7th Cir. 1998) ...............................21

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807, 110 P.3d 914, 920, fn. 2 (2005) ...................................................................................................6, 8, 10

*Gutierrez v. Mofid*, 39 Cal. 3d 892, 896-897 ...............................................................23

*Investors Equity Life Holding Co. v. Schmidt*, 126 Cal. Rptr. 3d 135, 146 (Cal. Ct. App. 2011) ..........................................................................................23, 24

*Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980) ....................................4

*Johnson v. Am. Standard, Inc.*, 179 P.3d 905, 910 (Cal. 2008)......................................25

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d at 1103, 1109 (1988)................................................6

*Jones v. ConocoPhillips Co.*, 130 Cal. Rptr. 3d 571, 580 (Cal. Ct. App. 2011) .........20, 24

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018).....................19

*MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1092 (N.D. Cal. 2014) ...............19

*Marie Renteria v. Ethicon, Inc.*, No. CV205673MWFKESX, 2020 WL 7414744, at *6 (C.D. Cal. Nov. 18, 2020) ...............................................................................6, 10

*Mizoguchi v. Unum Life Ins. Co. of America*, No. 8:24-cv-00093-FWS-JDE, 2025 WL 870126, at *8 (C.D. Cal. Jan. 21, 2025) ...........................................................3

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999).......................................................5

*Popescu v. Gm*, 2023 Cal. Super. LEXIS 51005, at *5-7.........................................23, 24

ii

*Rivas v. Safety-Kleen Corp.*, 98 Cal. App. 4th 218, 228, 119 Cal. Rptr. 2d 503 (2002)..... 6

*Rustico v. Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720, 740 (N.D. Cal. 2019), aff'd, 993 F.3d 1085 (9th Cir. 2021) ................................................................................................. 20

*Stack v. Lobo*, 903 F. Supp. 1361, 1367 (N.D. Cal. 1995) ................................................ 19

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) ................ 4, 5

*United States v. Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006) ..................... 19

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)............................... 5

*Vigil v. Coloplast Corp.*, No. 319CV01851GPCBGS, 2020 WL 94378, at *5 (S.D. Cal. Jan. 8, 2020)............................................................................................................... 2, 4

*Yamada v. Nobel Biocare Holding AG*, 2011 U.S. Dist. LEXIS 162577, *5 n. 3 (C.D. Cal. 2011)............................................................................................................... 5, 21

*Zatkin v. Primuth*, 551 F. Supp. 39, 42 (S.D. Cal. 1982) ................................................ 19

**Statutes**

Cal. Civ. Code § 1709 ........................................................................................................ 27

Cal. Civ. Code § 1710(3) .................................................................................................... 27

Cal. Code Civ. P. § 335.1.................................................................................................... 8

**Other Authorities**

Manual for Complex Litigation, Fourth § 22.2 at 353 (Federal Judicial Center (2004) ... 28

# I.    INTRODUCTION

Defendants' motion to dismiss raise numerous questions of fact reserved for a jury, and their motion is better suited for the summary judgment stage after the completion of discovery that will shed light on the who, what, when, where, why and how of the statute of limitations analysis for each Plaintiff who is subject to Defendants' Motion. Defendants place themselves in the shoes of the jury, concluding that no reasonable person would act as Plaintiffs did in discovering their causes of action. Defendants did not see the television or social media advertisements seen by some Plaintiffs. Defendants did not depose family members and friends involved in some Plaintiffs' discovery of their causes of action.

Contrary to Defendants' arguments raised in their renewed motion to dismiss, Plaintiffs have both complied with this Court's orders and have met their burden of demonstrating that Plaintiffs' claims are not time-barred pursuant to California law. Defendants' motion relies on numerous conclusory allegations that do nothing to assist this Court in ruling on the matter at hand. For example, Defendants indicate Plaintiffs "sat on their claims," giving no weight to the individual facts pled in the complaints at issue.

Moreover, Defendants argue that "Plaintiffs' attorneys should not be allowed to artificially inflate their inventory in an MDL by filing a glut of obviously time-barred cases." Defs.' Mem., Dkt. No. 384-1, at 2, lines 22-24. Such a statement calls into question the integrity of Plaintiffs' counsel in this litigation. Plaintiffs believe it is important for purposes of this Memorandum to clarify that Plaintiffs are not an "inventory," but are separate individuals who have suffered individual injuries, and they should be treated as such. Any reference to injured individuals as "an inventory" has no place in the Court's inquiry as to whether Plaintiffs' claims are time-barred pursuant to California law.

Plaintiffs' Amended Complaints follow this Court's April 24, 2025, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, Dkt. 239, which asks that Plaintiffs (1) specify when they discovered their causes of action, (2) the specific due diligence they undertook to discover their causes of action, and (3) why they were prevented from discovering their causes of action within the applicable statute of

1

limitations despite this due diligence.[1]

Defendants argue that Plaintiffs blatantly ignored the Court's ruling, which is an inaccurate representation to this Court. Defendants acknowledge that Plaintiffs included additional allegations regarding the discovery of their claims but simply do not agree that the information included is supportive of Plaintiffs' allegations. By way of example, most Plaintiffs do not learn of a potential cause of action in a medical device litigation, such as the instant multidistrict litigation, until they see an advertisement that sheds light on the potential link between a medical device and the injuries at issue. Law firm advertising is typically fueled by newly discovered information, such as an influx of adverse event reports, which is information the average, reasonable person, is not going to know how to locate.

As this Court has previously explained, "There are no hard and fast rules for determining what facts or circumstances will compel inquiry by [an] injured party." *Vigil v. Coloplast Corp.*, No. 319CV01851GPCBGS, 2020 WL 94378, at *5 (S.D. Cal. Jan. 8, 2020) (rejecting defendant medical device manufacturer's argument that limitations period begins to run as a matter of law from the date that the plaintiff "underwent her removal surgery").

Under the circumstances giving rise to Plaintiffs' claims, it is not at all obvious that at the time of their respective devices' removal, Plaintiffs were on inquiry notice that the devices were defective. It is essential to remember that each of the Plaintiffs in this MDL was undergoing long-term treatment for serious, chronic medical conditions (often chemotherapy treatment for cancer). Plaintiffs' port catheters were removed because Plaintiffs developed device-related issues like infection, thrombosis, or fracture and migration. Defendants admit that port catheters "carry inherent risks of complications such as infection, fracture, and thrombosis." Defs. Initial Memo., Dkt. 194-1, at 3, lines 23-24.

---

[1] Plaintiffs Xavier Garrison and Maria Godin filed their Complaints after Defendants filed their initial motion to dismiss, as further explained *infra*, and should be afforded leave to amend their Complaints.

2

A reasonable patient in Plaintiffs' position, therefore, could have believed that the infection, fracture, or thrombosis precipitating his or her device removal was not caused by any defect in the device, but was simply an expected side-effect of a non-defective device. This is particularly true because these Plaintiffs suffered from chronic medical conditions that *themselves* weakened Plaintiffs' immune systems and made them more susceptible to infection and thrombosis.[2] The administration of chemotherapy has several negative effects that impact a patient's ability to function, both physically and mentally, often experiencing what is termed "chemo brain" or "chemo fog." *See Mizoguchi v. Unum Life Ins. Co. of America*, No. 8:24-cv-00093-FWS-JDE, 2025 WL 870126, at *8 (C.D. Cal. Jan. 21, 2025) (finding that the plaintiff, who was receiving chemotherapy for breast cancer, was entitled to long term benefits where "chemo fog" was a valid reason for her inability to work). "Regarding cognitive effects [of chemotherapy], Plaintiff explains that chemo fog causes her to be unable to think clearly for any length of time and have memory problems and difficulty concentration." *Id.* (internal quotations omitted). Plaintiffs subject to Defendants' motion to dismiss suffer from the same side effects of chemotherapy, including chemo fog, that has inhibited many Plaintiffs' ability to undergo a full-fledged investigation into the cause of their injuries.

Moreover, many of the Plaintiffs' devices had been in place *for years*. Plaintiffs could therefore reasonably have believed that their device was not defective but instead fractured and migrated through normal, expected wear-and-tear, until they discovered, sometime after the device's removal, that it may in fact have been defective. Because a proper application of California law does not establish that Plaintiffs' claims are time-barred as a matter of law, Defendants' motion should be denied.

---

[2] *See* U.S. Centers for Disease Control and Prevention, "Risk Factors for Blood Clots," https://www.cdc.gov/blood-clots/risk-factors/index.html (last visited Mar. 13, 2025) (listing chronic illnesses including cancer as a risk factor for blood clots); American Cancer Society, "Why Are People with Cancer More Likely to Get Infections?," https://www.cancer.org/cancer/managing-cancer/side-effects/infections/why-people-with-cancer-are-at-risk.html (last visited Mar. 13, 2025).

## II.    LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

Generally, the timeliness of a claim depends on matters outside the pleadings and is not "amenable to resolution on a Rule 12(b)(6) motion." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995). "A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Id.* (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* For this reason, dismissal is not appropriate "where the applicability of the equitable tolling doctrine depend[s] upon factual questions not clearly resolved in the pleadings." *Id.* Similarly, dismissal is improper where "the factual and legal issues are not sufficiently clear to permit [the court] to determine with certainty whether the doctrine could be successfully invoked." *Id.*

In jurisdictions in which the statute of limitations can be tolled by the discovery rule, "[t]he question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Vigil*, 2020 WL 94378, at *4 (quoting *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1218 (N.D. Cal. 2014)) (internal citation omitted). On the face of Plaintiffs' Complaints, questions of fact exist as to whether Plaintiffs' claims are time barred. As such, Plaintiffs' claims cannot be time-barred as a matter of law.

### B. Fraudulent Concealment

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," while "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The particularity requirement exists to provide "defendants notice of the

4

particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted); *Accord Committee on Children's Television, Inc. v. General Foods Corp.*, 673 P.2d 660, 673 (1983) (noting, pursuant to California state pleadings procedure, that "[a] complaint which set out each advertisement verbatim, and specified the time, place, and medium, might seem to represent perfect compliance with the specificity requirement, but as a practical matter, it would provide less effective notice and be less useful in framing the issues than would a shorter, more generalized version."), superseded by statute on other grounds in *Branick v. Downey Savings & Loan Assn*, 39 Cal. 4th 235 (2006). While federal procedural law governs the pleading requirements, *Vess*, 317 F.3d at 1103, equitable tolling of the statute of limitations by way of fraudulent concealment is governed by California state law. *Yamada v. Nobel Biocare Holding AG*, 2011 U.S. Dist. LEXIS 162577, *5 n. 3 (C.D. Cal. 2011).

## III.    ARGUMENT

Plaintiffs have each adequately pled multiple causes of action related to their injuries caused by Defendants' defective port catheter products, as well as the application of the discovery rule. None of the Complaints establishes that it is time-barred as a matter of law—in other words, that "no set of facts" could establish the timeliness of Plaintiffs' claims. *Supermail*, 68 F.3d at 1206. On the face of Plaintiffs' Complaints, a set of facts could – in the eyes of the jury – establish the timeliness of their claims. Consequently, Defendants' motion should be denied.

### A. Under California's Applicable Discovery Rule, Plaintiffs' Claims Are Not Time-Barred.

Under California law, the two-year statute of limitations applicable to personal injury claims begins to run "when the cause of action is complete with all of its elements" which is generally within two years of the date a plaintiff sustains an injury. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999); *see also* Cal. Code Civ. P. § 335.1. However, the discovery rule delays accrual of the statute of limitations until the injured plaintiff "is

aware of her injury and its negligent cause." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d at 1103, 1109 (1988). "In California, the statute of limitations for products liability claims begins to run when a plaintiff has knowledge of facts that would create a suspicion of ***wrongdoing in a reasonable person***." *Marie Renteria v. Ethicon, Inc.*, No. CV205673MWFKESX, 2020 WL 7414744, at *6 (C.D. Cal. Nov. 18, 2020) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988); *Rivas v. Safety-Kleen Corp.*, 98 Cal. App. 4th 218, 228, 119 Cal. Rptr. 2d 503 (2002) (emphasis added).

"At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a person's physical condition and its negligence cause. Thus, physical injury alone is often insufficient to trigger the statute of limitations." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807, 110 P.3d 914, 920, fn. 2 (2005). The date on which a plaintiff learns of information that creates a suspicion of wrongdoing is the date on which a plaintiff has inquiry notice of a potential cause of action. *Id.*, 35 Cal. 4th at 807. When relying on the discovery rule, "a plaintiff must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808.

In *Fox*, the plaintiff did not discover that a potential stapler malfunction may have been the cause of her injuries until the completion of her surgeon's deposition, at which point Plaintiff Fox learned for the first time that her injuries may have been caused by a defective surgical stapler medical device. *Fox*, 35 Cal. 4th, at 806. Upon learning of this information for the first time, Fox amended her complaint to include new allegations of product defects and successfully relied on California's discovery rule to demonstrate that her claims as to the defective surgical stapler device were not time-barred.

Moreover, in *Eidson v. Medtronic, Inc*, one plaintiff at issue who was implanted with a spinal fusion device did not learn of his potential cause of action until he saw an attorney advertisement regarding lawsuits involving the spinal fusion device. *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1217 (N.D. Cal. May 13, 2014). (Plaintiff Scott Bell's mother saw an attorney advertisement regarding the Medtronic device,

6

communicated this information to Mr. Bell, and Mr. Bell proceeded with contacting a lawyer)[3]. Additionally, "[a]t no time did any of Scott Bell's treating physicians inform him that any product defect of failure might have caused or contributed to his new symptoms." *Id.* Mr. Bell was placed on inquiry notice when his mother informed him about the attorney advertisement relating to defective spinal fusion devices.

As further explained below, Plaintiffs have adequately pled the application of the discovery rule in each of their cases and Defendants' motion should be denied.[4]

### 1. *Plaintiff Roberta Caldwell,* Case No. 3:25-cv-00599-JO-VET

Plaintiff Roberta Caldwell was implanted with Defendants' SmartPort device on July 9, 2021, to be used for the administration of chemotherapy to treat Plaintiff's multiple myeloma. Am. Compl., Dkt. 7 at 10, ¶ 40. On November 22, 2021, Plaintiff was diagnosed with having an occluded catheter and fibrin sheath development, but the SmartPort was not removed until March 15, 2022. *Id.* ¶¶ 44-45. Plaintiff Caldwell alleges in her First Amended Complaint that she inquired with her physician as to the cause of the occlusion and fibrin sheath development, and her physician indicated that he did not know why the fibrin sheath developed and continued to recommend Plaintiff undergo placement of a new port catheter device. *Id.* ¶ 68-69.

Although Plaintiff Caldwell knew something happened that required removal of the SmartPort, Plaintiff Caldwell reasonably relied on her physician's judgment that a new port catheter device needed to be implanted, demonstrating to Plaintiff Caldwell that her physician believed the device to be safe and free from any defects. Had Plaintiff Caldwell's physician blamed the SmartPort for her injuries, she would not have agreed to

---

[3] *See Bennett v. C.R. Bard, Inc.*, 2025 U.S. App. LEXIS 9130, at *2-*3 (9th Cir. Apr. 17, 2025) (unpublished opinion) (discovery rule tolled the statute of limitations until the plaintiff saw a TV program that placed him on inquiry notice of his potential cause of action concerning a defective IVC filter, an implantable device used to prevent blood clots).

[4] With regard to Plaintiffs Garrison and Godin, if the Court finds that their Complaints do not adequately plead California's discovery rule, they should be afforded leave to amend their complaints.

have another port catheter device implanted. Defendants take issue with the fact Plaintiff Caldwell does not include "factual details about the conversation," but Plaintiff Caldwell provided all details she could remember at a time when she had just undergone a surgical procedure. Defs. Mem., Dkt. 384-1, at 7, lines 17-18.

Plaintiff Caldwell was put on inquiry notice of her potential cause of action when she saw an attorney advertisement in March of 2023 that shed light on the type of injuries associated with port catheter devices which were recently discovered by an influx of adverse event reports. *Id.* ¶¶ 31, 67, 97, 138. It was at this point that the statute of limitations on Plaintiff Caldwell's cause of action accrued as this was the time and manner of Plaintiff's discovery of her potential cause of action. *See Fox*, 35 Cal. 4th at 808. Plaintiff was unable to discover her potential cause of action sooner given (1) that her doctor informed her he did not know what caused her injuries and did not blame the SmartPort for being defective, and (2) that her doctor recommended placement of a substantially similar implantable port catheter device to continue chemotherapy treatment.

Defendants conclude that the "only thing that can be gleaned from Caldwell's sparse allegation is that she asked one question, got no definitive answer, and simply stopped looking." Mem., Dkt. 384-1, at 8, lines 3-4. Such a conclusion is disingenuous and ignores the totality of the circumstances. Defendants cannot place themselves in the shoes of the jury. A reasonable person in Plaintiff Caldwell's situation, which would be a person suffering from cancer and undergoing chemotherapy, would heed the advice of his or her physician and accept as true that the device must not be defective if the physician is recommending implantation of the same or substantially similar device.

Similar to Plaintiff Bell in *Eidson*, Plaintiff Caldwell's treating physician did not inform her that any product defect in the SmartPort caused or contributed to cause her injuries, and Plaintiff Caldwell promptly sought the advice of legal counsel as soon as she was placed on inquiry notice of her potential cause of action in March 2023, after seeing an attorney advertisement. *Eidson*, 40 F. Supp. 3d at 1217.

Lastly, Defendants take issue with Plaintiff Caldwell's lack of detail provided about

the advertisement she saw in approximately March of 2023 and that she could have undergone a fact-finding mission, such as locating the SmartPort's "Instructions for Use (IFU)," a document that provides information to physicians concerning proper placement of the device as well as communicating safety information that the physicians can share with patients. Defendants argue that the IFU for Plaintiff Caldwell's catheter device "warns of the risk of thrombosis, infection, and fracture, so the information Caldwell purportedly 'learned' from the advertisement – that port catheters can be associated with blood clots and fracture among other risks – was not novel information." Defs.' Mem., Dkt. 384-1, at 9, lines 12-15. The novelty of information has little to do with whether a person will associate that information with a defect. On the contrary, these stated risks may lead reasonable people to believe that the listed potential complications are normal, i.e., not caused by a defect. *See Bennett v. C.R. Bard*, 2025 U.S. App. LEXIS 9130, at *4 (9th Cir. 2025) (unpublished opinion) (finding that a reasonable jury "could conclude that the presence of several symptoms" prior to the plaintiff's medical records revealing evidence of malfunction in March 2021, that defendant "Bard had warned were 'potential complications' of using the Filter does not necessarily indicate that the Filter had malfunctioned due to a design defect").[5]

For the foregoing reasons, Plaintiff Caldwell's claims are not time-barred under California law.

### 2. *Plaintiff Stacy Valdez,* Case No. 3:24-cv-02490-JO-VET

Plaintiff Stacy Valdez underwent placement of Defendants' SmartPort device on

---

[5] *Contrast Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985), where the court "took into account the low failure rate of the IUD not attributable to defect when it concluded that a reasonable person would have to have been on inquiry notice of defect upon knowledge of product failure." *Mancuso v. Bridgestone/Firestone, Inc., (In re Bridgestone/Firestone, Inc.)*, 200 F. Supp. 2d 983, 990, n. 11 (S.D. Ind. 2002) (applying California law) (where tire failure was "a common event and rarely attributable to defect in the tire" the court was "unwilling to conclude as a matter of law that a reasonable person must have been on inquiry notice of the alleged defect").

9

May 18, 2020, to administer chemotherapy for the treatment of her breast cancer. Am. Compl., Dkt. No. 13, at 9, ¶ 38. On May 19, 2021, Plaintiff Valdez experienced pain and resistance when her healthcare team was unable to flush her port. *Id.* ¶ 41. Plaintiff Valdez underwent removal of the SmartPort on Jun 22, 2021, which revealed a portion of the catheter had fractured, later documented by an x-ray performed following the removal procedure. *Id.* ¶¶ 42-43. Plaintiff Valdez subsequently underwent a second procedure on June 24, 2021, to remove the remaining catheter fragment, which was successfully removed. *Id.* ¶ 44.

Defendants argue that Plaintiff did not undergo any investigation into the cause of her injuries and the need to have her port removed. Defs' Mem., Dkt. 384-1, at 11, lines 16-21. As Defendants note in their motion, and as stated in Plaintiff Valdez's Amended Complaint, Plaintiff Valdez "knew she was injured at the time she became aware that her port catheter device had fractured on or about June 22, 2021, ***but she did not know that a defect in the SmartPort was the cause of her injuries***." *Id.*; *see also* Am. Compl., Dkt. No. 13, at 14, ¶ 70. Defendants do not include the additional italicized language, which is critical to determining whether Plaintiff Valdez's claims are time-barred. As *Fox* makes clear, injury alone does not trigger the statute of limitations. *Fox*, 35 Cal. 4th at 807. The injury and the negligent cause of the injury are what trigger the accrual of the statute of limitations.

Plaintiff Valdez inquired with her treating physician about why the SmartPort fractured, and her physician told her that fractures in some patients can happen but that the cause is unknown. Am. Compl., Dkt. 13, at 14, ¶ 71. Because of the nature of Plaintiff Valdez's underlying breast cancer, and because Plaintiff Valdez relied on her physician's judgment and experience, she did not undergo an additional fact-finding quest to confirm the truthfulness of her physician's statements. Plaintiff Valdez did not have any suspicion of wrongdoing until she was informed by her mother in approximately July 2023, that her injuries may have been caused by a defect in the SmartPort based on advertisements Plaintiff's mother had seen. *Id.* at ¶ 73; *see also Marie Renteria*, 2020 WL 7414744, at *6.

A reasonable person in Plaintiff Valdez's shoes would not have discovered he or she had a potential cause of action until placed on inquiry notice, which is the receipt of some information that sheds light on the connection between the conduct of Defendants and the Plaintiff's injuries.

Moreover, Defendants argue that because the IFU for the SmartPort warns of fracture, Plaintiff was on notice at the time the product was implanted that the device implanted in her could fracture. Defs. Mem., Dkt. 384-1, at 12, lines 7-11. First, the SmartPort has numerous product codes and variations such that the IFU is different based on the product code. Second, upon review of certain SmartPort IFUs and Patient Guides, there is no mention of fracture as being a risk.[6] At a minimum, one variation of a Patient Guide notes under "Contraindications," that "[c]atheter insertion in the subclavian vein medial to the border of the first rib, an area which is associated with higher rates for pinch-off." *Id.* The term "pinch-off" is a medical term used to describe the point at which a catheter may separate or break, but it is not the same as the injury of fracture alleged in Plaintiff Valdez's Amended Complaint.

A reasonable person in Plaintiff Valdez's shoes would not know how to find the specific IFU that goes with the SmartPort implanted in her nor would this person know how to interpret the information contained in the IFU. As such, Plaintiff Valdez has acted reasonably in investigating her potential cause of action and timely filed her lawsuit within two years of discovering her potential cause of action, which accrued on the date Plaintiff Valdez received information from her mother about port catheter lawsuits. As to Plaintiff's mother, her deposition testimony is critical to the statute of limitations analysis as she communicated what she saw in the advertisement to Plaintiff. For the foregoing reasons, Plaintiff Valdez's claims are not time-barred pursuant to California law.

---

[6] *See* SmartPort+ Patient Guide (2019), available at: https://www.angiodynamics.com/wp-content/uploads/2024/11/14655333-21A-SmartPort-Patient-Guide.pdf (last visited Sept. 30, 2025).

3:24-md-03125-JO-VET

### 3. *Plaintiff Pearl Meyer,* Case No. 3:25-cv-00303-JO-VET

Plaintiff Pearl Meyer underwent placement of Defendants' SmartPort device on November 1, 2016, for the purpose of administering chemotherapy to treat lymphoma. Am. Compl., Dkt. No. 6, ¶ 40. On February 2, 2018, Plaintiff underwent a chest x-ray that revealed the SmartPort had migrated, and a February 7, 2018, port study revealed the catheter portion of the SmartPort had degraded, requiring removal. *Id.* ¶¶ 44-46. Plaintiff subsequently underwent placement of a second SmartPort device on March 26, 2019, for the administration of chemotherapy to treat lymphoma. *Id.* ¶ 50. Plaintiff Meyer underwent testing on May 8, 2019, and May 10, 2019, secondary to complaints of right arm pain and swelling, which revealed Plaintiff Meyer had developed thrombosis, requiring treatment with anticoagulants. Plaintiff Meyer later developed stenosis of the right brachiocephalic vein, as documented by a chest CT on November 2, 2019, which required removal of the second SmartPort device on November 22, 2019. *Id.* ¶¶ 50-54.

Plaintiff Meyer discovered her cause of action as to both SmartPort devices and was placed on inquiry notice when she saw a Facebook advertisement in approximately March 2023 regarding defective port catheter lawsuits and injuries that are coming to light as being associated with a defect. *Id.* ¶ 78. Plaintiff Meyer inquired with her physician following removal of the first SmartPort device on February 7, 2018, to learn why the catheter had degraded and resulted in the need for a replacement device. *Id.* ¶ 79. Plaintiff Meyer's physician informed her that he did not know why the catheter degraded, and that his number one goal was to get a new port in place so that she could continue treatment of her lymphoma. *Id.* ¶ 80-81. Plaintiff Meyer would not have known, and could not have known, that catheter degradation was a product defect at the time of her injury.[7] Plaintiff's

---

[7] Of note, catheter degradation is a crucial issue in this litigation relating to barium sulfate, and such a topic is reserved for expert testimony. No lay person in Plaintiff Meyer's shoes can draw the link between catheter degradation and a defect, nor can Plaintiff Meyer's physician be able to draw this link without having more information that will be uncovered during discovery.

1    inquiry into the cause of the first SmartPort's failure stopped here given her doctor
2    immediately recommended replacement with the same exact device – a second SmartPort.
3    *Id.*

4      Regarding the second SmartPort device implanted on March 26, 2019, Plaintiff
5    Meyer relied on her prior conversations with her physician about the first SmartPort that
6    failed, and that because her physician – at no point – informed her that the SmartPort was
7    defective, and that her injuries were caused by the SmartPort, she did not undergo
8    additional research about the cause of her injuries. *Id.* ¶¶ 82-84. Plaintiff Meyer reasonably
9    believed that "if her doctors believed the SmartPort to be defective, they would have told
10   her so." *Id.*; *see also Eidson*, 40 F. Supp. 3d at 1217. (Plaintiff Bell reasonably relied on
11   the information he received from his treating physicians, and his treating physicians at no
12   point informed him that "any product defect of failure might have caused or contributed
13   to cause" his injuries).

14     Defendants argue that Plaintiff Meyer provides "subjective excuses" for not
15   undergoing a full-fledged investigation into her injuries, ignoring the fact that Plaintiff
16   Meyer was connected to an IV from her port for the better part of two years, and in a
17   physical state that diminishes her ability to take steps that a person not in her shoes may
18   be able to take. Defs. Mem., Dkt. 384-1, at 14, lines 13-15.[8] Plaintiff Meyer inquired as
19   much as she possibly could about the cause of her injuries with her physicians but was not
20   put on notice of the cause of her injuries until approximately March 2023, when she
21   connected the dots between Defendants' SmartPort devices and her injuries, as a
22   reasonable person would in the same or similar circumstances. For the foregoing reasons,
23   Plaintiff Meyer's claims are not time-barred pursuant to California law.

24        4. *Plaintiff Bradley Ochsenbein,* Case No. 3:25-cv-00389-JO-VET

25     Plaintiff Bradley Ochsenbein, who suffers from a multitude of gastrointestinal
26   conditions as well as chronic pancreatitis that prevent him from eating solid foods,

27
28

---

[8] *See Mizoguchi*, 2025 WL 870126, at *8.

13

underwent placement of Defendants' SmartPort CT device on June 13, 2019, for the purpose of administering long-term total parenteral nutrition (TPN) as well as the administration of intravenous medications. Am. Compl., Dkt. 6, at 10, ¶ 40. On December 6, 2020, Plaintiff Ochsenbein underwent removal of the SmartPort CT secondary to a left internal jugular deep vein thrombosis. *Id.* ¶ 44. Plaintiff Ochsenbein subsequently underwent placement of a second SmartPort CT device on February 25, 2021, and this device was removed on August 1, 2021, secondary to infection. *Id.* ¶¶ 45, 49.

Plaintiff Ochsenbein discovered his cause of action as to both SmartPort devices and was placed on inquiry notice when he saw an advertisement on Facebook relating to defective port catheter devices and associated injuries, which included thrombosis and infection, injuries he suffered from the SmartPort devices. *Id.* ¶ 72. Although Plaintiff Ochsenbein did not specifically ask his doctors why the SmartPort devices failed, he had reason to believe the devices were safe because his doctors recommended implantation of the exact same SmartPort CT device after developing thrombosis. *Id.* ¶¶ 73-76. It was Plaintiff Ochsenbein's reasonable belief that his physicians were the experts and would have informed him that the SmartPort devices should not be implanted given they caused his injuries. Although such an inquiry does not amount to a conversation with his physicians, Plaintiff Ochsenbein evaluated the situation internally, and determined that if his physicians told him the devices were medically necessary to ensure he received TPN, then the devices must be safe. While an investigation into one's potential cause of action typically involves verbally asking questions, such steps are not always possible given the facts at hand, especially in the hospital setting when patients have just undergone surgical procedures.

Despite Plaintiff Ochsenbein's physical condition, Defendants expect him to locate an IFU to learn that blood clots, infection, and fracture are documented known risks. Defs.' Mem., Dkt. 384-1, at 16, lines 6-9. For the reasons stated in the analysis of Plaintiffs Caldwell and Valdez, the IFU is not a tool Defendants' can rely upon to show that Plaintiff Ochsenbein was on notice of "known" complications of risks. *See supra*, at 8, line 28 to

14

9, lines 1-17, and at 11, lines 5-18. At a minimum, additional discovery is necessary to shed light on Plaintiff Ochsenbein's reasoning as to why he did not have conversations (or at least cannot recall any) with his physicians as to the cause of his injuries. For the foregoing reasons, Plaintiff Ochsenbein's claims are not time-barred pursuant to California law.

### 5. *Plaintiff Xavier Garrison,* Case No. 3:25-cv-00666-JO-VET

Plaintiff Xavier Garrison filed his Complaint on March 21, 2025. Dkt. 1. Defendants filed their Motion to Dismiss on February 20, 2025, Dkt. 194, prior to Plaintiff Garrison filing his Complaint. Plaintiffs filed an opposition to Defendants' motion to dismiss on March 21, 2025, Dkt. 217, which is the same day Plaintiff Garrison filed his Complaint. On April 4, 2025, Defendants filed their reply in support of their motion to dismiss, which identifies Plaintiff Garrison in the case caption. Dkt. 225. On April 24, 2025, this Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, states "for the remaining cases that Defendants have moved to dismiss on statute of limitation grounds, the Court orders each respective Plaintiff to amend their individual complaint by June 2, 2025." Dkt. 239.

Plaintiff Garrison, from Defendants' perspective, is subject to Defendants' motion to dismiss given his case name was listed on the caption on their reply brief. However, Plaintiff Garrison did not receive notice that his case was added to Defendants' motion as part of the reply brief, and there is no docket annotation on his case that indicates his case was subject to the Court's April 24, 2025, Order. Defendants should have filed a notice in Plaintiff Garrison's individual case number to alert him and the Court that Plaintiff Garrison was subject to the motion filed a month prior to the filing of Plaintiff Garrison's Complaint. As such, Plaintiff Garrison did not file an Amended Complaint by June 2, 2025. Given the circumstances, Plaintiff Garrison should be afforded an opportunity for leave to amend his Complaint if the Court finds it necessary to do so. Nonetheless, sufficient facts are pled in Plaintiff Garrison's Complaint, such that his claims are not time-barred pursuant to California law.

15

6. *Plaintiffs Maria and Mark Godin,* Case No. 3:25-cv-01561-JO-VET

Plaintiffs Maria and Mark Godin filed their Complaint on June 18, 2025, and their case was not subject to Defendants original motion to dismiss filed on February 20, 2025, Dkt. 194, or this Court's April 24 2025, Order. Dkt. 239. Plaintiff Maria Godin ("Plaintiff Godin") is the injured party, and her husband, Mark Godin, has filed his own claim for loss of consortium. *See* Compl., Dkt. 1, at 22-23, ¶¶ 141-144. Plaintiff Godin underwent placement of Defendants' SmartPort device on March 19, 2020, for the purpose of administering chemotherapy to treat Plaintiff Godin's cancer. *Id.* ¶ 40-41. Plaintiff Godin underwent removal of the SmartPort on July 10, 2020, following a July 7, 2020, visit to Loma Linda Hospital, secondary to infection. *Id.* ¶ 45.

Plaintiff Godin learned of her potential cause of action in approximately August of 2023, when her husband saw an internet advertisement about defective port catheter products and the types of injuries associated with these products, including infections. *Id.* ¶ 71. Although Plaintiff Godin knew she suffered an infection, she attributed this infection to her underlying health conditions and trusted her medical team's judgment that had the SmartPort been defective and was the root cause of her infection, they would have communicated this to her. *Id.* ¶ 70. Based on her belief that her infection was the result of her underlying health conditions, including cancer, she had no reason to undergo a full-fledged investigation into the cause of her injuries, and therefore did not feel there was a need to ask her doctors why she developed an infection. *Id.* Plaintiff Godin was therefore precluded from discovering her potential cause of action until much later. As soon as Plaintiff Godin learned of information linking her injuries to defects in the SmartPort, as communicated by her husband, Plaintiff investigated her potential cause of action as a reasonable person would do. Moreover, because Plaintiff's husband saw the internet advertisement that triggered the inquiry into Plaintiff Godin's potential cause of action, his testimony is important to the analysis of whether Plaintiff Godin's claims are time-barred. Even without Plaintiff Godin's husband's testimony, for the foregoing reasons, Plaintiff Godin's claims are not time-barred pursuant to California law.

16

7. *Plaintiff Julie Lapper,* Case No. 3:25-cv-02357-JO-VET

Plaintiff Julie Lapper underwent placement of Defendants' SmartPort device on July 10, 2015 for the purpose of administering chemotherapy for Plaintiff Lapper's cancer, and the device was removed in approximately February 2022 secondary to infection. Am. Compl., Dkt. 16, ¶¶ 40, 43. Plaintiff Lapper did not have the opportunity to inquire with her doctor as to why she suffered the infection given her poor state of health, and no reasonable person in her situation would have done anything differently. *Id.* ¶ 62-63. Because Plaintiff Lapper's SmartPort was implanted for more than seven years, she had a good faith reason to believe that the infection was the result of her underlying medical condition, and like so many Plaintiffs who are cancer patients, they rely on their physicians to communicate information that sheds light on the cause of an injury, especially when the injury is associated with treatment for a potentially fatal disease.

Plaintiff Lapper learned of her potential cause of action when she saw an advertisement in approximately November of 2022, that specifically identified the SmartPort as being defective and linked to injuries, including infection. *Id.* ¶ 65. This is the point when Plaintiff Lapper was on inquiry notice that she had a potential cause of action, and she took the appropriate steps by contacting a law firm. For the foregoing reasons, Plaintiff Lapper's claims are not time-barred pursuant to California law.

8. *Plaintiff Vanessa Manjarezz*, Case No. 3:25-cv-00906-JO-VET

Plaintiff Vanessa Manjarezz filed her Complaint on April 16, 2025. Compl., Dkt. 1, which is approximately one week prior to this Court's April 24, 2025, Order on Defendants' initial Motion to Dismiss. Dkt. 239. Plaintiff Manjarezz's case was not subject to Defendants' initial motion to dismiss. As such, if the Court finds that Plaintiff Manjarezz's Complaint is inadequate in establishing the applicability of California's discovery rule, she should be afforded an opportunity for leave to amend her Complaint to address the Court's concerns raised in the April 24, 2025, Order.

9. *Plaintiff Laura Schultz*, Case No. 3:25-cv-01921-JO-VET

Plaintiff Laura Schultz underwent placement of Defendants' LifePort device on

17

February 4, 2009, and subsequently underwent removal of the device on January 14, 2010, following a diagnosis of thrombosis and a fractured catheter, which involved the migration of catheter fragments into Plaintiff Schultz's right atrium. Am. Compl., Dkt. 12, at 9-10, ¶¶ 39-45. Plaintiff Schultz did not have an opportunity to consult with her doctors about the cause of thrombosis and fractured catheter, given her underlying health conditions that were the focus for her at the time, namely, tachycardia and chest pain. *Id.* ¶ 45. Like many other Plaintiffs subject to Defendants' motion to dismiss, Plaintiff Schultz did not possess sufficient information at the time of her injuries, (and therefore was precluded from discovering her cause of action sooner), to ask her doctors additional questions and would not have thought of asking any questions if her doctors did not affirmatively tell her that the LifePort was defective and that a defect in the device caused her injuries.

Plaintiff Schultz learned of her potential cause of action on or aobut September 13, 2022, when she saw a Facebook advertisement that described the injuries she had suffered, which triggered her to investigate her potential cause of action with a law firm. *Id.* ¶ 47-48. For the foregoing reasons, Plaintiff Schultz's claims are not time-barred pursuant to California law.

10. *Plaintiff Kelley Silva*, Case No. 3:25-cv-00190-JO-VET

Plaintiff Kelley Silva underwent placement of Defendants' Vortex device on January 1, 2018, for the purpose of administering chemotherapy to treat Plaintiff Silva's cancer, and this device was removed on April 23, 2019, secondary to infection. Am. Compl., Dkt. 13 at 8-9, ¶¶ 40, 43. After removal of the Vortex, Plaintiff Silva had no opportunity to ask her doctors why she developed an infection, and like other Plaintiffs suffering from cancer, Plaintiff Silva reasonably believed that the infection was related to her underlying cancer and not a medical device. *Id.* at 11, ¶ 59-61. As such, Plaintiff Silva's investigation into the cause of her injuries stopped when her doctors did not inform her that the Vortex was a cause or potential cause of her injuries.

Plaintiff Silva first learned of her potential cause of action after she saw an advertisement relating to AngioDynamics port catheter products in approximately January

18

of 2023, which put her on inquiry notice, and triggered the accrual of the statute of limitations. *Id.* at 12, ¶¶ 63-64. Plaintiff Silva could not have previously known of the information she gleaned from the advertisement, as such information was not available to her or her physicians at the time she was injured, and she cannot be expected to have located this information on her own. For the foregoing reasons, Plaintiff Silva's claims are not time-barred pursuant to California law.

### B. Plaintiffs Have Sufficiently Pled Fraudulent Concealment, Thereby Tolling the Statute of Limitations Pursuant to California Law

Rule 9(b) requires that a party provide the "who, what, when, where and how" of the alleged fraud. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted). "Rule 9(b) does not necessitate pleading of detailed evidentiary matter," but only sufficient facts to "give the opposing party notice of the particular conduct which is alleged to constitute the fraud." *Stack v. Lobo*, 903 F. Supp. 1361, 1367 (N.D. Cal. 1995). Additionally, where "fraud allegedly occurred over a period of time … Rule 9(b)'s particularity requirement is less stringently applied." *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006); *see also Andrade-Heymsfield v. NextFoods, Inc.*, No. 3:21-CV-01446-BTM-MSB, 2022 WL 1772262, at *3 (S.D. Cal. Apr. 27, 2022). Moreover, "the pleading standard may be relaxed as to matters that are exclusively within the opposing party's knowledge." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1092 (N.D. Cal. 2014) ("A manufacturer has a duty to disclose a defect when it has exclusive knowledge of material facts not known to the plaintiff.") (internal citation omitted); *see also Zatkin v. Primuth*, 551 F. Supp. 39, 42 (S.D. Cal. 1982) ("Where . . . plaintiffs cannot be expected to have personal knowledge of the facts constituting wrongdoing, a complaint based on information and belief is sufficient if it includes a statement of the facts upon which the belief is based.").

Generally, it is true that a plaintiff must plead affirmative misrepresentations and omissions. However, this heightened pleading requirement is not required where the "defendant possesses or exerts control over material facts not readily available to the

19

plaintiff." *Jones v. ConocoPhillips Co.*, 130 Cal. Rptr. 3d 571, 580 (Cal. Ct. App. 2011).

Defendants rely upon *Rustico v. Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720, 740 (N.D. Cal. 2019), aff'd, 993 F.3d 1085 (9th Cir. 2021) in arguing that "it is not enough for [plaintiff] Caldwell to allege underlying fraud, or fraud in general, in order to invoke the doctrine of fraudulent concealment to toll the statute of limitations." Defs.' Mem., Dkt. 384-1, at 10, lines 10-11. *Rustico* is distinguishable in that plaintiff's injury was caused by a surgical tool's electrical malfunction, a fact that was immediately communicated to plaintiff and her husband by her surgeon. *Rustico*, 424 F. Supp. 720, 724 ("the cause of the damage had been 'the robotical [sic] equipment malfunctioning'" and "there had been 'problems with the robot . . .'"). On motion for summary judgment, the District Court for the Northern District of California held that plaintiff was on inquiry notice as of the date of her surgery. *Id.* at 737-38. Because she was already on inquiry notice, the doctrine of fraudulent concealment could not toll the statute of limitations. *Id.* at 738. The same cannot be said here.

In each California complaint, Plaintiffs allege that Defendants (who) misrepresented the safety of the port catheter device and withheld critical information from Plaintiffs and their healthcare providers (how), specifically regarding the substantial risks of using the device. These risks include (1) an increased propensity to precipitate infection and other complications, (2) data indicating the device was less safe than market alternatives, (3) the frequency of device failures, and (4) the severity of injuries resulting from such failures (what). Plaintiffs further specify when the port catheter device was implanted in them (when) and detail the means through which Defendants disseminated their misrepresentations, including direct-to-consumer marketing and marketing to healthcare professionals (where and how). Plaintiffs also allege the contents of Defendants' misrepresentations (failure to disclose that Defendants' port catheter device had a substantially higher failure rate than other alternatives on the market). Additionally, Plaintiffs' allegations include what Defendants fraudulently concealed from Plaintiffs and their healthcare providers (the devices' propensity to cause infection and other

complications, and the Defendants' knowledge thereof). Further, Plaintiffs allege that Defendants made numerous misrepresentations and omissions over the course of several years. Considering these circumstances, Plaintiffs' allegations meet the "particularity" requirement of Rule 9(b) because they sufficiently allege specific facts regarding the "who, what, when, where and how" of Defendants' alleged fraud. These allegations, as pleaded, were sufficient to put Defendants on notice of the claims against them and provide a fair opportunity for response.

Alternatively, Plaintiffs' complaints are subject to, and survive, a relaxed 9(b) pleading standard given that the facts regarding Defendants' fraudulent concealment are in the sole possession of the Defendants and cannot be obtained without pretrial discovery. Rule 9(b) does not require Plaintiffs to set forth facts that they lack access to prior to discovery. Here, the "particularity" requirement of 9(b) is relaxed, and may be satisfied by a showing that the particulars of the alleged fraud could not have been obtained without pretrial discovery. *See Yamada v. Nobel Biocare Holding AG*, 2011 U.S. Dist. LEXIS 162577, at *13-14 (C.D. Cal. 2011) (denying motion to dismiss where representations in complaint referenced representations by "Defendants, in a marketing brochure and in a document identifying precautions and warnings", such statements being "more than generalized statements of opinion and … capable of proof through discovery").

Plaintiffs allege that Defendants concealed the safety risks and complications associated with their port catheter devices and concealed their knowledge about such safety risks. Additionally, Plaintiffs plead that they lack access to material facts concerning the dangers and unreasonable risks of the devices, Defendants' knowledge of such risks, and the extent of Defendants' knowledge. Because Defendants concealed this information from Plaintiffs, Plaintiffs are limited in their ability to allege specific facts regarding the Defendants' fraudulent concealment. Dismissing Plaintiffs' complaints would thus create a "Catch-22" situation, where Plaintiffs are penalized for their inability to obtain essential information that is exclusively within Defendants' control. *Emery v. American Gen. Fin.*, 134 F.3d 1321, 1323 (7th Cir. 1998). This Court should deny

21

Defendants' Motion to Dismiss because Plaintiffs have not yet had an opportunity to obtain facts regarding Defendants' fraudulent concealment which are in the Defendants' sole possession and control and have sufficiently pled their cause of action using facts available to them to date.

Defendants rely on *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985) as sufficient authority for dismissal. However, *Braxton-Secret*'s reasoning was based on a fact-intensive inquiry with undisputed facts, a situation not present here. In *Braxton-Secret*, the court, relying on a fully developed record, found that the plaintiff knew or should have known of her injury when she had her IUD removed following a miscarriage while the IUD was implanted. The court granted summary judgment based on the recognition that, because the plaintiff knew the IUD was designed to prevent pregnancy, the "only reasonable conclusion" from her becoming pregnant was that the IUD had failed. *Id.* at 531. Here, however, Plaintiffs' injuries were not so obviously attributable to the port catheter and/or its alleged defects. Unlike the rare occurrence of pregnancy with an IUD, the sequelae that Plaintiffs experienced are common, particularly among patients with underlying health conditions like Plaintiffs, which prevented them from discovering their injuries and the cause of their injuries. Furthermore, "whether a party knew or should have known of a particular condition" is generally a "factual issue" inappropriate for resolution on a Motion to Dismiss. *Id.* at 531. Plaintiffs have therefore met their burden of *pleading* fraudulent concealment.[9] Plaintiffs have adequately pled fraudulent concealment with the particularity required under Rule 9(b), and therefore Defendants' Motion to Dismiss should be denied.

Where a defendant fraudulently concealed facts that would have led plaintiff to

---

[9] Defendants' reliance on *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594 (2014) is also misplaced. *Graham* did not address tolling the statute of limitations due to fraudulent concealment; rather, it involved a motion to dismiss a plaintiff's separate and distinct cause of action for "fraud or deceit." *See Id.* at 605. Moreover, *Graham* does not even mention Rule 9(b)'s requirements. As such, it provides no support for Defendants' argument.

discover a potential cause of action, the cause of action is tolled until plaintiff actually discovers or is put on inquiry notice of the fraud. *See Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985) (in Dalkon Shield IUD case, where plaintiff independently discovered facts of cause of action, no tolling for fraudulent concealment).

The doctrine of fraudulent concealment, in the statute of limitations context, is a form of equitable estoppel. An exception to the affirmative defense of the statute of limitations, fraudulent concealment is a corollary to the discovery rule such that a discussion of fraudulent concealment must also include some discussion of reasonable inquiry. *See Investors Equity Life Holding Co. v. Schmidt*, 126 Cal. Rptr. 3d 135, 146 (Cal. Ct. App. 2011) ("The doctrine of fraudulent concealment of the cause of action … has an effect similar to the statutory rule of delayed accrual and the same pleading and proof is required … , i.e., the plaintiff must show (a) the substantive elements of fraud, and (b) an excuse for late discovery of the facts.") (internal quotations omitted).

If material facts are concealed, either through misrepresentation or omission, they are unavailable to a reasonable person's diligent investigation. *See Gutierrez v. Mofid*, 39 Cal. 3d 892, 896-897 (stating that presumptive knowledge of negligent injury is found once a plaintiff has "notice or information of circumstances to put a reasonable person *on inquiry*, or *has the opportunity to obtain knowledge* from sources open to his investigation . . ..") (emphasis in original) (citations omitted); *Popescu v. Gm*, 2023 Cal. Super. LEXIS 51005, at *5-7 (finding particularity requirement relaxed for a fraudulent concealment cause of action – as opposed to fraud itself – under California state pleadings procedure where "[d]efendant, as the manufacturer, was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects . . ..").

To state a claim for fraudulent concealment, the following must be shown:

1) defendant must have concealed or suppressed a material fact;
2) defendant must have been under a duty to disclose the fact to plaintiff;

3)    defendant must have intentionally[10] concealed or suppressed the fact with the intent to defraud the plaintiff;

4)    plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and

5)    plaintiff sustained damage as a result of the concealment or suppression of the fact.

*Jones v. ConocoPhillips Co.*, 130 Cal. Rptr. 3d 571, 579 (Cal. Ct. App. 2011). The standard is the same when fraudulent concealment is the basis for tolling of the statute of limitations. *See Investors Equity Life Holding Co. v. Schmidt*, 126 Cal. Rptr. 3d 135, 138 ("The doctrine of fraudulent concealment of the cause of action … has an effect similar to the statutory rule of delayed accrual and the same pleading and proof is required … , i.e., the plaintiff must show (a) the substantive elements of fraud, and (b) an excuse for late discovery of the facts.") (internal quotations omitted).

The California Civil Code defines fraudulent deceit as "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers." Cal. Civ. Code § 1709. Fraudulent deceit includes within its definition, "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710(3).

The duty to disclose a material fact is imposed when (1) defendant is in a fiduciary relationship with plaintiff; or (2) "when a defendant possesses or exerts control over material facts not readily available to the plaintiff." *Jones*, 130 Cal. Rptr. at 580; *Popescu*, 2023 Cal. Super. LEXIS 51005, *7-8 (finding Plaintiff "sufficiently alleged that Defendant, as the manufacturer, was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects in their

---

[10] Rule 9(b) does not require specifics as to the defendant's mental state. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Popescu v. Gm*, 2023 Cal. Super. LEXIS 51005, *11-12 ("The issue of Defendant's intent to defraud is a question of fact that the Court declines to address at the demurrer stage.").

motor vehicles") (internal quotations omitted). The warning serves "to inform consumers about a product's hazards and faults of which they are unaware, so that they can refrain from using the product altogether or evade the danger by careful use." *Johnson v. Am. Standard, Inc.*, 179 P.3d 905, 910 (Cal. 2008).

Other MDL cases in the medical device context are useful in this Court's analysis of fraudulent concealment and the tolling of statute of limitations. Rather than deciding the present motion to dismiss based on general propositions, taken out of context, the Court should look to more factually aligned "experiences of other courts with similar claims[.]" Manual for Complex Litigation, Fourth § 22.2 at 353 (Federal Judicial Center (2004) ("The court might inquire whether similar cases have been tried or settled, and, if so, with what results; whether other courts have ruled on dispositive motions . . ..").[11]

Here, each of the Plaintiffs sufficiently pled facts demonstrating fraudulent concealment to invoke California's discovery rule. The date on which each Plaintiff was placed on inquiry notice as to their potential cause of action is the date that each Plaintiff discovered the fraud that prevented them from filing suit earlier. Plaintiffs incorporate by reference their arguments presented as to the applicability of California's discovery rule as to their cause of action. As such, even if the Court finds that Plaintiffs should have known of their cause of action sooner, they did not discover Defendants' fraud until the date they first learned of information linking their injuries to Defendants' devices.

## IV.    CONCLUSION

Plaintiffs have met their burden of invoking application of California's discovery rule and have adequately pled fraudulent concealment to invoke application of this discovery rule at this pleading stage. For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

---

[11] *See, e.g., In re Bard IVC Filter Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 53372, at *119 (D. Ariz. 2016); *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976) (citing *In re: Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 354 (S.D.N.Y. 2014)).

Dated: October 2, 2025

/s/ *Anne Schiavone*
Anne Schiavone (Admitted *Pro Hac Vice*)
**HOLMAN SCHIAVONE LLC**
4600 Madison Ave, Ste 810
Kansas City, MO 64112
Telephone: (816) 283-8738
Facsimile: (816) 283-8739
Email: aschiavone@hslawllc.com

/s/ *R. Andrew Jones*
R. Andrew Jones (Admitted *Pro Hac Vice*)
**CORY WATSON, P.C.**
2131 Magnolia Avenue
Birmingham, AL 35205
Telephone : (205) 328-2200
Facsimile: (205) 324-7896
Email: ajones@corywatson.com

/s/ *Andrew Van Arsdale*
Andrew Van Arsdale
CA State Bar No. 323370
**AVA LAW GROUP**
3667 Voltaire Street
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667
Email: andrew@avalaw.com

*Co-Lead Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2025, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.

By: */s/ Andrew Van Arsdale*
*Attorney for Plaintiff*

3:24-md-03125-JO-VET